IN THE

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 24-13841
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

Versus

ROBERT PURBECK,

Defendant-Appellant.
_____

A DIRECT APPEAL OF A CRIMINAL CASE
FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA, NEWNAN DIVISION
_____

INITIAL BRIEF

LEIGH ANN WEBSTER
Georgia State Bar Number: 968087
Strickland Webster, LLC
830 Glenwood Ave SE
Suite 510-203
Atlanta, GA 30316
404-590-7967

Attorney for Appellant

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

  versus                                     APPEAL NO. 24-13841

ROBERT PURBECK,

      Defendant - Appellant.
_____/

<u>CERTIFICATE OF INTERESTED PARTIES</u>

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. Rule 26.1-1, counsel for Appellant certifies that the following listed attorneys, persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this appeal:

1. Batten Sr., Hon. Timothy C. – United States District Judge;

2. Bly, Hon. Christopher C. – United States Magistrate Judge;

3. Cannon, Hon. Regina D. – United States Magistrate Judge;

4. Hall, Andrew C. – Former counsel for Defendant/Appellant;

5. Herskowitz, Michael V. -Assistant United States Attorney;

6. Kitchens, Nathan Parker – Assistant United States Attorney;

7. Mund, Brian Z. – Assistant United States Attorney;

8. Sistla, Alex R. – Assistant United States Attorney;

9. Vineyard, Hon. Russell – United States Magistrate Judge;

10. Webster, Leigh Ann – Counsel for Defendant/Appellant;

No publicly-traded company or corporation has an interest in the outcome of this appeal or case.

Dated this 4th day of September, 2025.

*/s/ Leigh Ann Webster*
Leigh Ann Webster
Georgia Bar No. 968087
Attorney for Robert Purbeck

STRICKLAND WEBSTER, LLC
830 Glenwood Ave SE
Suite 510-203
Atlanta, GA 30316
Telephone: (404) 590-7967
Facsimile:  (404) 393-3617
law@stricklandwebster.com

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a), the Defendant-Appellant requests oral argument.

STATEMENT OF TYPE SIZE AND STYLE

Pursuant to 11th Cir. R. 28-2 (d), counsel for Appellant hereby certifies

that the size and style of type used in this brief is Book Antiqua 14 PT.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES .......................................................1

STATEMENT REGARDING ORAL ARGUMENT ......................................... i

STATEMENT OF TYPE SIZE AND STYLE........................................................ ii

TABLE OF AUTHORITIES .................................................................................. v

STATEMENT OF JURISDICTION .................................................................... ix

STATEMENT OF THE ISSUES...........................................................................1

STATEMENT OF THE CASE ..............................................................................2

   I.   Course of Proceedings....................................................................................2

   II.  Statement of Facts ..........................................................................................2

STANDARDS OF REVIEW................................................................................11

SUMMARY OF THE ARGUMENT ..................................................................12

ARGUMENT AND CITATIONS OF AUTHORITY.......................................14

   I.   This Court should vacate and remand Mr. Purbeck's sentence
   because the government breached its plea agreement with Mr. Purbeck,
   as the government merely paid lip service to its obligation to recommend
   a 70-month sentence and the district court ultimately sentenced Mr.
   Purbeck to 120 months in custody.................................................................14

      a.   The government paid mere lip service to the recommendation
      contained in the plea agreement, while effectively arguing against its
      own recommendation. ..................................................................................17

      b.   The government's breach of the plea agreement rises to the level of
      plain error. ....................................................................................................20

   II.  The district court erred when it imposed a special condition of
   supervised release that prohibits Mr. Purbeck from accessing the internet.
   ………………………………………………………………………………..22

      a.   The district court violated Mr. Purbeck's due process rights by
      imposing, in its written judgment, a special condition more restrictive
      than the condition unambiguously pronounced at the sentencing
      hearing...........................................................................................................22

      b.   Even if the written judgment's special condition prohibiting all
      internet access is held not to conflict with the oral pronouncement's

corresponding special condition, a categorical ban on all internet access is an excessive deprivation of liberty and is thus unconstitutional. ......25

CONCLUSION ........................................................................................28

CERTIFICATE OF COMPLIANCE..................................................29

CERTIFICATE OF SERVICE.............................................................30

## TABLE OF AUTHORITIES

SUPREME COURT CASES

*Rosales-Mireles v. United States*, 585 U.S. 129, 135 (2018) .................................21

*Santobello v. New York*, 404 U.S. 257, 262 (1971) .................................................14

CIRCUIT COURT CASES

*Henry v. Sheriff of Tuscaloosa Cty.*, 135 F.4th 1271 (11th Cir. 2025).................26

*United States v. Anstice*, 930 F.3d 907 (7th Cir. 2019) ........................................23

*United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019) ......................21

*United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000).............................23

*United States v. Canada*, 960 F.2d 263, 269-70 (1st Cir. 1992) ..........................16

*United States v. Carpenter*, 803 F.3d 1224, 1239 (11th Cir. 2015) .....................26

*United States v. Coglianese*, 34 F.4th 1002, 1010 (11th Cir. 2022).....................26

*United States v. Copeland*, 381 F.3d 1101, 1105-06 (11th Cir. 2004)..................14

*United States v. Cothran*, 855 F.2d 749, 752 (11th Cir. 1988)............................26

*United States v. Davis*, 105 F.4th 541, 554 (3d Cir. 2024)...................................19

*United States v. Diggles*, 957 F.3d 551, 558-59 (5th Cir. 2020) ..........................23

*United States v. Etienne*, 102 F.4th 1139, 1146 (11th Cir. 2024)..................25, 26

*United States v. Farias-Contreras*, 104 F.4th 22, 31 (9th Cir. 2024)...................19

*United States v. Grandinetti*, 564 F.2d 723, 727 (5th Cir. 1977) .......15, 17, 19, 20

*United States v. Huff*, 512 F.2d 66, 71 (5th Cir. 1975)..........................................22

*United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016) ..........5, 14, 15, 20

*United States v. Jackson*, 923 F.2d 1494 (11th Cir. 1991) ....................................22

*United States v. Maldonado-Maldonado*, 134 F.4th 32, 39 (1st Cir. 2025)..........19

*United States v. Moran*, 573 F.3d 1132, 1140-41 (11th Cir. 2009).......................26

*United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015) ..........14

*United States v. Rewis*, 969 F.2d 985, 988 (11th Cir. 1992) .................................15

*United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005)..........11, 20, 21

*United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023); ...11, 22, 23, 24

*United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020) .........................................23

*United States v. Taylor*, 77 F.3d 368, 370-72 (11th Cir. 1996) ..........16, 17, 19, 20

*United States v. Zinn*, 321 F.3d 1084, 1093 (11th Cir. 2003) ...............................26

## STATUTES

18 U.S.C. § 1029(a)(2)...............................................................................................2

18 U.S.C. § 1029(c)(1)(A)(I) ......................................................................................2

18 U.S.C. § 1030(a)(7)(B) ..........................................................................................2

18 U.S.C. § 1030(c)(2)(B)(i) .......................................................................................2

18 U.S.C. § 1030(c)(2)(B)(iii).....................................................................................2

18 U.S.C. § 1030(c)(3)(A) ..........................................................................................2

18 U.S.C. § 1343 ........................................................................2

18 U.S.C. § 3583(d) .............................................................22, 23

18 U.S.C. §§ 1030(a)(2)(C) ........................................................2

28 U.S.C. § 1291 ...................................................................... viii

RULES

11th Cir. R. 28-2 (d) ................................................................. ii

11th Cir. Rule 26.1-1 ..................................................................1

Fed. R. App. P. 4 ..................................................................... viii

Fed. R. App. P. 26.1 ...................................................................1

Fed. R. App. P. 32(a)(7)(B)(iii) ................................................29

Fed.R. App. P. 34(a), ................................................................. i

Fed. R. Crim. P. 43(a) ..............................................................22

Fed. R. Crim. P. 51(b) ..............................................................11

SENTENCING GUIDELINES

U.S.S.G. § 2B1.1(a)(2) ...............................................................6

U.S.S.G. § 2B1.1(b)(1)(H) ..........................................................6

U.S.S.G. § 2B1.1(b)(11) ..............................................................4

U.S.S.G. § 2B1.1(b)(18) ..............................................................4

U.S.S.G. § 2B1.1(b)(2)(A)(i) ...................................................4, 6

U.S.S.G. § 2S1.1(a)(2) ..............................................................................4

U.S.S.G. § 2S1.1(b)(2)(B) .........................................................................4

U.S.S.G. § 3C1.1 ......................................................................................4

U.S.S.G. § 3E1.1 ..................................................................................4, 6

U.S.S.G. § 3E1.1(a) ..................................................................................4

U.S.S.G. § 4C1.1 ......................................................................................5

## STATEMENT OF JURISDICTION

The Eleventh Circuit Court of Appeals has jurisdiction to consider this case pursuant to 28 U.S.C. § 1291 and Federal Rule of Appellate Procedure 4. This case involves a direct appeal of a criminal conviction and sentence imposed in the United States District Court for the Northern District of Georgia, Atlanta Division.

## STATEMENT OF THE ISSUES

I.    This Court should vacate Mr. Purbeck's sentence because the government breached its plea agreement with Mr. Purbeck, as the government merely paid lip service to its obligation to recommend a 70-month sentence and the district court ultimately sentenced Mr. Purbeck to 120 months in custody.

II.    The district court erred when it imposed a special condition of supervised release that prohibits Mr. Purbeck from accessing the internet.

   a. The district court violated Mr. Purbeck's due process rights by imposing, in its written judgment, a special condition more restrictive than the condition unambiguously pronounced at the sentencing hearing.

   b. Even if the written judgment's special condition prohibiting all internet access is held not to conflict with the oral pronouncement's corresponding special condition, a categorical ban on all internet access is an excessive deprivation of liberty and is thus unconstitutional.

STATEMENT OF THE CASE

## I.  Course of Proceedings

In March 2021, Robert Purbeck was charged with (1) four counts of computer fraud and abuse, in violation of 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(7)(B), 1030(c)(2)(B)(i), 1030(c)(2)(B)(iii), 1030(c)(3)(A) and Section 2; (2) four counts of wire fraud, in violation of 18 U.S.C. § 1343 and Section 2; and (3) three counts of access device fraud, in violation of 18 U.S.C. § 1029(a)(2) and (c)(1)(A)(i) and Section 2.  (Doc. 1).  Pursuant to a written plea agreement, Mr. Purbeck pled guilty to Counts 1 and 2.  (Doc. 116-1; Doc. 118).  Mr. Purbeck was sentenced to 120 months in custody on November 13, 2024.  (Doc. 147 at 57; Doc. 134 at 2).  He timely filed a notice of appeal.  (Doc. 137).

## II.  Statement of Facts

### a.  Offense Conduct

According to the factual basis of the plea, Mr. Purbeck purchased access to the computer server of Family Medical Center ("FMC") from a dark web marketplace in June 2017.  (Doc. 116-1 at 6).  Mr. Purbeck used that unauthorized access to steal medical records and other documents containing personally identifiable information ("PII") and confidential

personal health information of over 43,489 individuals. (*Id.*). FMC suffered losses of $138,500 associated with the breach. (*Id.*).

Then, in February 2018, Mr. Purbeck purchased access to a computer server of the City of Newnan, Georgia, Police Department. (*Id.*). He used that access to steal records of police reports and documents, including PII for approximately 14,394 individuals. (*Id.*). The City of Newnan suffered losses of $113,935 associated with the breach. (*Id.*).

In August 2019, Federal Bureau of Investigation ("FBI") agents obtained and executed a warrant for Mr. Purbeck's home in Meridian, Idaho. (*Id.*). During the search, Mr. Purbeck admitted to using the alias "Lifelock" on the dark web and for computer intrusions and extortions. (*Id.* at 6-7). The FBI seized computers and devices from Mr. Purbeck's house and discovered PII for at least 132,725 individuals from various data breaches, including the breaches of FMC and the City of Newnan, along with at least seventeen other victims in the United States. (*Id.* at 7). Mr. Purbeck executed computer commands from Idaho to Georgia to commit the intrusions against FMC and the City of Newnan, and the value of information he obtained exceeded $5,000 each from FMC and the City of Newnan. (*Id.*).

**b. Plea Agreement**

Pursuant to a written plea agreement, Mr. Purbeck entered a plea to Counts 1 and 2 (computer fraud and abuse). (Doc. 116-1). The plea agreement contained joint recommendations on how the guidelines should apply, including the following:

| U.S.S.G. Section | Description | Offense Level |
|---|---|---|
| § 2B1.1(a)(2) | Base Offense Level | 6 |
| § 2B1.1(b)(1)(H) | Loss amount between $550,000 and $1,500,000 | +14 |
| § 2B1.1(b)(2)(A)(i) | 10+ victims | +2 |
| § 2B1.1(b)(1)(C) | Sophisticated means | +2 |
| § 2B1.1(b)(18) | Intent to obtain personal information | +2 |
| §§ 3E1.1(a), (b) | Acceptance of responsibility | -3 |

(*Id.* at 8).

The government stated that it would recommend a two-level enhancement for trafficking of unauthorized device access pursuant to U.S.S.G. § 2B1.1(b)(11) and a two-level enhancement for obstructing justice pursuant to U.S.S.G. § 3C1.1, and Mr. Purbeck indicated that he would object to both. (*Id.* at 8-9). Mr. Purbeck indicated he would seek a two-level

4

reduction as a "zero-point offender," pursuant to U.S.S.G. Amendment Section 4C1.1, to which the government stated it would object. (*Id.* at 9). The government agreed that it would recommend a three-level reduction for acceptance of responsibility, unless Mr. Purbeck engaged in behavior "after entering this Plea Agreement" that was inconsistent with accepting responsibility. (*Id.*). The plea agreement then provided that the government would agree to recommend that Mr. Purbeck receive a 70-month sentence followed by a term of supervised release. (*Id.* at 10).

The plea agreement also contained a limited waiver of appeal, which applied unless the district court departed or varied above the guideline range as calculated by the court.[1] (*Id.* at 18-19). The plea agreement excepted ineffective assistance of counsel claims, and it also allowed Mr. Purbeck to cross-appeal if the government appealed. (*Id.* at 19).

### c. Sentencing

In the presentence investigation report ("PSI"), the probation officer agreed with the government that (1) enhancements for trafficking of unauthorized device access and obstruction of justice were appropriate and

---

[1] This appeal can proceed both because a claim that the government breached the plea agreement is excepted from the appeal waiver and because the ultimate sentence imposed was above Mr. Purbeck's guideline range. *See United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016).

(2) that Mr. Purbeck was not eligible for a zero-point offender decrease because he caused substantial financial hardship to a victim. (PSI ¶ 89). The probation officer thus calculated Mr. Purbeck's guideline range as follows:

| U.S.S.G. Section | Description | Offense Level |
|---|---|---|
| § 2B1.1(a)(2) | Base Offense Level | 6 |
| § 2B1.1(b)(1)(H) | Loss amount between $550,000 and $1,500,000 | +14 |
| § 2B1.1(b)(2)(A)(i) | 10+ victims | +2 |
| § 2B1.1(b)(1)(C) | Sophisticated means | +2 |
| § 2B1.1(b)(11)(B)(i) | Trafficking of unauthorized device access | +2 |
| § 2B1.1(b)(18) | Intent to obtain personal information | +2 |
| § 3C1.1 | Obstruction of justice | +2 |
| §§ 3E1.1(a), (b) | Acceptance of responsibility | -3 |
| | Total | 27 |

(PSI ¶¶ 78-90).

Mr. Purbeck objected to the enhancement for trafficking of unauthorized device access; the adjustment for obstruction of justice; and the absence of a zero-point offender reduction. (*Id.* ¶¶ 82-89). The probation officer maintained her initial assessments in response to all three objections.

(*Id.*).  With a criminal history category of I, based on zero criminal history points, Mr. Purbeck's guideline range was 70 to 87 months in custody.  (PSI, Part D, p. 41).

In its sentencing memorandum, the government described the nature and circumstance of Mr. Purbeck's offense as "simply egregious."  (Doc. 127 at 20).  The government noted four mitigating facts, namely Mr. Purbeck's lack of criminal history, willingness to plead guilty, agreement to pay full restitution, and success on pre-trial release with one exception.  (*Id.*).  While discussing those facts, the government also argued that Mr. Purbeck's recent filing in a civil suit in which he "researched and doxed one of the Assistant U.S. Attorneys" in the case was "despicable" and "antisemitic."  (*Id.*).  The government then proceeded to emphasize the need for specific and general deterrence based on Mr. Purbeck's "sinister cyber extortion attacks," an "extortion scheme [that] required careful calculation and deliberation" and which thus warranted a "substantial sentence."  (*Id.* at 22).  The government referenced "the devastating scale" of Mr. Purbeck's conduct and remarked that "[t]he public's interest in deterring cybercrime cannot be overstated."  (*Id.* at 23, 24).  The government repeatedly called for a "substantial" sentence,

especially for "sophisticated cyber extortion schemes," and asserted that "any sentence below 70 months" would be inadequate. (*Id.* at 25).

At the sentencing hearing, the court stated that Mr. Purbeck had waived his objection to the enhancement for trafficking of unauthorized device access. (Doc. 147 3-4). The court found that the upward adjustment for obstruction of justice applied because the magistrate judge's Report and Recommendation contained a "pretty firm finding of perjury." (*Id.* at 7, 16). The court calculated Mr. Purbeck's offensive level as 27, noted his criminal history category as 1, and determined his guideline range was 70 to 87 months, just as the PSI had. (*Id.* at 22). There were no objections.

One victim, an orthodontist from Florida, then addressed the court at length and recounted the harm he and his family experienced due to Mr. Purbeck's conduct, which he described as "psychological torture." (*Id.* at 23-32, 28).

The government then explained that "what sets this case apart is the unbelievably cruel nature" of Mr. Purbeck's conduct. (*Id.* at 32). The government argued that because of Mr. Purbeck's recently-filed "despicable civil proceeding," he needed to be deterred from "further threatening communications." (*Id.* at 34). The government proceeded to ask for a

70-month sentence when accounting for Mr. Purbeck's lack of criminal history, guilty plea, and agreement to pay restitution in full.  (*Id.* at 34-35).

In response, Mr. Purbeck admitted his recent civil suit was "indefensible" but that the information in it about an Assistant U.S. Attorney was already public.  (*Id.* at 36-37).  Mr. Purbeck asserted that because he had had no further violations of the law since the conduct underlying this case, voluntarily surrendered himself, and had behaved well on pre-trial release, he has demonstrated a commitment to follow the law.  (*Id.* at 37-38).  Mr. Purbeck then discussed sentencing data for similarly situated defendants, asked for a 36-month sentence, and distinguished cases the government cited to emphasize the importance of general deterrence for this sort of case.  (*Id.* at 39-46).  Mr. Purbeck then requested the opportunity to voluntarily surrender to the Bureau of Prisons to begin his sentence.  (*Id.* at 47-50).

After Mr. Purbeck's employer spoke to commend Mr. Purbeck's character, Mr. Purbeck himself addressed the court.  (*Id.* at 51-52).  Mr. Purbeck recognized the harm of his conduct and expressed remorse to the victims and to the Assistant U.S. Attorney referenced in the civil filing.  (*Id.* at 52-53).  Mr. Purbeck accepted responsibility for his actions and stated his commitment to rehabilitation and making amends.  (*Id.* at 53).

The government then argued that Mr. Purbeck should not be able to voluntarily surrender because "Mr. Purbeck doesn't deserve to walk out of here" with the victim who testified.  (*Id.* at 55).  The government asserted that "we don't know what [Mr. Purbeck is] going to do when he walks out of here" because he is a convicted cybercriminal who put a prosecutor's personal information in a civil court filing.  (*Id.* at 55).  The government also suggested that Mr. Purbeck may not be sorry for his actions because the civil filing occurred three months prior to sentencing.  (*Id.*).

The district court then described the "psychological torture" that Mr. Purbeck inflicted upon his victims and sentenced him to the maximum allowed by law, 60 months' incarceration for both counts to be served consecutively, followed by three years of supervised release.  (*Id.* at 56-58).  After imposing the mandatory conditions of supervised release, the court also imposed thirteen special conditions.  (*Id.* at 59-60).  Relevant here, the sixth special condition was that Mr. Purbeck "must not access the internet, except for reasons approved in advance by the probation officer."  (*Id.* at 59).

In the amended judgment and commitment order ("JNC"), the district court's listed "You must not access the internet" as the first special condition of Mr. Purbeck's supervised release. (Doc. 134 at 5).

## STANDARDS OF REVIEW

This Court reviews all arguments raised for the first time on appeal for plain error. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). This Court will reverse under a plain-error standard when (1) an error has occurred; (2) the error was plain; (3) the error affected substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Because Mr. Purbeck had no opportunity to object, this Court should review de novo whether the special condition of supervised release prohibiting all internet access was properly included in his amended judgment. *United States v. Rodriguez*, 75 F.4th 1231, 1246 n.5 (11th Cir. 2023) (de novo review appropriate where defendant had no opportunity to object to conditions that were contained in written judgment for the first time); *see also* Fed. R. Crim. P. 51(b) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party.").

## SUMMARY OF THE ARGUMENT

This Court should vacate and remand Mr. Purbeck's sentence because the government breached its plea agreement by failing to present a forceful and intelligent recommendation to the district court for the agreed-upon 70-month sentence. Under Eleventh Circuit precedent, plea agreements are governed by traditional contract principles, and the government is held to the highest standards of promise and performance. A material promise by the government, such as the promise to recommend a specific sentence, binds the government to that promise. The government's conduct at sentencing—including its emphasis on the egregious nature of the offense and its characterization of the defendant's actions as despicable and antisemitic—undermined its obligation to advocate for a 70-month sentence. This breach rises to the level of plain error, as it affected the outcome of the proceedings and undermined the fairness and integrity of the judicial process, especially where Mr. Purbeck was sentenced to the statutory maximum of 120 months.

Additionally, the district court erred by imposing a stricter special condition of supervised release in its written judgment than the condition orally pronounced at sentencing. The oral pronouncement allowed Mr.

Purbeck to access the internet with prior approval from his probation officer, while the written judgment imposed a total internet ban. Under Eleventh Circuit precedent, discretionary conditions of supervised release must be pronounced orally at sentencing to provide the defendant with notice and an opportunity to object. When a written judgment conflicts with the oral pronouncement, the oral pronouncement controls. The discrepancy between the oral and written conditions violated Mr. Purbeck's due process rights. Even if the oral pronouncement does not control, an absolute prohibition on internet access is an excessive deprivation of liberty because it contains no exceptions. Therefore, this Court should remand the case and instruct the district court to conform the written judgment to the oral pronouncement.

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.**     **This Court should vacate Mr. Purbeck's sentence because the government breached its plea agreement with Mr. Purbeck, as the government merely paid lip service to its obligation to recommend a 70-month sentence and the district court ultimately sentenced Mr. Purbeck to 120 months in custody.**

Traditional contract principles govern the interpretation of plea agreements. *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015). When there are ambiguities, the plea agreement must be construed against the government. *United States v. Copeland*, 381 F.3d 1101, 1105-06 (11th Cir. 2004). "The rationale for this approach to interpretation is that a plea agreement must be construed in light of the fact that it constitutes a waiver of substantial constitutional rights requiring that the defendant be adequately warned of the consequences of the plea." *Id.* at 1106 (quotation omitted). "Because plea bargaining requires defendants to waive fundamental constitutional rights, we hold prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance." *United States v. Hunter*, 835 F.3d 1320, 1330-31 (11th Cir. 2016).

"A material promise by the government, which induces a defendant to plead guilty, binds the government to that promise." *Id.* at 1324 (quotation omitted*); Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests

14

in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").  Therefore, the government breaches the plea agreement if it fails to perform the promises on which the plea was based. *Hunter*, 835 F.3d at 1324.

Whether the government is in breach is assessed "according to the defendant's reasonable understanding at the time he entered his plea." *Id.* (quotation omitted).  An objective standard is used to determine whether the government's actions are inconsistent with the defendant's understanding of the plea agreement, and this Court is not to read the agreement in a hyper-technical or rigidly literal manner. *Id.*  If the government is allowed to act in a way inconsistent with Mr. Purbeck's reasonable understanding of the plea agreement, he cannot be said to have been aware of the plea's consequences. *United States v. Rewis*, 969 F.2d 985, 988 (11th Cir. 1992).

Under Fifth Circuit precedent binding on this Court, the government fulfills its promise to recommend a sentence only by making a "forceful and intelligent recommendation" for the bargained-for benefit. *United States v. Grandinetti*, 564 F.2d 723, 727 (5th Cir. 1977) (reversing where the government "was not only an unpersuasive advocate for the plea agreement,

15

but, in effect, argued against it"). This Court has rejected half-hearted recommendations in the years since *Grandinetti*. For example, in *United States v. Taylor*, 77 F.3d 368, 370-72 (11th Cir. 1996), the government agreed to recommend a ten-year sentence, but then advocated for guideline enhancements that required a sentence longer than ten years. While the government technically recommended the ten-year sentence, this Court held that this "recommendation, which merely paid 'lip service' to the agreement, is insufficient to rectify the breach committed when the government advocated a position requiring a longer sentence than it had agreed to recommend." *Taylor*, 77 F.3d at 371 (citing *United States v. Canada*, 960 F.2d 263, 269-70 (1st Cir. 1992) (the government's "overall conduct must be reasonably consistent" with its recommendation)).

This Court has emphasized the importance of holding the government to its obligations:

> In closing we note that, for better or worse, plea bargains have become an essential part of our criminal justice system. It is in the best interests of the government, as well as the system as a whole, that defendants be able to count on the government keeping the promises it makes in order to secure guilty pleas. Those broader interests, as well as each individual defendant's interest in receiving the benefit of his bargain, require that courts stand ready and willing to hold the government to its promises.

*Taylor*, 77 F.3d at 372.  This Court should do so here.

### a. The government paid mere lip service to the recommendation contained in the plea agreement, while effectively arguing against its own recommendation.

The government breached its agreement with Mr. Purbeck by paying mere lip service to its obligation to recommend that he be sentenced to 70 months in prison.  Under the plea agreement, the government promised to "recommend that Mr. Purbeck receive a 70-month sentence."  (Doc. 116-1 at 10).  This was a material promise that induced Mr. Purbeck to plead guilty and waive his constitutional rights.  The government was thus obligated to make a "forceful and intelligent recommendation" in favor of a 70-month sentence.  *Grandinetti*, 564 F.2d at 727.  However, the government's sentencing memorandum and conduct at the sentencing hearing instead emphasized the severity of Mr. Purbeck's conduct and the need for a substantial sentence.

Here, the government's recommendation of a 70-month sentence in its memorandum was overshadowed by its extreme language detailing the "simply egregious" nature of the offense, an "extortion scheme" of "sinister cyber extortion attacks" perpetrated on a "devastating scale" and thus requiring a "substantial sentence."  (Doc. 127 at 20, 22, 25).  The government

also described Mr. Purbeck's filing in a civil suit as "despicable" and "antisemitic." (*Id.* at 22). The government concluded its memorandum not by arguing in favor of a bottom-of-the-guidelines 70-month sentence but by arguing that "any sentence below 70 months" would be inadequate. (*Id.* at 25). That framing suggests a sentence of 70 months or more may be adequate, despite the government's obligation to argue in favor of 70 months exactly.

Similarly, at the sentencing hearing the government asserted that "what sets this case apart is the unbelievably cruel nature" of Mr. Purbeck's actions. (Doc. 147 at 32). Such language implies that Mr. Purbeck's conduct was exceptionally harmful: framing the case as "apart" from others is not consistent with recommending a sentence at the bottom of the guideline range. Then the government again condemned his "despicable civil proceeding." (*Id.* at 32). Finally, in objecting to Mr. Purbeck's request for voluntary surrender, the government warned that "we don't know what [Mr. Purbeck is] going to do when he walks out of here" due to his conviction—the result of a guilty plea—and his inclusion of a prosecutor's publicly available personal information in a civil court filing. (*Id.* at 55). The government consistently acted as an advocate for severity, which was mere

lip service to its duty to advocate for the plea bargain's recommendation. *Taylor*, 77 F.3d at 371.  Because Mr. Purbeck had "every right to expect that in exchange for his guilty plea[,] the government would strongly recommend the agreed to sentence," and because the government failed to do so, the government breached the plea agreement. *See Grandinetti*, 564 F.2d at 726.

Other circuits have held that the government breached its obligations under a plea agreement in similar situations. *See United States v. Davis*, 105 F.4th 541, 554 (3d Cir. 2024) (holding that the government breached the plea agreement by emphasizing the reprehensible nature of the defendant's conduct and victim harm during sentencing, which was inconsistent with its agreement to recommend a sentence at the low end of the guidelines range); *United States v. Maldonado-Maldonado*, 134 F.4th 32, 39 (1st Cir. 2025) (holding that the government breached the plea agreement by advocating for a sentencing enhancement inconsistent with the agreement and using impermissible language such as "extraordinary," "heinous," and "violent"); *United States v. Farias-Contreras*, 104 F.4th 22, 31 (9th Cir. 2024) (holding that the government implicitly breached the plea agreement because of "inflammatory rhetoric," although that error was not plain).

### b. The government's breach of the plea agreement rises to the level of plain error.

This issue is reviewed for plain error because Mr. Purbeck's counsel did not object at the time of sentencing. *Rodriguez*, 398 F.3d at 1298. As argued above, Mr. Purbeck has shown that there is error, and that error is plain after, *inter alia*, *Santobello*, *Hunter*, *Taylor*, *Johnson*, and *Grandinetti*. Therefore, the question that remains is whether Mr. Purbeck has shown that it affected his substantial rights. An error affects substantial rights when it "affected the outcome of the district court proceedings." *Rodriguez*, 398 F.3d at 1299.

Here, the government's breach affected Mr. Purbeck's substantial rights because the district court's language and analysis mirrored the government's descriptions of Mr. Purbeck's conduct and character. The district court's remarks condemning Mr. Purbeck's actions as "psychological torture" and emphasizing his recent civil filing echoed the government's characterizations of the offense conduct and the need for severe punishment. (Doc. 147 at 56). The district court's justification for the extreme upward variance tracked the government's arguments and relied on the recent civil filing—precisely the facts the government improperly emphasized instead of its promised recommendation. There is a reasonable probability that, had

the government fulfilled its duty and advocated for the 70-month sentence, the court would not have found these factors justified imposing the maximum penalty allowed by law. The government's breach of the plea agreement therefore affected his substantial rights.

Mr. Purbeck has met the first three prongs of the plain-error analysis. Therefore, the only question that remains is whether the error "seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *See Rodriguez*, 398 F.3d at 1298. Because the breach resulted in a higher sentence, this Court should "exercise its discretion to correct the forfeited error." *Rosales-Mireles v. United States*, 585 U.S. 129, 135 (2018); see *also United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019). Accordingly, this Court should exercise its discretion to grant relief to Mr. Purbeck in this case and remand for resentencing.[2]

---

[2] Generally, a defendant can request either (1) resentencing before a different judge, or (2) withdrawal of the guilty plea. *Hunter*, 835 F.3d at 1329. Mr. Purbeck does not wish to withdraw his plea and instead requests a resentencing hearing. However, this Court does not have to order that the case be transferred to a different judge on remand because the sentencing judge has retired and is no longer a judge.

II. **The district court erred when it imposed a special condition of supervised release that prohibits Mr. Purbeck from accessing the internet.**

   a. **The district court violated Mr. Purbeck's due process rights by imposing, in its written judgment, a special condition more restrictive than the condition unambiguously pronounced at the sentencing hearing.**

A defendant has a constitutional right to be present during sentencing. *See United States v. Jackson*, 923 F.2d 1494, 1496 (11th Cir. 1991); *see also* Fed. R. Crim. P. 43(a). "The right to be present at sentencing derives from the Fifth Amendment's Due Process Clause." *Rodriguez*, 75 F.4th at 1247 (citing *United States v. Huff*, 512 F.2d 66, 71 (5th Cir. 1975)). Due process requires that the court pronounce the sentence, giving the defendant notice and an opportunity to object. *Rodriguez*, 75 F.4th at 1247. A defendant's due process rights may be violated "when a district court's in-court pronouncement of a sentence differs from the judgment that the court later enters." *Id.*

This pronouncement rule applies to discretionary conditions of supervised release. *Id.* at 1246. Under the Sentencing Reform Act, there are two types of conditions: mandatory and discretionary. *Id.*; 18 U.S.C. § 3583(d). Mandatory conditions are not subject to the pronouncement rule because their oral pronouncement holds little significance; courts are required to impose them. *Rodriguez*, 75 F.4th at 1247-48; *see also United States*

*v. Diggles*, 957 F.3d 551, 558-59 (5th Cir. 2020) (*en banc*); *United States v. Rogers*, 961 F.3d 291, 297 (4th Cir. 2020); *United States v. Anstice*, 930 F.3d 907, 909 (7th Cir. 2019).

On the other hand, district courts "must pronounce at the defendant's sentencing hearing any discretionary conditions of supervised release—that is, any condition of supervised release other than those mandatory conditions set forth in 18 U.S.C. § 3583(d)." *Rodriguez*, 75 F.4th at 1246. These conditions can be imposed only if they are reasonably related to certain statutory factors, involve no greater deprivation of liberty than is reasonably needed, and are consistent with the Sentencing Commission's policy statements. 18 U.S.C. § 3583(d).

Because discretionary conditions do not apply universally, a district court must orally pronounce them during sentencing and provide the defendant with an opportunity to object to their imposition. *Rogers*, 961 F.3d at 298. "When a sentence pronounced orally and unambiguously conflicts with the written order of judgment, the oral pronouncement governs." *United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000). In such an instance, this Court remands the case and instruct the district court to correct the written judgment so that it reflects the oral pronouncement. *Id.* Moreover,

when a defendant had no opportunity to object to an error—as when there is a discrepancy between an oral pronouncement and a later-issued written judgment—review is de novo.  *Rodriguez*, 75 F.4th at 1246 n.5.

Here, the district court violated Mr. Purbeck's due process rights by including a special condition in the written JNC that is more restrictive than the corresponding special condition pronounced during the sentencing hearing.  At the sentencing hearing, the court unambiguously imposed a special condition of supervised release requiring that Mr. Purbeck "must not access the internet, except for reasons approved in advance by the probation officer."  (Doc. 147 at 59).  This special condition was discretionary because it is not mandatory under § 3583(d), so it was thus subject to the pronouncement rule under *Rodriguez*.    *Rodriguez*, 75 F.4th at 1245.  Furthermore, the district court's oral pronouncement provided Mr. Purbeck with notice and an opportunity to object, satisfying due process.  *Id.* at 1247.

However, the subsequent JNC imposed a more severe condition: Mr. Purbeck "must not access the internet"—with no exception for internet use pre-approved by his probation officer.  (Doc. 134 at 5).   This written

condition conflicts with the oral pronouncement and converts a restriction with an exception into an absolute ban on internet access.

Under *Bates*, the oral pronouncement must control because it was unambiguous, made in Purbeck's presence, and provided him an opportunity to object, whereas the written JNC did not. *Bates*, 213 F.3d at 1340. This discrepancy constitutes a due process violation. Therefore, this Court must remand and instruct the district court to correct the written judgment to conform with the oral pronouncement of the special conditions of supervised release. *Id.*

> b. **Even if the written judgment's special condition prohibiting all internet access is held not to conflict with the oral pronouncement's corresponding special condition, a categorical ban on all internet access is an excessive deprivation of liberty and is thus unconstitutional**.

A special condition of supervised release must (1) be reasonably related to a sentencing factor, (2) "involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in 18 U.S.C. § 3553(a)," and (3) be consistent with the Sentencing Commission's relevant policy statements. *United States v. Etienne*, 102 F.4th 1139, 1146 (11th Cir. 2024). While release conditions may limit constitutional rights, this Court endeavors to impose only "narrowly prescribed" restrictions on such rights.

*Henry v. Sheriff of Tuscaloosa Cty.*, 135 F.4th 1271, 1300 n.7 (11th Cir. 2025).  In doing so, this Court has affirmed supervised release conditions that restrict constitutional rights "so long as the conditions are tempered by reasonable exceptions."  *Etienne*, 102 F.4th at 1446-47; *see, e.g.*, *United States v. Cothran*, 855 F.2d 749, 752 (11th Cir. 1988) (affirming condition prohibiting supervisee from entering Fulton County because he could still enter the county with prior permission from his probation officer).

This principle is directly applied to internet restrictions.  This Court has "uniformly upheld" conditions limiting internet use "so long as the defendant . . . has the ability to seek permission from the probation office to use a computer and/or access the internet for specified purposes."  *United States v. Coglianese*, 34 F.4th 1002, 1010 (11th Cir. 2022); *see, e.g.*, *United States v. Zinn*, 321 F.3d 1084, 1093 (11th Cir. 2003); *United States v. Moran*, 573 F.3d 1132, 1140-41 (11th Cir. 2009); *United States v. Carpenter*, 803 F.3d 1224, 1239 (11th Cir. 2015).  In contrast, an absolute prohibition has been expressly disapproved because it amounts to a deprivation of liberty greater than is reasonably necessary.  *See Etienne*, 102 F.4th at 1147.  ("A special condition may burden the right to access the courts so long as the special condition does not amount to an absolute bar on access.") (emphasis in original).

Here, the written judgment imposes just such an unconstitutional absolute bar in contravention of *Etienne*.  A total prohibition on internet access is not narrowly tailored.  It prevents Mr. Purbeck from engaging in lawful and essential activities (such as accessing government services, banking, searching for jobs, and communicating with family), without any mechanism for obtaining permission for such uses.  This Court should therefore vacate the special condition prohibiting Mr. Purbeck from accessing the internet.

## CONCLUSION

For all of the reasons articulated above, this Court should vacate Mr.

Purbeck's sentence and remand for further proceedings.

Dated:  This 4th day of September, 2025.

Respectfully submitted,


*/s/Leigh Ann Webster*
Leigh Ann Webster
Georgia Bar No. 968087
Attorney for Robert Purbeck

STRICKLAND WEBSTER, LLC
830 Glenwood Ave
Suite 510-203
Atlanta, GA 30316
Telephone: (404) 590-7967
Facsimile:  (404) 393-3617
law@stricklandwebster.com

CERTIFICATE OF COMPLIANCE

This brief contains 5,164 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Brief was filed by uploading it with the Eleventh Circuit's Electronic Filing System which will automatically serve opposing counsel with the Brief.

Dated:  This 4th day of September, 2025.

*/s/Leigh Ann Webster*
Leigh Ann Webster
Georgia Bar No. 968087
Attorney for Robert Purbeck

STRICKLAND WEBSTER, LLC
830 Glenwood Ave
Suite 510-203
Atlanta, GA 30316
Telephone: (404) 590-7967
Facsimile:  (404) 393-3617
law@stricklandwebster.com