IN THE

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

24-13841
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

Versus

ROBERT PURBECK,

Defendant-Appellant.
_____

A DIRECT APPEAL OF A CRIMINAL CASE
FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA, NEWNAN DIVISION
_____

APPENDIX OF APPELLANT

LEIGH ANN WEBSTER
Georgia State Bar Number: 968087
Strickland Webster, LLC
830 Glenwood Ave SE
Suite 510-203
Atlanta, GA 30316
404-590-7967

Attorney for Appellant Robert Purbeck

# INDEX OF APPENDIX

**Document**                                                    **Docket/Tab #**

District Court Docket Sheet ................................................................... 0

Indictment ............................................................................ 1

Plea Agreement ................................................................. 116-1

Amended Judgment and Commitment ........................................... 134

Transcript of Sentencing Hearing, Pages 1-65 ............................... 147

Certificate of Service

TAB 0 - Docket

# U.S. District Court
## Northern District of Georgia (Newnan)
## CRIMINAL DOCKET FOR CASE #: 3:21-cr-00004-LMM-RGV-1

Case title: USA v. Purbeck

Date Filed: 03/02/2021

Date Terminated: 11/14/2024

---

Assigned to: Judge Leigh Martin May
Referred to: Magistrate Judge Russell G. Vineyard

Appeals court case number: 24-13841-A
USCA 11th Circuit

### Defendant (1)

**Robert Purbeck**
*TERMINATED: 11/14/2024*
*also known as*
Lifelock
*TERMINATED: 11/14/2024*
*also known as*
Studmaster
*TERMINATED: 11/14/2024*
*also known as*
Studmaster1
*TERMINATED: 11/14/2024*

represented by **Leigh Ann Webster**
Strickland Webster, LLC -Atl
Suite 510-203
830 Glenwood Ave., S.E.
Atlanta, GA 30316
404-590-7967
Email: law@stricklandwebster.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: CJA Appointment

**Andrew C. Hall**
Hall Hirsh Hughes, LLC
Suite 450
150 East Ponce de Leon Avenue
Decatur, GA 30030
404-638-5881
Fax: 404-638-5879
Email: andrew@h3-law.com
*TERMINATED: 11/21/2024*
Designation: CJA Appointment

### Pending Counts

18:1030(a)(2)(C), 1030(c)(2)(B)(i) and
1030(c)(2)(B)(iii) and Section 2 FRAUD
ACTIVITY CONNECTED WITH
COMPUTERS
(1)

### Disposition

IMPRISONMENT: 60 Months as to Counts
1 and 2 each, to run consecutively to each
other, for a total of 120 Months; Supervised
Release: 3 years as to Counts 1 and 2, to run
concurrently to each other, for a total of 3
years; SPECIAL ASSESSMENT: $200;
RESTITUTION: $1,048,702.98 made
payable to the parties listed in the Judgment

| | |
|---|---|
| 18:1030(a)(2)(C), 1030(c)(2)(B)(i) and 1030(c)(2)(B)(iii) and Section 2 FRAUD ACTIVITY CONNECTED WITH COMPUTERS (2) | IMPRISONMENT: 600 Months as to Counts 1 and 2 each, to run consecutively to each other, for a total of 120 Months; Supervised Release: 3 years as to Counts 1 and 2, to run concurrently to each other, for a total of 3 years; SPECIAL ASSESSMENT: $200; RESTITUTION: $1,048,702.98 made payable to the parties listed in the Judgment |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1030(a)(2)(C), 1030(c)(2)(B)(i) and 1030(c)(2)(B)(iii) and Section 2 FRAUD ACTIVITY CONNECTED WITH COMPUTERS (3) | Dismissed per S.O. 07-02 |
| 18:1030(a)(7)(B) and 1030(c)(3)(A) and Section 2 FRAUD ACTIVITY CONNECTED WITH COMPUTERS (4) | Dismissed per S.O. 07-02 |
| 18:1343 and Section 2 FRAUD BY WIRE, RADIO, OR TELEVISION (5-8) | Dismissed per S.O. 07-02 |
| 18:1029(a)(2) and (c)(1)(A)(i) and Section 2 PRODUCES/TRAFFICS IN COUNTERFEIT DEVICE (9-11) | Dismissed per S.O. 07-02 |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Michael V. Herskowitz** |
| | | Office of the United States Attorney-ATL600 |
| | | Northern District of Georgia |
| | | 600 United States Courthouse |
| | | 75 Ted Turner Dr., S.W. |
| | | Atlanta, GA 30303 |
| | | 404-581-6071 |
| | | Email: michael.herskowitz@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Nathan Parker Kitchens**
Office of the United States Attorney-ATL600
Northern District of Georgia
600 United States Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404-581-6185
Email: nathan.kitchens@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Alex R. Sistla**
Office of the United States Attorney-ATL600
Northern District of Georgia
600 United States Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404-581-6000
Fax: 404-581-6181
Email: alex.sistla@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Brian Z. Mund**
DOJ-Crm
10th & Constitution Ave., NW
Washington D.C., DC 20530
202-598-6205
Email: brian.mund@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/02/2021 | 1 | INDICTMENT with Forfeiture Provision as to Robert Purbeck (1) count(s) 1-3, 4, 5-8, 9-11. (dmb) (Entered: 03/03/2021) |
| 03/02/2021 | 2 | Defendant Information Sheet as to Robert Purbeck. (dmb) (Entered: 03/03/2021) |
| 03/02/2021 | 3 | Praecipe filed. Arrest Warrant Issued by Magistrate Judge Regina D Cannon as to Robert Purbeck (dmb) (Entered: 03/03/2021) |
| 03/04/2021 |  | Arrest of Robert Purbeck in District of Idaho. (rvb) (Entered: 03/12/2021) |
| 03/12/2021 | 4 | Rule 5(c)(3) Documents Received from District of Idaho as to Robert Purbeck. (Attachments: # 1 IA Minutes Rule 5 Hearing, # 2 Waiver, # 3 Financial Affidavit, # 4 Order Setting Conditions of Release, # 5 Docket Sheet)(rvb) (Entered: 03/12/2021) |
| 03/12/2021 | 5 | Bond on Rule 5(c)(3) Entered as to Robert Purbeck (rvb) (Entered: 03/12/2021) |

| | | |
|---|---|---|
| 03/15/2021 | | NOTICE OF VIDEO PROCEEDING as to Robert Purbeck: Arraignment set for 3/22/2021 at 10:00 AM before Magistrate Judge Christopher C. Bly. Counsel will be sent instructions prior to the hearing. If a member of the public would like to observe the hearing, please contact Judge Bly's chambers for instructions. You must follow the instructions of the court for remote proceedings available here. The procedure for filing documentary exhibits admitted during the proceeding is available here. *Photographing, recording, or broadcasting of any judicial proceedings, including proceedings held by video teleconferencing or telephone conferencing, is strictly and absolutely prohibited.* (jtj) (Entered: 03/15/2021) |
| 03/22/2021 | | Case as to Robert Purbeck Assigned to Judge Timothy C. Batten, Sr. and Magistrate Judge Russell G. Vineyard. (tcc) (Entered: 03/23/2021) |
| 03/22/2021 | 6 | Minute Entry for proceedings held before Magistrate Judge Christopher C. Bly: ARRAIGNMENT held, PLEA of NOT GUILTY as to Counts 1-3,4,5-8,9-11. (Attachments: # 1 PLEA (With Counsel)) (Tape #Zoom) (tcc) (Entered: 03/23/2021) |
| 03/22/2021 | 7 | ORDER Pursuant to the Due Process Protections Act as to Robert Purbeck. Signed by Magistrate Judge Christopher C. Bly on 3/22/21. (tcc) (Entered: 03/23/2021) |
| 03/22/2021 | | Minute Entry for proceedings held before Magistrate Judge Christopher C. Bly: INITIAL APPEARANCE as to Robert Purbeck. (Event should have been captured on 7 minute entry by the CRD) (Tape #Zoom) (tcc) (Entered: 03/24/2021) |
| 03/23/2021 | 8 | PRETRIAL SCHEDULING ORDER as to Robert Purbeck. Pretrial Conference set for 4/6/2021 at 11:00 AM in ATLA Courtroom 2022 before Magistrate Judge Russell G. Vineyard. See Order for further directives, details, deadlines. Signed by Magistrate Judge Russell G. Vineyard on 3/23/21. (rsh) (Entered: 03/23/2021) |
| 03/26/2021 | 9 | Consent MOTION for Protective Order by USA as to Robert Purbeck. (Attachments: # 1 Text of Proposed Order) (Herskowitz, Michael) (Entered: 03/26/2021) |
| 03/26/2021 | | ORAL MOTION to Modify Conditions of Release by Robert Purbeck. (rsh) (Entered: 03/26/2021) |
| 03/26/2021 | 10 | ORDER granting Oral Motion to Modify Conditions of Pretrial Release as to Robert Purbeck (1). As condition of pretrial release defendant shall not access any computer of any alleged victims. All other conditions of pretrial release shall remain in effect. Signed by Magistrate Judge Christopher C. Bly on 3/26/21. (rsh) (Entered: 03/26/2021) |
| 03/29/2021 | 11 | ORDER granting 9 Motion for Protective Order as to Robert Purbeck (1). See Order for specific directives and details. Signed by Magistrate Judge Russell G. Vineyard on 3/29/21. (rsh) (Entered: 03/29/2021) |
| 03/29/2021 | 12 | Unopposed MOTION for Extension of Time to File Pretrial Motions and Schedule Pretrial Conference with Brief In Support by Robert Purbeck. (Attachments: # 1 Text of Proposed Order) (Hall, Andrew) (Entered: 03/29/2021) |
| 04/06/2021 | 13 | ORDER granting 12 Motion for Extension of Time to File Pretrial Motions and to Schedule Pretrial Conference. All pretrial motions in this case are due 6/7/2021. Pretrial Conference set for 6/8/2021 at 10:00 AM in No Courtroom before Magistrate Judge Russell G. Vineyard. Time excluded from 4/6/2021 until 6/8/2021 pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A) and (B)(iv). Signed by Magistrate Judge Russell G. Vineyard on 4/6/2021. (dmb) (Entered: 04/06/2021) |
| 04/30/2021 | 14 | Notice for Leave of Absence for the following date(s): May 27-28, 2021; June 18-30, 2021; July 1-5 2021, by Andrew C. Hall. (Hall, Andrew) Modified on 5/3/2021 (dmb). (Entered: 04/30/2021) |

| 05/13/2021 | 15 | Notice for Leave of Absence for the following date(s): 7/19-23/21, 7/26-30/21, by Michael V. Herskowitz. (Herskowitz, Michael) Modified docket text on 5/14/2021 (dmb). (Entered: 05/13/2021) |
| --- | --- | --- |
| 05/20/2021 | | Documents 16-17 are sealed. (jpk) (Entered: 05/20/2021) |
| 05/26/2021 | 18 | MOTION for Extension of Time to File Pretrial Motions and Schedule Pretrial Conference re: 13 Order on Motion for Extension of Time, with Brief In Support by Robert Purbeck. (Attachments: # 1 Text of Proposed Order) (Hall, Andrew) Modified on 6/3/2021 (dmb). (Entered: 05/26/2021) |
| 06/03/2021 | 19 | ORDER granting 18 Motion for Extension of Time to file Pretrial Motions and to Schedule Pretrial Conference. Pretrial Motions are due 8/9/2021. Pretrial Conference set for 8/10/2021 at 10:00 AM in No Courtroom before Magistrate Judge Russell G. Vineyard. Time excluded from 6/8/2021 until 8/10/2021 as to Robert Purbeck (1) pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A) and (B)(iv). Signed by Magistrate Judge Russell G. Vineyard on 6/3/2021. (dmb) (Entered: 06/03/2021) |
| 08/03/2021 | 20 | Unopposed MOTION for Extension of Time to File Pretrial Motions and Schedule Pretrial Conference with Brief In Support by Robert Purbeck. (Attachments: # 1 Text of Proposed Order) (Hall, Andrew) (Entered: 08/03/2021) |
| 08/06/2021 | 21 | ORDER GRANTING the 20 Motion for Extension of Time as to Robert Purbeck (1). All pretrial motions in this case are due by 10/12/21, and the Pretrial Conference is rescheduled for 10/13/2021 at 09:30 AM Magistrate Judge Russell G. Vineyard. IT IS HEREBY ORDERED that the period between the previously scheduled date of the pretrial conference, August 10, 2021, and the rescheduled date, October 13, 2021, shall be excluded pursuant to the Speedy Trial Act. Signed by Magistrate Judge Russell G. Vineyard on 8/6/21. (jpa) (Entered: 08/06/2021) |
| 09/17/2021 | 22 | Notice for Leave of Absence for the following date(s): October 1 and 4, 2021; October 22 and 25, 2021; November 18 and 19, 2021; November 22, 23, and 24, 2021; December 6 and 7, 2021; December 27, 28, 29, and 30, 2021; January 5, 6, and 7, 2022; January 10 and 11, 2022, by Andrew C. Hall. (Hall, Andrew) (Entered: 09/17/2021) |
| 10/06/2021 | 23 | Unopposed MOTION for Extension of Time to File Pretrial Motions and Schedule Pretrial Conference with Brief In Support by Robert Purbeck. (Attachments: # 1 Text of Proposed Order) (Hall, Andrew) Added MOTION to Continue on 10/7/2021 (dmb). (Entered: 10/06/2021) |
| 10/07/2021 | 24 | ORDER granting 23 Motion for Extension of Time and Motion for Continuance of Pretrial Conference. Pretrial Motions are due 12/13/2021. Pretrial Conference set for 12/14/2021 at 10:30 AM in No Courtroom before Magistrate Judge Russell G. Vineyard. Time excluded from 10/13/2021 until 12/14/2021 pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A) and (B)(iv) as to Robert Purbeck (1). Signed by Magistrate Judge Russell G. Vineyard on 10/7/2021. (dmb) (Entered: 10/07/2021) |
| 12/13/2021 | 25 | MOTION to Suppress Statements , *Password Disclosures, and Matters Arising Therefrom* with Brief In Support by Robert Purbeck. (Hall, Andrew) (Entered: 12/13/2021) |
| 12/13/2021 | 26 | MOTION to Suppress Search and Seizure *Arising from August 21, 2019 Search of Defendant's Home and Fruits Arising Therefrom* with Brief In Support by Robert Purbeck. (Hall, Andrew) (Entered: 12/13/2021) |
| 12/13/2021 | 27 | MOTION to Suppress Search and Seizure *of Email Accounts and to Suppress Items Covered by Search Warrant No. 1:21-MC-1981* with Brief In Support by Robert Purbeck. (Hall, Andrew) (Entered: 12/13/2021) |

USCA11 Case: 24-13841      Document: 27      Date Filed: 09/04/2025      Page: 9 of 138

| 12/13/2021 | 29 | MOTION to Compel Discovery with Brief In Support by Robert Purbeck. (Hall, Andrew) (Entered: 12/13/2021) |
|---|---|---|
| 12/14/2021 | 36 | Minute Entry for proceedings held before Magistrate Judge Russell G. Vineyard: Telephone Conference as to Robert Purbeck. Time is excluded from 12/14/2021-1/14/2022 pursuant to 18 U.S.C.§3161(h)(7)(A). (Tape #FTR) (dmb) (Entered: 12/16/2021) |
| 12/15/2021 | | Documents 28 and 30-34 are sealed. (cmd) (Entered: 12/15/2021) |
| 12/16/2021 | | Document 35 is sealed. (dmb) (Entered: 12/16/2021) |
| 12/20/2021 | 37 | ORDER granting 29 Motion to Compel as to Robert Purbeck (1) with respect to such communications which chall be produced by 12/30/2021. The communications with "dissent" may be shared with the defendant solely for the purpose of the defense of this criminal case. The Motion to Compel is denied without prejudice with respect to Miranda or advice of legal rights forms and with respect to recordings with leave to renew following the evidentiary hearing. Signed by Magistrate Judge Russell G. Vineyard on 12/20/2021. (dmb) (Entered: 12/20/2021) |
| 01/26/2022 | | Document 42 is sealed. (adg) (Entered: 01/26/2022) |
| 01/31/2022 | | Documents 43-45 are sealed. (jpa) (Entered: 01/31/2022) |
| 02/11/2022 | | ORDER BY DOCKET ENTRY ONLY as to Robert Purbeck. Defendant's oral request for extension of time to file his replies regarding [Docs. 26, 27 & 30], as amended at [Docs. 38 & 39], is GRANTED. Defendant's replies are due 2/22/2022. IT IS HEREBY ORDERED that the period between the original due date of defendant's replies, February 14, 2022, and the extended date to complete the briefing, February 22, 2022, shall be excluded pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A) and (B)(iv). The Court finds that the extension is warranted because counsel for the defendant required additional time to prepare his replies. Entered by Magistrate Judge Russell G. Vineyard on 2/11/2022. (aez) (Entered: 02/11/2022) |
| 03/01/2022 | 48 | Notice for Leave of Absence for the following date(s): March 14, 2022; April 8, 2022; June 20, 21, 22, 23, 24, 25, 26, and 27, 2022, by Andrew C. Hall. (Hall, Andrew) (Entered: 03/01/2022) |
| 03/11/2022 | 49 | Notice for Leave of Absence for the following date(s): July 25, 2022, through August 5, 2022, by Michael V. Herskowitz. (Herskowitz, Michael) (Entered: 03/11/2022) |
| 05/13/2022 | | Document 52 is sealed. (bgt) (Entered: 05/16/2022) |
| 05/17/2022 | 53 | Notice for Leave of Absence for the following date(s): 6/17-28/2022; 9/28-30/2022; and 10/1-4/2022, by Andrew C. Hall. (Hall, Andrew) Modified docket text on 5/18/2022 (dmb). (Entered: 05/17/2022) |
| 05/24/2022 | | NOTICE OF HEARING as to Robert Purbeck. Evidentiary Hearing re [Doc. 25] set for 9/1/2022 at 10:00 AM in NEWN 3rd Floor Courtroom before Magistrate Judge Russell G. Vineyard. (aez) (Entered: 05/24/2022) |
| 07/12/2022 | | Document 54 is sealed. (jpa) (Entered: 07/12/2022) |
| 07/21/2022 | | Document 55 is sealed. (dmb) (Entered: 07/21/2022) |
| 07/21/2022 | | Clerk's Certificate of Mailing as to Counsel for Robert Purbeck re 55 Order-SEALED. (dmb) (Entered: 07/21/2022) |
| 08/10/2022 | | Document 56 is sealed. (tmf) (Entered: 08/10/2022) |

| 08/11/2022 | | Document 57 is sealed. (jpa) (Entered: 08/11/2022) |
|---|---|---|
| 08/16/2022 | 58 | NOTICE OF ATTORNEY APPEARANCE Brian Mund appearing for USA. (Mund, Brian) (Entered: 08/16/2022) |
| 08/19/2022 | 59 | Return of Service Executed on 7/28/2022 as to Sarah Ganger. (rsg) (Entered: 08/19/2022) |
| 08/19/2022 | 60 | Return of Service Executed on 7/18/2022 as to Ryan Pacheco. (rsg) (Entered: 08/19/2022) |
| 08/19/2022 | 61 | Return of Service Executed on 7/18/2022 as to Ryan Pacheco. (Refiled with correct attachment.) (rsg) (Entered: 08/19/2022) |
| 08/23/2022 | 62 | Notice for Leave of Absence for the following date(s): September 28-October 4, 2022; November 11-14, 2022; November 21, 2022; November 25, 2022; November 29, 2022; December 1-5, 2022 by Andrew C. Hall. (Hall, Andrew) Modified on 8/24/2022 to edit text. (aaq). (Entered: 08/23/2022) |
| 08/29/2022 | 63 | NOTICE OF ATTORNEY APPEARANCE Alex R. Sistla appearing for USA. (Sistla, Alex) (Entered: 08/29/2022) |
| 09/01/2022 | 64 | Minute Entry for proceedings held before Magistrate Judge Russell G. Vineyard: Evidentiary Hearing as to Robert Purbeck began on defendants motion to suppress, [Doc. 25 ]. Witnesses sworn and testified. Government's exhibits 1-7 admitted. Defendant's exhibits 1-16 & 19 admitted and retained by the Court. Hearing concluded and will reconvene on 9/2/2022. Exhibits retained to be forwarded to the Clerks Office. (Court Reporter Lori Burgess) (rsg) (Entered: 09/02/2022) |
| 09/01/2022 | 66 | EXHIBIT LIST AND WITNESS LIST as to Robert Purbeck filed by USA, Robert Purbeck (jkb) Modified on 9/8/2022 (jkb). (Entered: 09/08/2022) |
| 09/02/2022 | 67 | EXHIBIT LIST AND WITNESS LIST as to Robert Purbeck filed by USA, Robert Purbeck (jkb) (Entered: 09/08/2022) |
| 09/06/2022 | 68 | Government Exhibits Audio/Video admitted and retained at the 64 Evidentiary Hearing, as to Robert Purbeck have been received from Courtroom Deputy and placed in the custody of the Records Clerks. CD #7 (jkb) (Entered: 09/08/2022) |
| 09/06/2022 | 69 | Defendant Exhibits Audio/Video admitted and retained at the 64 Evidentiary Hearing, as to Robert Purbeck have been received from Courtroom Deputy and placed in the custody of the Records Clerks. Thumb Drive #19 (jkb) (Entered: 09/08/2022) |
| 09/06/2022 | 70 | GOVERNMENT DOCUMENTARY EXHIBITS admitted and retained at the 64 Evidentiary Hearing, as to Robert Purbeck have been received from Courtroom Deputy and placed in the custody of the Records Clerks. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 9, # 8 Exhibit 10, # 9 Exhibit 11)(jkb) (Additional attachment(s) added on 9/8/2022: # 10 Corrected Receipt for exhibits) (jkb). (Entered: 09/08/2022) |
| 09/06/2022 | 71 | DEFENDANTS DOCUMENTARY EXHIBITS admitted and retained at the 64 Evidentiary Hearing, as to Robert Purbeck have been received from Courtroom Deputy and placed in the custody of the Records Clerks. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 20, # 18 Exhibit 21, # 19 Exhibit 22, # 20 Exhibit 23)(jkb) (Entered: 09/08/2022) |
| 09/08/2022 | | Document 65 is sealed. (jpa) (Entered: 09/08/2022) |
| 09/08/2022 | | REMARK as to Robert Purbeck re 25 MOTION to Suppress Statements *, Password Disclosures, and Matters Arising Therefrom* Defendant's post hearing brief due |

| | | P1/7/2022. Government's brief due 12/6/2022 and defendant's reply due 12/21/2022. (aez) (Entered: 09/08/2022) |
|---|---|---|
| 09/08/2022 | 72 | NOTICE TO COUNSEL OF RECORD for USA regarding RECLAMATION AND DISPOSITION OF UNCLAIMED Documentary EXHIBITS pursuant to Local Rule 79.1D. Re: 70 Exhibits (jkb) (Entered: 09/08/2022) |
| 09/08/2022 | 73 | NOTICE TO COUNSEL OF RECORD for Defendant regarding RECLAMATION AND DISPOSITION OF UNCLAIMED Documentary EXHIBITS pursuant to Local Rule 79.1D. Re: 71 Exhibits (jkb) (Entered: 09/08/2022) |
| 10/26/2022 | 74 | Unopposed MOTION for Extension of Time and Reset the Post-Hearing Briefing Schedule re: Remark, with Brief In Support by Robert Purbeck. (Attachments: # 1 Text of Proposed Order) (Hall, Andrew) (Entered: 10/26/2022) |
| 12/13/2022 | 75 | Notice for Leave of Absence for the following date(s): January 2- 10, 2023, by Andrew C. Hall. (Hall, Andrew) Modified docket text on 12/14/2022 (dmb). (Entered: 12/13/2022) |
| 01/04/2023 | 76 | TRANSCRIPT Vol. 1 of Evidentiary Proceedings as to Robert Purbeck held on 9/1/2022, before Judge Russell G. Vineyard. Court Reporter/Transcriber Lori Burgess. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory-court-reporters. Redaction Request due 1/25/2023. Redacted Transcript Deadline set for 2/6/2023. Release of Transcript Restriction set for 4/4/2023. (Attachments: # 1 Notice of Filing Transcript) (llb) (Entered: 01/04/2023) |
| 01/04/2023 | 77 | TRANSCRIPT Vol. 2 of Evidentiary Proceedings as to Robert Purbeck held on 9/2/2022, before Judge Russell G. Vineyard. Court Reporter/Transcriber Lori Burgess. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory-court-reporters. Redaction Request due 1/25/2023. Redacted Transcript Deadline set for 2/6/2023. Release of Transcript Restriction set for 4/4/2023. (Attachments: # 1 Notice of Filing Transcript) (llb) (Entered: 01/04/2023) |
| 01/05/2023 | 78 | ORDER granting 74 Motion for Extension of Time for defendant's Post-Hearing Brief Schedule. The defendant's post-hearing brief on the defendant'smotion to suppress statements, 25 , shall be filed by 2/13/2023, and the government's response brief is due by 3/15/2023. The defendant's reply shall be filed by 4/5/2023. Time excluded from 11/7/2022 until 4/5/2023 pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A) and (B)(iv) as to Robert Purbeck (1). Signed by Magistrate Judge Russell G. Vineyard on 1/5/2023. (dmb) (Entered: 01/06/2023) |
| 01/13/2023 | 79 | Notice for Leave of Absence for the following date(s): Feb. 13, 14, 15, 16, 17, 18, 19, and 20, 2023; March 10, 11, 12, and 13, 2023; April 28, 29, 30, and May 1, 2023; May 24, 25, and 26, 2023., by Andrew C. Hall. (Hall, Andrew) (Entered: 01/13/2023) |
| 02/13/2023 | 80 | Post-Hearing Brief as to Robert Purbeck filed by Robert Purbeck re 25 MOTION to Suppress Statements , *Password Disclosures, and Matters Arising Therefrom* (Hall, Andrew) (Entered: 02/13/2023) |
| 02/21/2023 | 81 | Notice for Leave of Absence for the following date(s): March 10 and 13, 2023; April 28, 2023; May 1, 2023; May 24, 25, and 26, 2023; June 23, 24, 25, 26, 27, 28, 29, 30, 2023; and July 1, 2, 3, 2023, by Andrew C. Hall. (Hall, Andrew) (Entered: 02/21/2023) |
| 03/15/2023 | 82 | RESPONSE in Opposition as to Robert Purbeck filed by USA re 25 MOTION to Suppress Statements , *Password Disclosures, and Matters Arising Therefrom* (Sistla, Alex) (Entered: 03/15/2023) |

| 04/03/2023 | 83 | Unopposed MOTION for Extension of Time to File Response/Reply as to 82 Response in Opposition with Brief In Support by Robert Purbeck. (Attachments: # 1 Text of Proposed Order) (Hall, Andrew) (Entered: 04/03/2023) |
|---|---|---|
| 04/03/2023 | 84 | ORDER granting 83 Motion for Extension of Time to File Response/Reply as to Robert Purbeck (1). Mr. Purbeck shall file his reply brief no later than 04/11/2023. 04/03/2023-04/11/2023 shall be excluded from Speedy Trial Act calculations because the Court finds the reason for the delay was for good cause and the interests of justice in granting the continuance outweigh the publics and the defendants rights to a speedy trial. 18 U.S.C. § 3161, et seq.Signed by Magistrate Judge Russell G. Vineyard on 04/03/2023. (jkb) (Entered: 04/03/2023) |
| 04/11/2023 | 85 | REPLY BRIEF as to Robert Purbeck filed by Robert Purbeck re 25 MOTION to Suppress Statements , *Password Disclosures, and Matters Arising Therefrom* (Hall, Andrew) (Entered: 04/11/2023) |
| 04/18/2023 | 86 | Notice for Leave of Absence for the following date(s): April 28, 2023; May 1, 2023; May 18 and 19, 2023; May 22, 2023; May 24, 25, 26, 2023; June 23, 24, 25, 26, 27, 28, 29, and 30, 2023; July 1, 2, and 3, 2023., by Andrew C. Hall. (Hall, Andrew) (Entered: 04/18/2023) |
| 05/18/2023 | 87 | REPORT AND RECOMMENDATION as to Robert Purbeck RECOMMENDING defendant's 25 , 26 , 27 , 30 , 38 , and 39 Motions to Dismiss and to suppress be DENIED. Signed by Magistrate Judge Russell G. Vineyard on 5/18/23. (jpa) (Entered: 05/19/2023) |
| 05/18/2023 | | ORDER CERTIFYING CASE READY FOR TRIAL as to Robert Purbeck. Signed by Magistrate Judge Russell G. Vineyard on 5/18/23. (jpa) (Entered: 05/19/2023) |
| 05/18/2023 | 88 | ORDER for Service of 87 Report and Recommendation-SEALED by Magistrate Judge Russell G. Vineyard as to Robert Purbeck. Each party may file written objections to the Report & Recommendation within 14 days of service. If no objections are filed, the Report & Recommendation may be adopted as the opinion and order of the District Court. Signed by Magistrate Judge Russell G. Vineyard on 5/18/23. (jpa) (Entered: 05/19/2023) |
| 05/18/2023 | | Documents 87-88 are sealed. (jpa) (Entered: 05/19/2023) |
| 05/19/2023 | | Clerk's Certificate of Mailing as to USA and Robert Purbeck re 87 REPORT AND RECOMMENDATION and 88 Order for Service of Report and Recommendation-SEALED, Order Certifying Case Ready for Trial-SEALED. (jpa) (Entered: 05/19/2023) |
| 05/24/2023 | 89 | Notice for Leave of Absence for the following date(s): June 9, 2023 through June 26, 2023, by Alex R. Sistla. (Sistla, Alex) (Entered: 05/24/2023) |
| 05/30/2023 | 90 | Unopposed MOTION for Extension of Time File Objections to the Magistrate Court's Report and Recommendation re: Sealed Document notification with Brief In Support by Robert Purbeck. (Attachments: # 1 Text of Proposed Order) (Hall, Andrew) (Entered: 05/30/2023) |
| 05/30/2023 | | Document 90 is sealed. (dmb) (Entered: 06/01/2023) |
| 06/01/2023 | 91 | ORDER granting 90 Motion for Extension of Time to file objections to the 87 Report and Recommendation. The objections are due 6/26/2023. Time excluded from 6/1/2023 until 6/26/2023. as to Robert Purbeck (1). Signed by Judge Timothy C. Batten, Sr. on 6/1/2023. (dmb) (Entered: 06/01/2023) |
| 06/01/2023 | | Document 91 is sealed. (dmb) (Entered: 06/01/2023) |

| | | |
|---|---|---|
| 06/26/2023 | 92 | OBJECTION to 87 Report and Recommendation to Robert Purbeck filed by Robert Purbeck (Hall, Andrew) Modified on 6/27/2023 (bgt). (Entered: 06/26/2023) |
| 06/27/2023 | | Clerk's Remark: Sealed restriction on 87 R&R and 88 Order for Service removed per direction in 87 as to Robert Purbeck. (bgt) (Entered: 06/27/2023) |
| 06/28/2023 | 93 | Notice for Leave of Absence for the following date(s): July 10-21, 2023, by Michael V. Herskowitz. (Herskowitz, Michael) (Entered: 06/28/2023) |
| 07/11/2023 | 94 | Notice for Leave of Absence for the following date(s): August 30 and 31, 2023; September 1, 2, 3, 4, and 5, 2023, by Andrew C. Hall. (Hall, Andrew) (Entered: 07/11/2023) |
| 07/20/2023 | 95 | MOTION for Leave to File Motion to Suppress 2023 Searches of I-Phones with Brief In Support by Robert Purbeck. (Attachments: # 1 Exhibit 1 - Motion to Suppress 2023 Searches of I-phones, # 2 Exhibit AA - I-phone 8, # 3 Exhibit BB - I-phone 7) (Hall, Andrew) (Entered: 07/20/2023) |
| 07/26/2023 | 96 | ORDER adopting 87 Report and Recommendation, the 25 , 26 , 27 , 30 , 38 , and 39 Motions to Suppress and Dismiss as to Robert Purbeck (1) are denied. This case is de-certified ready for trial and the Motion 95 is referred to the Chief Magistrate Judge Vineyard for further proceedings. Signed by Judge Timothy C. Batten, Sr. on 7/26/2023. (dmb) (Entered: 07/26/2023) |
| 07/26/2023 | | Document 96 is sealed. (dmb) (Entered: 07/26/2023) |
| 07/26/2023 | 97 | MOTION for Leave to File supplemental motion to suppress searches of computers, phones, hard-drives, and storage devices with Brief In Support by Robert Purbeck. (Attachments: # 1 Exhibit 1 - Supplemental Motion to Suppress Searches of Compuers, Phones, Hard-Drives, and Storage Devices, # 2 Exhibit CC - (1B198 - Seagate), # 3 Exhibit DD - (1B198 - Seagate), # 4 Exhibit EE - (1B198 - Seagate), # 5 Exhibit FF - (1B181 - HP Laptop Elite), # 6 Exhibit GG - (1B184 - HP Z240 Tower), # 7 Exhibit HH - (1B184 - HP Z240 Tower), # 8 Exhibit II (1B185 Mac Book Pro), # 9 Exhibit JJ (June 28, 2021 multiple devices)) (Hall, Andrew) (Entered: 07/26/2023) |
| 08/02/2023 | | NOTICE OF HEARING as to Robert Purbeck. Conference call re: motions and briefing schedule set for 8/2/2023 at 10:30 AM via Telephone before Magistrate Judge Russell G. Vineyard. (aez) (Entered: 08/02/2023) |
| 08/02/2023 | 98 | Minute Entry for proceedings held before Magistrate Judge Russell G. Vineyard: granting 95 Motion for Leave to File as to Robert Purbeck (1); Telephone Conference as to Robert Purbeck. The Clerk is directed to file the motion to suppress. The government's responses are due 9/7/2023 and the defendant replies are due by 10/6/2023. (Tape #MS Teams) (dmb) (Entered: 08/02/2023) |
| 08/02/2023 | 99 | MOTION to Suppress by Robert Purbeck. (Attachments: # 1 Exhibit AA, # 2 Exhibit BB) (dmb) (Entered: 08/02/2023) |
| 08/02/2023 | 100 | Order to Unseal 96 Order as to Robert Purbeck. Signed by Judge Timothy C. Batten, Sr. on 8/2/2023. (dmb) (Entered: 08/02/2023) |
| 09/07/2023 | 101 | RESPONSE in Opposition as to Robert Purbeck filed by USA re 99 MOTION to Suppress *Searches of iPhones* (Herskowitz, Michael) (Entered: 09/07/2023) |
| 09/07/2023 | 102 | RESPONSE in Opposition as to Robert Purbeck filed by USA re 97 MOTION for Leave to File supplemental motion to suppress searches of computers, phones, hard-drives, and storage devices (Herskowitz, Michael) (Entered: 09/07/2023) |

| 09/18/2023 | [103](#) | Notice for Leave of Absence for the following date(s): October 24-30, 2023; November 17, 20-22, 24, and 27, 2023; December 1-4, 2023, by Andrew C. Hall. (Hall, Andrew) Modified docket text on 9/20/2023 (dmb). (Entered: 09/18/2023) |
| --- | --- | --- |
| 10/06/2023 | [104](#) | REPLY BRIEF as to Robert Purbeck filed by Robert Purbeck re [99](#) MOTION to Suppress (Hall, Andrew) (Entered: 10/06/2023) |
| 10/06/2023 | [106](#) | REPLY BRIEF as to Robert Purbeck filed by Robert Purbeck re [97](#) MOTION for Leave to File supplemental motion to suppress searches of computers, phones, hard-drives, and storage devices (Hall, Andrew) (Entered: 10/06/2023) |
| 10/06/2023 | | Document 105 is sealed. (tmf) (Entered: 10/10/2023) |
| 10/11/2023 | [107](#) | REPLY TO RESPONSE to Motion as to Robert Purbeck filed by USA re: [99](#) MOTION to Suppress *2023 Searches of iPhones* (Attachments: # [1](#) Exhibit Exhibit A)(Herskowitz, Michael) Modified on 10/25/2023 (dmb). (Entered: 10/11/2023) |
| 10/25/2023 | [108](#) | REPORT AND RECOMMENDATION that the [99](#) MOTION to Suppress be denied as moot and the [97](#) MOTION for Leave to File supplemental motion to suppress searches of computers, phones, hard-drives, and storage devices be denied; ORDER CERTIFYING CASE READY FOR TRIAL as to Robert Purbeck. Signed by Magistrate Judge Russell G. Vineyard on 10/25/2023. (dmb) Modified docket text on 11/1/2023 (dmb). (Entered: 10/25/2023) |
| 10/25/2023 | [109](#) | ORDER for Service of [108](#) Report and Recommendation,, Order Certifying Case Ready for Trial, by Magistrate Judge Russell G. Vineyard as to Robert Purbeck. Each party may file written objections to the Report & Recommendation within 14 days of service. If no objections are filed, the Report & Recommendation may be adopted as the opinion and order of the District Court. Signed by Magistrate Judge Russell G. Vineyard on 10/25/2023. (dmb) (Entered: 10/25/2023) |
| 10/25/2023 | | ORDER granting [107](#) Motion for Leave to File as to Robert Purbeck (1). Signed by Magistrate Judge Russell G. Vineyard on 10/25/2023. (dmb) (Entered: 10/25/2023) |
| 11/14/2023 | [110](#) | ORDER adopting the [108](#) Report and Recommendation as to Robert Purbeck (1)The [97](#) Motion for Leave to File a supplemental motion to suppress is denied and the [99](#) Motion to Suppress is denied as moot. Signed by Judge Timothy C. Batten, Sr. on 11/14/2023. (dmb) Modified docket text on 11/22/2023 (dmb). (Entered: 11/15/2023) |
| 12/07/2023 | [111](#) | Notice for Leave of Absence for the following date(s): December 26-29, 2023; February 16-26, 2024., by Andrew C. Hall. (Hall, Andrew) Modified docket text on 12/7/2023 (dmb). (Entered: 12/07/2023) |
| 01/03/2024 | | NOTICE SETTING TRIAL as to Robert Purbeck, Pretrial Conference set for 5/16/2024 at 10:00 AM in NEWN 3rd Floor Courtroom before Judge Timothy C. Batten Sr.. Jury Trial set for 5/21/2024 at 09:00 AM in NEWN 3rd Floor Courtroom before Judge Timothy C. Batten Sr. Motions in limine shall be filed on or before 05/01/2024; responses to motions in limine shall be filed on or before 05/08/2024. Only one consolidated motion in limine shall be filed by each party and the motion shall not exceed 25 pages. The response brief to the motion in limine shall not exceed 25 pages. Written Order to follow. (usw) (Entered: 01/03/2024) |
| 01/04/2024 | [112](#) | ORDER scheduling a Jury Trial for 5/21/2024 at 9:00 a.m. in the Newnan Third Floor Courtroom. A pretrial conference shall be held on 5/16/2024 at 10:00 am. Time excluded from 12/1/2023 until 5/21/2024 pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(ii) & (iv). Signed by Judge Timothy C. Batten, Sr. on 1/4/2024. (dmb) (Entered: 01/04/2024) |

| | | |
|---|---|---|
| 01/29/2024 | [113](#) | Notice for Leave of Absence for the following date(s): February 15, 2024, February 16, 2024, February 20, 2024, and February 21, 2024, by Alex R. Sistla. (Sistla, Alex) (Entered: 01/29/2024) |
| 02/23/2024 | [114](#) | Notice for Leave of Absence for the following date(s): April 1st - April 5th, 2024, by Michael V. Herskowitz. (Herskowitz, Michael) (Entered: 02/23/2024) |
| 03/01/2024 | | NOTICE OF HEARING as to Robert Purbeck. Change of Plea Hearing set for 3/19/2024 at 11:00 AM in ATLA Courtroom 2106 before Judge Timothy C. Batten Sr. (usw) (Entered: 03/01/2024) |
| 03/05/2024 | [115](#) | Notice for Leave of Absence for the following date(s): March 8, 2024, April 19, 2024, and May 20, 2024, through May 24, 2024, by Alex R. Sistla. (Sistla, Alex) (Entered: 03/05/2024) |
| 03/19/2024 | [116](#) | Minute Entry for proceedings held before Judge Timothy C. Batten, Sr.: Change of Plea Hearing. PLEA of GUILTY by Robert Purbeck (1) Guilty Count 1-2. (Attachments: # [1](#) Guilty Plea and Plea Agreement) (Court Reporter Denise Stewart) (dmb) (Entered: 03/19/2024) |
| 03/19/2024 | [117](#) | NOTICE OF SENTENCING Set/Reset as to Robert Purbeck Sentencing set for 6/18/2024 at 10:30 AM in NEWN 3rd Floor Courtroom before Judge Timothy C. Batten Sr.. (dmb) (Entered: 03/19/2024) |
| 04/29/2024 | [118](#) | TRANSCRIPT of Proceedings as to Robert Purbeck held on March 19, 2024, before Judge Timothy C. Batten. Court Reporter/Transcriber Denise Stewart. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory-court-reporters. Tape Number: 1. Redaction Request due 5/20/2024. Redacted Transcript Deadline set for 5/30/2024. Release of Transcript Restriction set for 7/29/2024. (Attachments: # [1](#) Appendix Notice of Filing Transcript) (dms) (Entered: 04/29/2024) |
| 05/14/2024 | | NOTICE OF SENTENCING Reset as to Robert Purbeck. Sentencing reset for 9/11/2024 at 10:30 AM in NEWN 3rd Floor Courtroom before Judge Timothy C. Batten Sr. (usw) (Entered: 05/14/2024) |
| 06/13/2024 | [119](#) | Notice for Leave of Absence for the following date(s): August 8, 2024 through August 21, 2024, by Andrew C. Hall. (Hall, Andrew) Modified on 6/13/2024 (jkb). (Entered: 06/13/2024) |
| 07/24/2024 | [120](#) | Notice for Leave of Absence for the following date(s): September 3, 2024, through September 6, 2024, by Michael V. Herskowitz. (Herskowitz, Michael) (Entered: 07/24/2024) |
| 08/07/2024 | [121](#) | Notice for Leave of Absence for the following date(s): Sept. 23 through Oct. 7, 2024, by Andrew C. Hall. (Hall, Andrew) Modified on 8/8/2024 (jkb). (Entered: 08/07/2024) |
| 08/13/2024 | [122](#) | Notice for Leave of Absence for the following date(s): September 3, 2024, February 13, 2025, February 14, 2025, and February 18, 2025, by Alex R. Sistla. (Sistla, Alex) (Entered: 08/13/2024) |
| 08/19/2024 | | NOTICE OF HEARING as to Robert Purbeck. Sentencing reset for 11/13/2024 at 11:00 AM in NEWN 3rd Floor Courtroom before Judge Timothy C. Batten Sr. (usw) (Entered: 08/19/2024) |

| Date | Doc # | Description |
|---|---|---|
| 10/02/2024 | 123 | Notice for Leave of Absence for the following date(s): November 22, 2024; November 25, 26, 27, 28, and 29, 2024; December 2, 2024; December 6, 2024; December 9 and 10, 2024; December 23, 24, 25, 26, and 27, 2024; December 30 and 31, 2024; and January 1, 2, and 3, 2025, by Andrew C. Hall. (Hall, Andrew) (Entered: 10/02/2024) |
| 11/04/2024 | | Document 124 is sealed. (dmb) (Entered: 11/06/2024) |
| 11/06/2024 | | Document 125 is sealed. (dmb) (Entered: 11/06/2024) |
| 11/06/2024 | | Document 126 is sealed. (dmb) (Entered: 11/06/2024) |
| 11/08/2024 | 127 | Sentencing Memorandum as to Robert Purbeck filed by USA (Attachments: # 1 Exhibit 1)(Herskowitz, Michael) (Entered: 11/08/2024) |
| 11/08/2024 | | Document 128 is sealed. (tht) (Entered: 11/12/2024) |
| 11/12/2024 | 130 | PRO-SE MOTION for Recusal of Chief Judge Timothy Batten Sr. due to unlawful inducements by a party and conflicts of interest - MOTION for dismissal with prejudice on grounds of violations of due process - sanctions demanded by Robert Purbeck. (jkb) (Entered: 11/14/2024) |
| 11/13/2024 | 131 | Minute Entry for proceedings held before Judge Timothy C. Batten, Sr.: Sentencing hearing held as to Robert Purbeck. (Court Reporter Geraldine Glover) (jkb) (Entered: 11/14/2024) |
| 11/14/2024 | 132 | JUDGMENT AND COMMITMENT as to Robert Purbeck (1), Count(s) 1, Count 2 IMPRISONMENT: 60 Months as to Counts 1 and 2 each, to run consecutively to each other, for a total of 120 Months; Supervised Release: 3 years as to Counts 1 and 2, to run concurrently to each other, for a total of 3 years; SPECIAL ASSESSMENT: $200; RESTITUTION: $1,048,702.98 made payable to the parties listed in the Judgment Signed by Judge Timothy C. Batten, Sr. on 11/14/2024. --Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (dmb) Modified docket text on 11/15/2024 (dmb). Modified on 11/15/2024 per direction of chambers (jkb). (Entered: 11/14/2024) |
| 11/14/2024 | 133 | ORDER denying 130 Motion for Recusal as to Robert Purbeck (1); denying 130 Motion to Dismiss as to Robert Purbeck (1). Signed by Judge Timothy C. Batten, Sr. on 11/14/2024. (jkb) (Entered: 11/14/2024) |
| 11/14/2024 | | Clerk's Certificate of Mailing as to Robert Purbeck re 133 Order on Motion for Recusal, Order on Motion to Dismiss. (jkb) (Entered: 11/14/2024) |
| 11/15/2024 | 134 | AMENDED JUDGMENT AND COMMITMENT as to Robert Purbeck (1), Count(s) 1, 2, IMPRISONMENT: 60 Months as to Counts 1 and 2 each, to run consecutively to each other, for a total of 120 Months; Supervised Release: 3 years as to Counts 1 and 2, to run concurrently to each other, for a total of 3 years; SPECIAL ASSESSMENT: $200; RESTITUTION: $1,048,702.98 made payable to the parties listed in the Judgment; Count(s) 3, 4, 5-8, 9-11, Dismissed per S.O. 07-02 Signed by Judge Timothy C. Batten, Sr. on 11/15/2024. --Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (jkb) (Entered: 11/15/2024) |
| 11/20/2024 | 135 | MOTION to Appoint Counsel with Brief In Support by Robert Purbeck. (Attachments: # 1 Text of Proposed Order) (Hall, Andrew) (Entered: 11/20/2024) |
| 11/20/2024 | 136 | MOTION for Leave to Appeal In Forma Pauperis with Brief In Support by Robert Purbeck. (Hall, Andrew) (Entered: 11/20/2024) |
| 11/20/2024 | 137 | NOTICE OF APPEAL as to Robert Purbeck re 134 Amended Judgment and Commitment,, 132 Judgment and Commitment,,. Transcript Order Form due on |

| 11/21/2024 | [138](#) | ORDER granting [135](#) Motion to Appoint Counsel as to Robert Purbeck (1). Leigh Ann Webster is hereby appointed to represent defendant Robert Purbeck. Andrew C. Hall is relieved of any further representation of defendant. Signed by Magistrate Judge Russell G. Vineyard on 11/21/2024. (jkb) (Entered: 11/21/2024) |
|---|---|---|
| 11/21/2024 | | Attorney update in case as to Robert Purbeck. Attorney Leigh Ann Webster for Robert Purbeck added. Attorney Andrew C. Hall terminated. (jkb) (Entered: 11/21/2024) |
| 11/21/2024 | [139](#) | ORDER granting [136](#) Motion for Leave to Appeal In Forma Pauperis as to Robert Purbeck (1). Signed by Judge Timothy C. Batten, Sr. on 11/21/2024. (jkb) (Entered: 11/21/2024) |
| 11/22/2024 | [140](#) | USCA Appeal Transmission Letter as to Robert Purbeck to USCA 11th Circuit re: [137](#) Notice of Appeal filed by Robert Purbeck. (dmb) (Entered: 11/22/2024) |
| 11/22/2024 | [141](#) | Transmission of Certified Copy of Notice of Appeal, Order on IFP, J&C and Docket Sheet as to Robert Purbeck to US Court of Appeals re [137](#) Notice of Appeal (dmb) (Entered: 11/22/2024) |
| 11/25/2024 | [143](#) | USCA Acknowledgment of Receipt of Notice of Appeal as to Robert Purbeck for [137](#) Notice of Appeal filed by Robert Purbeck. Case Appealed to USCA 11th Circuit Case Number 24-13841-A (dmb) (Entered: 12/02/2024) |
| 11/25/2024 | [144](#) | USCA Order as to Robert Purbeck appointing Leigh Ann Webster as CJA appointment of Counsel re: [137](#) Notice of Appeal filed by Robert Purbeck. Case Appealed to USCA 11th Circuit Case Number 24-13841-A. (dmb) (Entered: 12/02/2024) |
| 11/29/2024 | [142](#) | Arrest Warrant Returned Executed on 3/5/2021 as to Robert Purbeck. (bgt) (Entered: 11/29/2024) |
| 12/09/2024 | [145](#) | TRANSCRIPT Order Form as to Robert Purbeck for proceedings held on 11/13/2024 before Judge Judge Batten, re [137](#) Notice of Appeal. Court Reporter: Geraldine Glover. (Webster, Leigh) (Entered: 12/09/2024) |
| 12/09/2024 | [146](#) | TRANSCRIPT Order Form as to Robert Purbeck for proceedings held on 3/22/21, 12/14/21, & 8/2/23 before Judge Judge Bly & Judge Vineyard, re [137](#) Notice of Appeal. Court Reporter: Zoom, FTR, & MS Teams. (Webster, Leigh) (Entered: 12/09/2024) |
| 12/18/2024 | [147](#) | TRANSCRIPT of Proceedings as to Robert Purbeck held on November 13, 2024, before Judge Timothy C. Batten, Sr.. Court Reporter/Transcriber Geraldine Glover. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/court-reporter-directory. Tape Number: 1. Fed.R.App.P. 11 Certification due on 1/2/2025 Redaction Request due 1/8/2025. Redacted Transcript Deadline set for 1/21/2025. Release of Transcript Restriction set for 3/18/2025. (Attachments: # [1](#) Appendix notice of filing transcript) (gxg) (Entered: 12/18/2024) |
| 12/18/2024 | [149](#) | Notification of Transcript Filed in District Court as to Robert Purbeck re [146](#) Transcript Order Form filed by Robert Purbeck. (dmb) (Entered: 12/30/2024) |
| 12/19/2024 | [148](#) | Court Reporter Acknowledgment as to Robert Purbeck re [146](#) Transcript Order Form filed by Robert Purbeck. Case Appealed to 11th Circuit, Case Number 24-13841. Transcript is required. Court Reporter: Shannon R. Welch, RMR, CRR. Satisfactory financial arrangements completed. Transcript due by 1/21/2025. (srw) (Entered: 12/19/2024) |
| 01/21/2025 | [150](#) | TRANSCRIPT of Proceedings as to Robert Purbeck held on 3/22/2021, before Judge Christopher C. Bly. Court Reporter/Transcriber Shannon R. Welch, RMR, CRR. A full |

| | | |
|---|---|---|
| | | directory of court reporters and their contact information can be found at www.gand.uscourts.gov/court-reporter-directory. Redaction Request due 2/11/2025. Redacted Transcript Deadline set for 2/21/2025. Release of Transcript Restriction set for 4/21/2025. (Attachments: # 1 Notice of Filing) (srw) (Entered: 01/21/2025) |
| 01/21/2025 | 151 | TRANSCRIPT of Proceedings as to Robert Purbeck held on 12/14/2021, before Judge Russell G. Vineyard. Court Reporter/Transcriber Shannon R. Welch, RMR, CRR. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/court-reporter-directory. Fed.R.App.P. 11 Certification due on 2/4/2025 Redaction Request due 2/11/2025. Redacted Transcript Deadline set for 2/21/2025. Release of Transcript Restriction set for 4/21/2025. (Attachments: # 1 Notice of Filing) (srw) (Entered: 01/21/2025) |
| 01/21/2025 | 152 | Notification of Transcript Filed in District Court as to Robert Purbeck re 146 Transcript Order Form filed by Robert Purbeck. All transcripts for this request are now on file. (srw) (Entered: 01/21/2025) |
| 01/21/2025 | 153 | Notice for Leave of Absence for the following date(s): February 12, 2025; March 24 through April 11, 2025, by Alex R. Sistla. (Sistla, Alex) (Entered: 01/21/2025) |
| 04/02/2025 | 154 | USCA Order as to Robert Purbeck Granting Motion for Extension of Time to file the appellant's brief re: 137 Notice of Appeal filed by Robert Purbeck. Case Appealed to USCA 11th Circuit, Case Number 24-13841. (dmb) (Entered: 04/03/2025) |
| 05/15/2025 | 155 | USCA Order as to Robert Purbeck Granting Motion for Extension of Time re: 137 Notice of Appeal filed by Robert Purbeck. Case Appealed to USCA 11th Circuit, Case Number 24-13841. (dmb) (Entered: 05/16/2025) |
| 05/27/2025 | | Case as to Robert Purbeck Reassigned to Judge Leigh Martin May. Judge Timothy C. Batten, Sr. no longer assigned to the case. (adg) (Entered: 05/27/2025) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/12/2025 21:54:48 | | |
| **PACER Login:** | leighannw120 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:21-cr-00004-LMM-RGV |
| **Billable Pages:** | 16 | **Cost:** | 1.60 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Exempt CJA |

TAB 1 - Indictment

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

FILED IN OPEN COURT
U.S.D.C. - Atlanta

MAR - 2 2021

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES OF AMERICA

*v.*

ROBERT PURBECK,
A.K.A. "LIFELOCK";
A.K.A. "STUDMASTER";
A.K.A. "STUDMASTER1"

Criminal Indictment

No. 3:21CR0004

THE GRAND JURY CHARGES THAT:

## BACKGROUND

At all times relevant to this Indictment:

1. Victim-1 is a medical clinic located in Griffin, Georgia, within the Northern District of Georgia. Victim-1 maintains a repository of personally identifiable information and confidential personal health information, to include patient records, full names, addresses, social security numbers, and birth dates. This information is confidential and stored on restricted, nonpublic servers located in Griffin, Georgia and elsewhere.

2. The City of Newnan is a city in Metro Atlanta and the county seat of Coweta County, Georgia, within the Northern District of Georgia.

3. As a part of its ordinary course of operations, the City of Newnan maintains a large repository of documents and reports, including police reports containing sensitive personally identifiable information, such as full names, addresses, social security numbers, and birth dates. This

information is confidential and stored on restricted, nonpublic servers located in Newnan, Georgia and elsewhere.

4. Victim-2 is a medical practice located in Locust Grove, Georgia, within the Northern District of Georgia. Victim-2 also maintains a repository of personally identifiable information and confidential personal health information, to include patient records, full names, addresses, social security numbers, and birth dates. This information is confidential and stored on restricted, nonpublic servers located in Locust Grove, Georgia and elsewhere.

5. Victim-3 is an orthodontist in Wellington, Florida. Victim-3 also maintains a repository of personally identifiable information and confidential personal health information, to include patient records, full names, addresses, social security numbers, and birth dates. This information is confidential and stored on restricted, nonpublic servers located in Wellington, Florida and elsewhere.

6. The defendant, ROBERT PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," resides in or around Meridian, Idaho.

**Victim-1 Data Breach**

7. On or about June 23, 2017, the defendant, ROBERT PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," purchased access credentials, namely a username and password, to a computer server belonging to Victim-1 on a criminal marketplace.

8. On or about June 25, 2017, PURBECK then used these stolen access credentials to access protected computers of Victim-1 without

2

authorization, maintained unauthorized access to those computers, and stole medical records and other documents that contained sensitive personally identifiable information of over 43,000 individuals, including names, addresses, birth dates, and social security numbers.

## City of Newnan Data Breach

9. On or about February 9, 2018, the defendant, ROBERT PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," purchased access credentials, namely a username and password, to a City of Newnan Police Department computer server on a criminal marketplace.

10. On or about the same day, PURBECK then used these stolen access credentials to access protected computers of the City of Newnan without authorization, maintained unauthorized access to those computers, and stole police reports and other internal documents that contained sensitive personally identifiable information of over 14,000 individuals, including names, addresses, birth dates, and social security numbers.

## Victim-2 Data Breach

11. On or about April 28, 2018, the defendant, ROBERT PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," purchased access credentials, namely a username and password, to a computer server belonging to Victim-2 on a criminal marketplace.

12. On or about the same day, PURBECK then used these stolen access credentials to access protected computers of Victim-2 without authorization, maintained unauthorized access to those computers, and stole medical records and other documents that contained sensitive

personally identifiable information of over 7,000 individuals, including names, addresses, birth dates, and social security numbers.

### Victim-3 Data Breach and Attempted Extortion

13. On or about June 18, 2018, the defendant, ROBERT PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," purchased access credentials, namely a username and password, to a computer server belonging to Victim-3 on a criminal marketplace.

14. PURBECK then used the stolen access credentials to access protected computers of Victim-3 without authorization, maintained unauthorized access to those computers, and stole medical records and other documents that contained sensitive personally identifiable information of over 1,800 individuals, including names, addresses, birth dates, and social security numbers.

15. From on or about July 3, 2018 through on or about July 9, 2018, PURBECK threatened, harassed, and attempted to extort Victim-3, demanding a ransom payment in Bitcoin. PURBECK threatened to disclose and sell the patient and personal information stolen from Victim-3 unless Victim-3 paid the ransom demand. PURBECK also identified the names and social security numbers of Victim-3's minor children and threatened to disclose and sell their personal information as well.

16. During the course of this attempted extortion, PURBECK sent numerous harassing e-mails and text messages to Victim-3 and Victim-3's patients.

4

## COUNTS ONE THROUGH THREE
### (Computer Fraud and Abuse – Unauthorized Access)

17.  The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 16 of this Indictment as if fully set forth herein.

18.  On or about the dates listed in Column A of the table below, in the Northern District of Georgia, and elsewhere, the defendant, ROBERT PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," aided and abetted by others unknown to the Grand Jury, intentionally accessed a protected computer of each of the victims listed in Column B without authorization, and thereby obtained information from a protected computer, including names, addresses, birth dates, and social security numbers, for purposes of commercial advantage and private financial gain, with the value of such information exceeding $5,000:

|       | A              | B              |
|-------|----------------|----------------|
| Count | Date           | Victim         |
| 1     | June 25, 2017  | Victim-1       |
| 2     | February 9, 2018 | City of Newnan |
| 3     | April 28, 2018 | Victim-2       |

5

All in violation of Title 18, United States Code, Sections 1030(a)(2)(C), 1030(c)(2)(B)(i) and 1030(c)(2)(B)(iii) and Section 2.

## COUNT FOUR
### (Computer Fraud and Abuse – Extortion of Victim-3)

19. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 16 of this Indictment as if fully set forth herein.

20. From on or about June 18, 2018, and continuing through on or about July 9, 2018, in the Northern District of Georgia, Southern District of Florida, and elsewhere, the defendant, ROBERT PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," aided and abetted by others unknown to the Grand Jury, with intent to extort from any person, namely Victim-3, any money and other things of value, namely funds in Bitcoin, transmitted in interstate and foreign commerce, including through the Northern District of Georgia, a communication containing a threat to obtain information from a protected computer without authorization and to impair the confidentiality of information obtained from a protected computer without authorization, all in violation of Title 18, United States Code, Sections 1030(a)(7)(B) and 1030(c)(3)(A) and Section 2.

## COUNTS FIVE THROUGH EIGHT
### (Wire Fraud)

21. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 16 of this Indictment as if fully set forth herein.

22. On or about the dates listed in Column A of the table below, in the Northern District of Georgia and elsewhere, the defendant, ROBERT

6

PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1,"
aided and abetted by others unknown to the Grand Jury, having
knowingly devised and intending to devise a scheme and artifice to
defraud and to obtain money and property by means of materially false
and fraudulent pretenses, representations, and promises, did with intent to
defraud cause the transmission by means of wire communication in
interstate and foreign commerce of certain writings, signs, signals,
pictures, and sounds, that is, the wire transmission listed in Column B,
issued from in or around Meridian, Idaho, to computer servers located in
the Northern District of Georgia, as specified in Column C, for the purpose
of executing such scheme and artifice:

| | A | B | C |
|---|---|---|---|
| Count | Date | Wire Transmission | Victim |
| 5 | June 25, 2017 | RDP Login | Victim-1 |
| 6 | February 9, 2018 | RDP Login | City of Newnan |
| 7 | April 28, 2018 | RDP Login | Victim-2 |
| 8 | July 3, 2018 | E-Mail from PURBECK to Victim-3 | Victim-3 |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNTS NINE THROUGH ELEVEN
### (Access Device Fraud)

23. The Grand Jury re-alleges and incorporates by reference
paragraphs 1 through 16 of this Indictment as if fully set forth herein.

24. On or about the dates listed in Column A of the table below, in the
Northern District of Georgia, and elsewhere, the defendant, ROBERT

PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," aided and abetted by others unknown to the Grand Jury, did knowingly and with intent to defraud, use and traffic in unauthorized access devices, namely access credentials consisting of a username and password, of the victims listed in Column B, and by such conduct, obtained things of value worth $1,000 or more in a one-year period, said use and trafficking affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1029(a)(2) and (c)(1)(A)(i) and Section 2.

| | A | B |
|---|---|---|
| Count | Date | Victim |
| 9 | June 25, 2017 | Victim-1 |
| 10 | February 9, 2018 | City of Newnan |
| 11 | April 28, 2018 | Victim-2 |

## FORFEITURE PROVISION

25.  Upon conviction of one or more of the offenses alleged in Counts One through Four of this Indictment, the defendant, ROBERT PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B) and Title 18, United States Code, Section 1030(i), any property, real or personal, constituting, or derived from, proceeds obtained, directly or indirectly, as a result of said violations and any personal property that was used or intended to be used to commit or to facilitate the commission of the violations, including, but not limited to, those items listed in Attachment "A," together with a personal forfeiture money judgment, that is, a sum of money in United States currency representing the amount of proceeds obtained as a result of each offense alleged in Counts One through Four of this Indictment.

26.  Upon conviction of one or more of the offenses alleged in Counts Five through Eight of this Indictment, the defendant, ROBERT PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to said violations, including, but not limited to, those items listed in Attachment "A," and a money judgment representing the amount of proceeds obtained as a result of said violations alleged in Counts Five through Eight of this Indictment.

27. Upon conviction of one or more of the offenses alleged in Counts Nine through Eleven of this Indictment, the defendant, ROBERT PURBECK, a.k.a. "Lifelock," a.k.a. "Studmaster," a.k.a. "Studmaster1," shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of said violations, including, but not limited, to a money judgment representing the amount of proceeds obtained as a result of the offenses, as alleged in Counts Nine through Eleven of this Indictment, and pursuant to Title 18, United States Code, Section 1029(c), any personal property used or intended to be used to commit said violations, including but not limited to, those items listed in Attachment "A."

28. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 18, United States Code, Section 1030(i), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

A _____True_____ BILL

_Deborah T. Brunson_
FOREPERSON

KURT R. ERSKINE
  *Acting United States Attorney*

*Michael Herskowitz*
MICHAEL HERSKOWITZ
  *Assistant United States Attorney*
Georgia Bar No. 349515

*Nathan P. Kitchens*
NATHAN KITCHENS
  *Assistant United States Attorney*
Georgia Bar No. 263930

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000

11

# Attachment A

- SEAGATE BACKUP PLUS HARD DRIVE P/N 2AWAP7-500 SN NA9W63A3; CORSAIR FLASH DRIVE SLIDER X1 128G;

- SEAGATE TOWER SN NA8B08G5 (HARD DRIVE);

- MICRO NICHE USB THUMB DRIVE;

- RAVEN TOWER BS14140564RVZ01B0;

- SEAGATE SN 6RW1D0Z6;

- 3 CELL PHONES:

    o   Black Motorola Droid Razr XT912,

    o   White Samsung Galaxy Prevail LTE SM-G360P, and

    o   Black LH Smartphone LS740 SN 410CYWC0584857;

- RASBERRY PI COMPUTER;

- 1 THUMB DRIVE - American life USB drive;

- 1 GB MEMORY CARD - EMC Isolon Flash Drive 4 GB;

- 2 USB MEMORY DEVICES:

    o   American life USB drive, and

    o   EMC Isolon Flash Drive 4 GB;

- 2 STORAGE DEVICES WCC4E6VE56PR AND KUCJ05A156;

- ALCATEL CELL PHONE A574BL;

- IPHONE 7 A1660 AND IMPACT STRONG CASE;

- BLACK IPHONE 8 PLUS A1897 WITH OTTERBOX CASE;

- SONY LAPTOP SN #275268339019447;

- 4 MEMORY DEVICES:

    o   480 GB SanDisk Extreme 500,

- o 8 GB PNY Attache USB 2.0,

- o SanDisk Cruzer Micro 2 GB, and

- o Porsche Driver's Selection Key Shaped USB Flash Drive;

- MAC BOOK PRO SN C02JKT67D853;

- HP Z240 TOWER SN ZVA6060RF1;

- BLACK IPHONE 8 A1905 WITH CASEMATE CASE;

- HP 2230 TOWER SN 2VA42217QC;

- HP LAPTOP ELITE BOOK;

- 12 HARD DRIVES;

- WCC4M5ZCLXNV MY CLOUD;

- 3 DISKS;

- BARRACUDA SN 3J80K884;

- WESTERN DIGITAL HARD DRIVE SN WCAZA3882835;

- HP LAPTOP SN 5CG3291267;

- TOSHIBA LATOP SN 37251406K;

- 2 SQUARE READERS;

- 5 THUMB DRIVES;

- 8GB SANDISK;

- 1 CD;

- IPHONE;

- 2 THUMB DRIVES, SEAGATE HARDRIVE SN 9VP924SV;

- BARACUDA SN 3T80KRM6;

- 2 MOTOROLA XT912 CELL PHONES - BLACK MOTOROLA DROID
  RAZOR XT912;

- SEAGATE H SN 9VY55295;

- 2 CD'S;

- THUMB DRIVE - PNY USB 34GB GRAY;

- HP LAPTOP SN: CNF0135R2C;

- DELL LAPTOP SN: F1TSYB1;

- K-NET TOWER;

- IPAD 16 GB SN: F5RKT7DEDFHW;

- KINDLE- BLACK AMAZON KINDLE D01400;

- APPLE LAPTOP SN: WQ024D5JATM;

- ACER ASPIRE LAPTOP SN: LXR4R0200203758A4 21601;

- SONY LAPTOP SN: C3LPQ45Y;

- MAXTOR HARD DRIVE SN: E1JNSF3E;

- MAXTOR HARD DRIVE S/N E1K3JWBE;

- 16 GIG MICRO SD CARD;

- DELL LAPTOP BITCOIN MINER- DELL LATITUDE E5400 S/N BVX1LK1;

- HP MINI LAPTOP S/N CNF005CHH7;

- SUPERDISK S/N AA9812154230M;

- CD CASH FLOW 202 C3122JK2322663LH;

- CANON COMPACT FLASH TM CARD FC 16M;

- CD  C:/ BACKUP 0024B3N306005;

- CD A5D22C2225094;

- HP INVENT SN 25D626T1FF;

- SEAGATE SN 3JT0P7YM;

14

- SEAGATE SN 5MO2N7KQ;

- QUANTUM SN 172933813920;

- GALAXY 2D SN 6QF39MSF;

- HITACHI DESK STAR MODEL HDS722580VL5A80;

- SEAGATE SN 9QM48JBV;

- SEAGATE SN 9QM48C6F;

- MOBILE READER REGISTER;

- CARD READER;

- GIFT CARDS:
  - 12 American Express Credit
  - 1 Black Rock Coffee
  - 20 Blank
  - 1 Boost Mobile
  - 1 Buffalo Wild Wings
  - 3 Cabelas
  - 1 Coldstone
  - 2 Cracker Barrel
  - 1 Disney
  - 1 DXL
  - 611 eBay
  - 1 Gamestop
  - 8 Home Depot
  - 1 IHOP
  - 4 iTunes

- o  20 Kroger Credit
- o  1 Lyft
- o  1 Mastercard Credit
- o  2 Pita Pit
- o  1 PlayStation
- o  1 Red Robin
- o  1 Sears
- o  2 Southwest
- o  9529 Starbucks
- o  1 Subway
- o  42 Target
- o  4 Visa Credit
- o  5 Visa Gift
- o  1 Walgreens
- o  1 Walmart
- o  2 Whole Foods
- o  1 Xbox
- o  1 Dominos

- 33 Credit Cards issued to Robert Purbeck or Silk Alpaca

TAB 116.1 - Guilty Plea and Plea Agreement

ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

# GUILTY PLEA and PLEA AGREEMENT

MAR 1 9 2024

Northern District of Georgia

KEVIN P. WEIMER, Clerk
By _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION
CRIMINAL NO.:  3:21-cr-00004-TCB-RGV

The United States Attorney for the Northern District of Georgia and the
Acting Assistant Attorney General for the Criminal Division of the Department
of Justice ("the Government") and Defendant ROBERT PURBECK, a.k.a.
Lifelock, a.k.a. Studmaster, a.k.a. Studmaster 1, enter into this Plea Agreement as
set forth below in Part IV pursuant to Rules 11(c)(1)(A) & (B) of the Federal Rules
of Criminal Procedure. ROBERT PURBECK, Defendant, having received a copy
of the above-numbered Indictment and having been arraigned, hereby pleads
GUILTY to Counts One and Two of the Indictment.

## I.  ADMISSION OF GUILT

1. The Defendant admits that he is pleading guilty because he is in fact guilty
of the crimes charged in Counts One and Two of the Indictment.

## II. ACKNOWLEDGMENT & WAIVER OF RIGHTS

2. The Defendant understands that by pleading guilty, he is giving up the
right to plead not guilty and the right to be tried by a jury. At a trial, the
Defendant would have the right to an attorney, and if the Defendant could not
afford an attorney, the Court would appoint one to represent the Defendant at
trial and at every stage of the proceedings. During the trial, the Defendant would
be presumed innocent and the Government would have the burden of proving
him guilty beyond a reasonable doubt. The Defendant would have the right to

confront and cross-examine the witnesses against him. If the Defendant wished, he could testify on his own behalf and present evidence in his defense, and he could subpoena witnesses to testify on his behalf. If, however, the Defendant did not wish to testify, that fact could not be used against him, and the Government could not compel him to incriminate himself. If the Defendant were found guilty after a trial, he would have the right to appeal the conviction.

3. The Defendant understands that by pleading guilty, he is giving up all of these rights and there will not be a trial of any kind.

4. By pleading guilty, the Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could have been filed.

5. The Defendant also understands that he ordinarily would have the right to appeal his sentence and, under some circumstances, to attack the conviction and sentence in post-conviction proceedings. By entering this Plea Agreement, the Defendant may be waiving some or all of those rights to appeal and to collaterally attack his conviction and sentence, as specified below.

6. Finally, the Defendant understands that, to plead guilty, he may have to answer, under oath, questions posed to him by the Court concerning the rights that he is giving up and the facts of this case, and the Defendant's answers, if untruthful, may later be used against him in a prosecution for perjury or false statements.

## III.  **ACKNOWLEDGMENT OF PENALTIES**

7. The Defendant understands that, based on his plea of guilty, he will be subject to the following maximum and mandatory minimum penalties:

**As to Count One**

    a.  Maximum term of imprisonment: 5 years.

    b.  Mandatory minimum term of imprisonment: None.

    c.  Term of supervised release: 0 to 3 years

    d.  Maximum fine: $250,000.00, due and payable immediately.

    e.  Full restitution, due and payable immediately, to all victims of the offense(s) and relevant conduct.

    f.  Mandatory special assessment: $100.00, due and payable immediately.

    g.  Forfeiture of any personal property that was used or intended to be used to commit or to facilitate the commission of the offense; and any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offense.

**As to Count Two**

    a.  Maximum term of imprisonment: 5 years.

    b.  Mandatory minimum term of imprisonment: None.

    c.  Term of supervised release: 0 to 3 years

    d.  Maximum fine: $250,000.00, due and payable immediately.

    e.  Full restitution, due and payable immediately, to all victims of the offense(s) and relevant conduct.

    f.  Mandatory special assessment: $100.00, due and payable immediately.

g. Forfeiture of any personal property that was used or intended to be used to commit or to facilitate the commission of the offense; and any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offense.

8. The Defendant understands that, before imposing sentence in this case, the Court will be required to consider, among other factors, the provisions of the United States Sentencing Guidelines and that, under certain circumstances, the Court has the discretion to depart from those Guidelines. The Defendant further understands that the Court may impose a sentence up to and including the statutory maximum as set forth in the above paragraph and that no one can predict his exact sentence at this time.

9. REMOVAL FROM THE UNITED STATES: The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Indeed, because the Defendant is pleading guilty to this offense, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the District Court, can predict to a certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

4

## IV.    PLEA AGREEMENT

The Defendant, his counsel, and the Government, subject to approval by the Court, have agreed upon a negotiated plea in this case, the terms of which are as follows:

### Dismissal of Counts

10. The Government agrees that, upon the entry of the Judgment and Commitment Order, any and all remaining counts in the above-styled case still pending against the Defendant shall be dismissed pursuant to Standing Order No. 07-04 of this Court and to Rule 48(a) of the Federal Rules of Criminal Procedure. The Defendant understands that the Probation Office and the Court may still consider the conduct underlying such dismissed counts in determining relevant conduct under the Sentencing Guidelines and a reasonable sentence under Title 18, United States Code, Section 3553(a).

### No Additional Charges

11. The United States Attorney for the Northern District of Georgia and the Acting Assistant Attorney General for the Criminal Division of the Department of Justice agree not to bring further criminal charges against the Defendant related to the charges to which he is pleading guilty. The Defendant understands that this provision does not bar prosecution by any other federal, state, or local jurisdiction.

### Factual Basis

12.    The parties agree that if this case went to trial, the Government would prove by admissible evidence and beyond reasonable doubt the following facts:

a.  Family Medical Center ("FMC"), which is identified in the Indictment as "Victim-1," is a medical clinic located in Griffin, Georgia, within the Northern District of Georgia.  FMC maintained a repository of personally identifiable information (PII) and confidential personal health information (PHI), to include patient records, full names, addresses, social security numbers, and birth dates. This information was confidential and stored on restricted, nonpublic servers located in Griffin, Georgia and elsewhere.

b.  On or about June 23, 2017, the Defendant purchased access to the computer server of FMC on a darknet marketplace.

c.  On or about June 25, 2017, the Defendant, from Idaho, used these stolen access credentials to gain unauthorized access to protected computers of FMC, maintained unauthorized access to those computers, and stole medical records and other documents, which contained sensitive PII and PHI of over 43,489 individuals, including names, addresses, birth dates, and social security numbers.  FMC suffered losses associated with the breach in the amount of $138,500.00.

d.  On or about February 9, 2018, the Defendant purchased access to a City of Newnan, Georgia Police Department server on a darknet marketplace.

e.  From Idaho, the Defendant then used the access credentials to gain unauthorized access to the City of Newnan computer systems, maintained unauthorized access to those computers, and stole records consisting of police reports and documents, which included PII for approximately 14,394 individuals. The City of Newnan suffered losses associated with the breach in the amount of $113,935.00.

f.  On August 19, 2019, Federal Bureau of Investigation (FBI) agents obtained a federal search warrant for the Defendant's home in Meridian, Idaho.  Upon

6

execution of the warrant two days later, the Defendant admitted that he used the moniker "Lifelock" on the darknet and during various computer intrusions and extortions.

g.  During the search of the Defendant's home, the FBI seized a number of computers and devices. A review of the Defendant's hard drive revealed PII for at least 132,725 individuals, obtained through numerous data breaches, including Family Medical Center and the City of Newnan, as well as at least 17 other victims throughout the United States.

h.  In committing these computer intrusions against FMC and the City of Newnan, the Defendant executed computer commands from Idaho to other states, including Georgia, to connect to victim computers connected to the internet.

i.  The offenses were committed for purposes of the Defendant's private financial gain.

j.  The value of the information obtained exceeded $5,000 as to FMC and exceeded $5,000 as to the City of Newnan.

## Sentencing Guidelines Recommendations

13. Based upon the evidence currently known to the Government, the Government agrees to make the following recommendations and/or to enter into the following stipulations as to Counts One and Two of the Indictment:

**Base/Adjusted Offense Level**

14. The Government will recommend, and the Defendant agrees that:

a.  The base offense level is six pursuant to U.S.S.G. Section 2B1.1(a)(2).

b.  A fourteen-level increase to the base offense level applies pursuant to U.S.S.G. Section 2B1.1(b)(1)(H) as the loss amount is more than $550,000 but no more than $1,500,000.

c.  A two-level enhancement applies pursuant to U.S.S.G. Section 2B1.1(b)(2)(A) since the offense involved 10 or more victims.

d.  A two-level enhancement applies pursuant to U.S.S.G. Section 2B1.1(b)(10)(C) since the offense involved sophisticated means and the Defendant intentionally engaged in or caused the conduct constituting sophisticated means.

e.  A two-level enhancement applies pursuant to U.S.S.G. Section 2B1.1(b)(18) as the Defendant was convicted of an 18 U.S.C. Section 1030 offense and the offense involved an intent to obtain personal information.

f.  A two-level enhancement pursuant to U.S.S.G. Section 3B1.3 (special skill) does not apply because the two-level sophisticated means enhancement pursuant to U.S.S.G. Section 2B1.1(b)(10)(C) will be applied.  If, however, the sophisticated means enhancement is ultimately not applied by the Court, the parties agree in that case that the special skill enhancement, pursuant to U.S.S.G. Section 3B1.3 shall be applied.

g.  A two-level enhancement pursuant to U.S.S.G. Section 2B1.1(b)(3) (theft from a person of another) does not apply.

15. The Government will recommend that the Court apply both the two-level enhancement for the trafficking in an unauthorized access device, pursuant to

8

U.S.S.G. Section 2B1.1(b)(11), and the two-level enhancement for obstructing or impeding the administration of justice, pursuant to U.S.S.G. Section 3C1.1. The Defendant intends to object to the application of these two enhancements.

16. The Defendant will recommend that the Court apply a two-level reduction to his total offense level as a "zero-point offender," pursuant to U.S.S.G. Amendment Section 4C1.1. The Government intends to object to the application of the zero-point offender reduction.

**Acceptance of Responsibility**

17. The Government will recommend that the Defendant receive an offense level adjustment for acceptance of responsibility, pursuant to Section 3E1.1, to the maximum extent authorized by the guideline. However, the Government will not be required to recommend acceptance of responsibility if, after entering this Plea Agreement, the Defendant engages in conduct inconsistent with accepting responsibility. Thus, by way of example only, should the Defendant falsely deny or falsely attempt to minimize the Defendant's involvement in relevant offense conduct, give conflicting statements about the Defendant's involvement, fail to pay the special assessment, fail to meet any of the obligations set forth in the Financial Cooperation Provisions set forth below, or participate in additional criminal conduct, including unlawful personal use of a controlled substance, the Government will not be required to recommend acceptance of responsibility.

## Right to Answer Questions, Correct Misstatements, and Make Recommendations

18. The parties reserve the right to inform the Court and the Probation Office of all facts and circumstances regarding the Defendant and this case, and to

respond to any questions from the Court and the Probation Office and to any misstatements of fact or law. Except as expressly stated elsewhere in this Plea Agreement, the parties also reserve the right to make recommendations regarding application of the Sentencing Guidelines. The parties understand, acknowledge, and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed.

## Right to Modify Recommendations

19. With regard to the Government's recommendation as to any specific application of the Sentencing Guidelines as set forth elsewhere in this Plea Agreement, the Defendant understands and agrees that, should the Government obtain or receive additional evidence concerning the facts underlying any such recommendation, the Government will bring that evidence to the attention of the Court and the Probation Office. In addition, if the additional evidence is sufficient to support a finding of a different application of the Guidelines, the Government will not be bound to make the recommendation set forth elsewhere in this Plea Agreement, and the failure to do so will not constitute a violation of this Plea Agreement.

## Sentencing Recommendations

**Specific Sentence Recommendation**

20. The Government agrees to recommend that the Defendant be sentenced to no more than 70 months in the custody of the Bureau of Prisons to be followed by a term of supervised release.

**Fine--No Recommendation as to Amount**

21. The Government agrees to make no specific recommendation as to the amount of the fine to be imposed on the Defendant within the applicable guideline range.

**Restitution**

22. The Defendant agrees to pay full restitution, plus applicable interest, in at least the amount of **$1,048,702.98** to the Clerk of Court for distribution to all victims of the offense(s) to which he is pleading guilty and all relevant conduct, including, but not limited to, any counts dismissed as a result of this Plea Agreement. The Defendant understands that the amount of restitution owed to each victim will be determined at or before sentencing. The Defendant also agrees to cooperate fully in the investigation of the amount of restitution, the identification of victims, and the recovery of restitution for victims.

23. In particular, the Defendant agrees to pay restitution to the following victims of the offense conduct:

| | |
|---|---|
| Andrea Yaley, DDS | $ 92,095.00 |
| City of Newnan | $ 113,935.00 |
| Nancy DeBoer | $ 400.00 |
| Family Medical Center | $ 138,500.00 |
| Golden Heart Administrative Professionals | $ 142,568.85 |
| Holland Eye Care | $ 130,174.00 |
| Simon Orthodontics | $ 285,980.13 |
| Ursa Farmers Co-Op | $ 145,050.00 |
| **Total** | **$ 1,048,702.98** |

**Forfeiture**

24. Paragraphs 24 through 31 are subject to and controlled by the dispositions of property in the Property Disposition Chart, attached hereto and incorporated as part of this Plea Agreement, and which lists the property subject to these paragraphs. The Defendant waives and abandons his interest in any property that may have been seized in connection with this case. The Defendant agrees to the administrative or judicial forfeiture or the abandonment of any seized property. The Defendant agrees to hold the United States and its agents and employees harmless from any claims made in connection with the seizure, forfeiture, or disposal of property connected to this case. The Defendant acknowledges that the United States will dispose of any seized property, and that such disposal may include, but is not limited to, the sale, release, or destruction of the seized property. The Defendant agrees to waive any and all constitutional, statutory, and equitable challenges in any manner (including direct appeal, a Section 2255 petition, habeas corpus, or any other means) to the seizure, forfeiture, and disposal of any property seized in this case on any grounds.

25. The Defendant acknowledges that he is not entitled to use forfeited assets to satisfy any fine, restitution, cost of imprisonment, tax obligations, or any other penalty the Court may impose upon the Defendant in addition to forfeiture.

**Disposal of Property**

26. Defendant acknowledges that he has an ownership interest in the following items of property that are in the lawful custody of the United States,

| Description | 1B# |
| --- | --- |
| DOCUMENTS AND NOTEBOOK | 1B140 |
| DOCUMENTS, PASSWORDS, CHECK REGISTER | 1B147 |
| DOCUMENTS - RECEIPTS | 1B155 |
| RECEIPTS-MAIL-NOTES | 1B158 |
| HANDWRITTEN NOTES | 1B170 |
| MISC DOCS | 1B171 |
| BLOCKCHAIN DOCUMENTS, OTHER | 1B172 |
| GIFT CARDS | 1B200-1B208 |
| DOCUMENTS | 1B153 |
| 2 MOTOROLA XT912 CELL PHONES - BLACK MOTOROLA DROID RAZOR XT912 | 1B164, 1B165 |
| IPHONE | 1B168 |
| 1 CD | 1B169 |
| CARD READER | 1B175 |
| MOBILE READER REGISTER | 1B176 |
| 3 DISKS | 1B178 |
| WCC4M5ZCLXNV MY CLOUD | 1B179 |
| BLACK IPHONE 8 A1905 WITH CASEMATE CASE | 1B183 |
| BLACK IPHONE 8 PLUS A1897 WITH OTTERBOX CASE | 1B188 |
| IPHONE 7 A1660 AND IMPACT STRONG CASE | 1B189 |
| ALCATEL CELL PHONE A574BL | 1B190 |
| 3 CELL PHONES | 1B194 |
| 2 SQUARE READERS | 1B169 |
| Dell Laptop SN 83733 (ACSO) | 1B162 |
| 2 STORAGE DEVICES WCC4E6VE56PR AND KUCJ05A156 | 1B191 |
| DELL LAPTOP BITCOIN MINER- DELL LATITUDE E5400 S/N BVX1LK1 | 1B142 |
| MAXTOR HARD DRIVE S/N E1K3JWBE | 1B145 |
| MAXTOR HARD DRIVE SN: E1JNSF3E | 1B146 |
| ACER ASPIRE LAPTOP SN: LXR4R0200203758A4 21601 | 1B149 |
| DELL LAPTOP SN: F1TSYB1 | 1B156 |
| BARACUDA SN 3T80KRM6 | 1B166 |

13

| | |
|---|---|
| 5 THUMB DRIVES | 1B169 |
| 8GB SANDISK | 1B169 |
| TOSHIBA LATOP SN 37251406K | 1B173 |
| HP LAPTOP SN 5CG3291267 | 1B174 |
| BARRACUDA SN 3J80K884 | 1B177 |
| WESTERN DIGITAL HARD DRIVE SN WCAZA3882835 | 1B177 |
| HP LAPTOP ELITE BOOK | 1B181 |
| HP Z240 TOWER SN ZVA6060RF1 | 1B184 |
| MAC BOOK PRO SN C02JKT67D853 | 1B185 |
| 4 MEMORY DEVICES | 1B186 |
| SONY LAPTOP SN #275268339019447 | 1B187 |
| SEAGATE SN 6RW1D0Z6 | 1B195 |
| RAVEN TOWER BS14140564RVZ01B0 | 1B196 |
| MICRO NICHE USB THUMB DRIVE | 1B197 |
| SEAGATE TOWER SN NA8B08G5 (HARD DRIVE) | 1B198 |
| USB DRIVES<br>DVD | 1B215 |
| 2 THUMB DRIVES,<br>SEAGATE HARDRIVE SN 9VP924SV | 1B167 |
| SEAGATE BACKUP PLUS HARD DRIVE P/N 2AWAP7-500 SN NA9W63A3; CORSAIR FLASH DRIVE SLIDER X1 128G | 1B199 |

27. Defendant understands that he has the right and opportunity to claim the listed property. Defendant hereby knowingly and voluntarily waives all right, title, and interest in the listed property. Defendant waives, releases, and withdraws any claim that Defendant has made with respect to the listed property, and waives and releases any claim that Defendant might otherwise have made to the listed property in the future.

28. Defendant consents to the vesting of title to the listed property to the United States Government, pursuant to Title 41, Code of Federal Regulations, Section 128-48.102-1. Defendant also consents to the destruction of the property,

or other disposition of the property in accordance with law, and without further notice to defendant.

29. Defendant waives any right Defendant might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the Government might take, in its sole discretion, to carry out the abandonment, disposition, and/or destruction of the listed property.

30. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the listed property, including any such claim for attorney's fees and litigation costs.

31. Defendant further agrees to hold the United States of America, its agents and employees, harmless from any claims whatsoever in connection with the seizure, abandonment, disposition, and destruction of the listed property.

## Financial Cooperation Provisions

**Special Assessment**

32. The Defendant agrees that he will pay a special assessment in the amount of $200 by money order or certified check made payable to the Clerk of Court, U.S. District Court, 18 Greenville Street, Newnan, Georgia 30264, by the day of sentencing. The Defendant agrees to provide proof of such payment to the undersigned Assistant United States Attorney upon payment thereof.

**Fine/Restitution - Terms of Payment**

33. The Defendant agrees to pay any fine and/or restitution, plus applicable interest, imposed by the Court to the Clerk of Court for eventual disbursement to

15

the appropriate account and/or victim(s). The Defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the Defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, he agrees that the custodial agency and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The Defendant understands that this payment schedule represents a minimum obligation and that, should the Defendant's financial situation establish that he is able to pay more toward the fine and/or restitution, the Government is entitled to pursue other sources of recovery of the fine and/or restitution. The Defendant further agrees to cooperate fully in efforts to collect the fine and/or restitution obligation by any legal means the Government deems appropriate. Finally, the Defendant and his counsel agree that the Government may contact the Defendant regarding the collection of any fine and/or restitution without notifying and outside the presence of his counsel.

**Financial Disclosure**

34. The Defendant agrees that the Defendant will not sell, hide, waste, encumber, destroy, or otherwise devalue any such asset worth more than $1,000.00 before sentencing, without the prior approval of the Government. The Defendant understands and agrees that the Defendant's failure to comply with this provision of the Plea Agreement should result in the Defendant receiving no credit for acceptance of responsibility.

35. The Defendant agrees to cooperate fully in the investigation of the amount of forfeiture, restitution, and fine; the identification of funds and assets in which

16

he has any legal or equitable interest to be applied toward forfeiture, restitution, and/or fine; and the prompt payment of restitution or a fine.

36. The Defendant's cooperation obligations include: (A) fully and truthfully completing the Department of Justice's Financial Statement of Debtor form, and any addenda to said form deemed necessary by the Government, within ten days of the change of plea hearing; (B) submitting to a financial deposition or interview (should the Government deem it necessary) prior to sentencing regarding the subject matter of said form; (C) providing any documentation within his possession or control requested by the Government regarding his financial condition and that of his household; (D) fully and truthfully answering all questions regarding his past and present financial condition and that of his household in such interview(s); and (E) providing a waiver of his privacy protections to permit the Government to access his credit report and tax information held by the Internal Revenue Service.

37. So long as the Defendant is completely truthful, the Government agrees that anything related by the Defendant during his financial interview or deposition or in the financial forms described above cannot and will not be used against him in the Government's criminal prosecution. However, the Government may use the Defendant's statements to identify and to execute upon assets to be applied to the fine and/or restitution in this case. Further, the Government is completely free to pursue any and all investigative leads derived in any way from the interview(s)/deposition(s)/financial forms, which could result in the acquisition of evidence admissible against the Defendant in subsequent proceedings. If the Defendant subsequently takes a position in any

17

legal proceeding that is inconsistent with the interview(s)/deposition(s)/financial forms—whether in pleadings, oral argument, witness testimony, documentary evidence, questioning of witnesses, or any other manner—the Government may use the Defendant's interview(s)/deposition(s)/financial forms, and all evidence obtained directly or indirectly therefrom, in any responsive pleading and argument and for cross-examination, impeachment, or rebuttal evidence. Further, the Government may also use the Defendant's interview(s)/deposition(s)/financial forms to respond to arguments made or issues raised sua sponte by the Magistrate or District Court.

## Recommendations/Stipulations Non-binding

38. The Defendant understands and agrees that the recommendations of the Government incorporated within this Plea Agreement, as well as any stipulations of fact or guideline computations incorporated within this Plea Agreement or otherwise discussed between the parties, are not binding on the Court and that the Court's failure to accept one or more of the recommendations, stipulations, and/or guideline computations will not constitute grounds to withdraw his guilty plea or to claim a breach of this Plea Agreement.

## Limited Waiver of Appeal

39. LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to,

motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the District Court. Claims that the Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

### Miscellaneous Waivers

**FOIA/Privacy Act Waiver**

40. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act of 1974, Title 5, United States Code, Section 552a.

19

## **No Other Agreements**

41. There are no other agreements, promises, representations, or understandings between the Defendant and the Government.

In Open Court this 19th day of March 2024

_____
SIGNATURE (Defendant's Attorney)
Andrew Hall

_____
SIGNATURE (Defendant)
Robert Purbeck

_____
SIGNATURE (Assistant U.S. Attorney)
Michael Herskowitz

_____
SIGNATURE (Assistant U.S. Attorney)
Nathan P. Kitchens

_____
SIGNATURE (Assistant U.S. Attorney)
Alex Sistla

_____
SIGNATURE (Trial Attorney, CCIPS)
Brian Mund

_____
SIGNATURE (Approving Official)
Stephen McClain

20

I have read the Indictment against me and have discussed it with my attorney. I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial. I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding. No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission. I am fully satisfied with the representation provided to me by my attorney in this case.

_____        _3/19/2024_____
SIGNATURE (Defendant)                        DATE
Robert Purbeck

21

I am Robert Purbeck's lawyer. I have carefully reviewed the charges and the Plea Agreement with my client. To my knowledge, my client is making an informed and voluntary decision to plead guilty and to enter into the Plea Agreement.

_____          _____3/19/2024_____
SIGNATURE (Defendant's Attorney)          DATE
Andrew Hall

Hall Hirsh Hughes, LLC
150 East Ponce de Leon Avenue, #450
Decatur, Georgia 30030
404-638-5880 (tel.)
State Bar of Georgia No. 318025


Filed in Open Court

This 19th day of March 2024

By _____

U. S. DEPARTMENT OF JUSTICE

Statement of Special Assessment Account

This statement reflects your special assessment only. There may be other penalties imposed at sentencing.

| ACCOUNT INFORMATION | |
|---|---|
| CRIMINAL ACTION NO.: | 3:21-cr-00004-TCB-RGV |
| DEFENDANT'S NAME: | ROBERT PURBECK |
| PAY THIS AMOUNT: | $200 |

Instructions:

1.  Payment must be made by **certified check** or **money order** payable to:

    Clerk of Court, U.S. District Court

    **\*personal checks will not be accepted\***

2.  Payment must be made to the clerk's office by the day of sentencing.

3.  Payment should be sent or hand delivered to:

    Clerk, U.S. District Court

    18 Greenville Street

    Newnan, Georgia 30264

    (Do Not Send Cash)

4.  Include the defendant's name on **certified check** or **money order.**

5.  Enclose this coupon to insure proper and prompt application of payment.

6.  Provide proof of payment to the above-signed AUSA within 30 days of the guilty plea.

23

| Description | 1B# | Disposition |
|---|---|---|
| Documents and Notebook | 1B140 | FBI to dispose |
| Documents, passwords, check register | 1B147 | FBI to dispose |
| Documents - receipts | 1B155 | FBI to dispose |
| Receipts-mail-notes | 1B158 | FBI to dispose |
| Handwritten notes | 1B170 | FBI to dispose |
| Misc docs | 1B171 | FBI to dispose |
| Blockchain documents, other | 1B172 | FBI to dispose |
| GIFT CARDS: | 1B200-1B208 | FBI to dispose |
| Documents | 1B153 | FBI to dispose |
| 2 MOTOROLA XT912 CELL PHONES - BLACK MOTOROLA DROID RAZOR XT912; | 1B164, 1B165 | FBI to dispose |
| IPHONE; | 1B168 | FBI to dispose |
| 1 CD; | 1B169 | FBI to dispose |
| CARD READER; | 1B175 | FBI to dispose |
| MOBILE READER REGISTER; | 1B176 | FBI to dispose |
| 3 DISKS; | 1B178 | FBI to dispose |
| WCC4M5ZCLXNV MY CLOUD; | 1B179 | FBI to dispose |
| BLACK IPHONE 8 A1905 WITH CASEMATE CASE; | 1B183 | Return to Purbeck |
| BLACK IPHONE 8 PLUS A1897 WITH OTTERBOX CASE; | 1B188 | FBI to dispose |
| IPHONE 7 A1660 AND IMPACT STRONG CASE; | 1B189 | Return to Ada County |
| ALCATEL CELL PHONE A574BL; | 1B190 | FBI to dispose |
| 3 CELL PHONES: | 1B194 | FBI to dispose |
| Passport for Robert Purbeck | 1B160 | Return to Purbeck |
| Business registration-Silk Alpaca | 1B161 | Return to Purbeck |
| 2 SQUARE READERS; | 1B169 | FBI to dispose |
| SEAGATE SN 9QM48C6F; | 1B127 | Returned to Purbeck |
| SEAGATE SN 9QM48JBV; | 1B128 | Returned to Purbeck |
| HITACHI DESK STAR MODEL HDS722580VL5A80; | 1B129 | Returned to Purbeck |
| GALAXY 2D SN 6QF39MSF; | 1B130 | Returned to Purbeck |
| QUANTUM SN 172933813920; | 1B131 | Returned to Purbeck |
| SEAGATE SN 5MO2N7KQ; | 1B132 | Returned to Purbeck |
| SEAGATE SN 3JT0P7YM; | 1B133 | Returned to Purbeck |
| HP INVENT SN 25D626T1FF; | 1B134 | Returned to Purbeck |
| CD A5D22C2225094; | 1B135 | Returned to Purbeck |
| CD  C:/ BACKUP 0024B3N306005; | 1B136 | Returned to Purbeck |
| CANON COMPACT FLASH TM CARD FC 16M; | 1B137 | Returned to Purbeck |
| CD CASH FLOW 202 C3122JK2322663LH; | 1B138 | Returned to Purbeck |
| SUPERDISK S/N AA9812154230M; | 1B139 | Returned to Purbeck |
| HP MINI LAPTOP S/N CNF005CHH7; | 1B141 | Returned to Purbeck |
| 3 Keys | 1B143 | Returned to Purbeck |
| 16 GIG MICRO SD CARD; | 1B144 | Returned to Purbeck |
| SONY LAPTOP SN: C3LPQ45Y; | 1B148 | Returned to Purbeck |

| | | |
|---|---|---|
| APPLE LAPTOP SN: WQ024D5JATM; | 1B150 | Returned to Purbeck |
| KINDLE- BLACK AMAZON KINDLE D01400; | 1B151 | Returned to Purbeck |
| IPAD 16 GB SN: F5RKT7DEDFHW; | 1B152 | Returned to Purbeck |
| K-NET TOWER; | 1B154 | Returned to Purbeck |
| HP LAPTOP SN: CNF0135R2C; | 1B157 | Returned to Purbeck |
| 2 CD'S; | 1B159 | Returned to Purbeck |
| THUMB DRIVE - PNY USB 34GB GRAY; | 1B159 | Returned to Purbeck |
| SEAGATE H SN 9VY55295; | 1B163 | Returned to Purbeck |
| 12 HARD DRIVES; | 1B180 | Returned to Purbeck |
| HP 2230 TOWER SN 2VA42217QC; | 1B182 | Returned to Purbeck |
| 2 USB MEMORY DEVICES: | 1B192 | Returned to Purbeck |
| RASBERRY PI COMPUTER; | 1B193 | Returned to Purbeck |
| 1 THUMB DRIVE - American life USB drive; | 1B193 | Returned to Purbeck |
| 1 GB MEMORY CARD - EMC Isolon Flash Drive 4 GB; | 1B193 | Returned to Purbeck |
| Dell Laptop SN 83733 (ACSO) | 1B162 | Return to Ada County |
| 2 STORAGE DEVICES WCC4E6VE56PR AND KUCJ05A156; | 1B191 | Purbeck |
| DELL LAPTOP BITCOIN MINER- DELL LATITUDE E5400 S/N BVX1LK1; | 1B142 | Wipe and return to Purbeck |
| MAXTOR HARD DRIVE S/N E1K3JWBE; | 1B145 | Wipe and return to Purbeck |
| MAXTOR HARD DRIVE SN: E1JNSF3E; | 1B146 | Wipe and return to Purbeck |
| ACER ASPIRE LAPTOP SN: LXR4R0200203758A4 21601; | 1B149 | Wipe and return to Purbeck |
| DELL LAPTOP SN: F1TSYB1; | 1B156 | Wipe and return to Purbeck |
| BARACUDA SN 3T80KRM6; | 1B166 | Wipe and return to Purbeck |
| 5 THUMB DRIVES; | 1B169 | Wipe and return to Purbeck |
| 8GB SANDISK; | 1B169 | Wipe and return to Purbeck |
| TOSHIBA LATOP SN 37251406K; | 1B173 | Wipe and return to Purbeck |
| HP LAPTOP SN 5CG3291267; | 1B174 | Wipe and return to Purbeck |
| BARRACUDA SN 3J80K884; | 1B177 | Return to Purbeck |
| WESTERN DIGITAL HARD DRIVE SN WCAZA3882835; | 1B177 | Return to Purbeck |
| HP LAPTOP ELITE BOOK; | 1B181 | Wipe and return to Purbeck |
| HP Z240 TOWER SN ZVA6060RF1; | 1B184 | Wipe and return to Purbeck |
| MAC BOOK PRO SN C02JKT67D853; | 1B185 | Return to Purbeck |
| 4 MEMORY DEVICES: | 1B186 | Wipe and return to Purbeck |
| SONY LAPTOP SN #275268339019447; | 1B187 | Wipe and return to Purbeck |
| SEAGATE SN 6RW1D0Z6; | 1B195 | Wipe and return to Purbeck |
| RAVEN TOWER BS14140564RVZ01B0; | 1B196 | Wipe and return to Purbeck |
| MICRO NICHE USB THUMB DRIVE; | 1B197 | Wipe and return to Purbeck |
| SEAGATE TOWER SN NA8B08G5 (HARD DRIVE); | 1B198 | Wipe and return to Purbeck |
| USB drives<br>DVD | 1B215 | Wipe and return USB drives to Purbeck;<br>FBI to dispose of DVD |
| 2 THUMB DRIVES,<br>SEAGATE HARDRIVE SN 9VP924SV | 1B167 | Wipe and return to Purbeck;<br>FBI to dispose of pen camera |

| | | |
|---|---|---|
| SEAGATE BACKUP PLUS HARD DRIVE P/N 2AWAP7-500 SN NA9W63A3; CORSAIR FLASH DRIVE SLIDER X1 128G; | 1B199 | Wipe and return to Purbeck; Return HDD to Ada County |

TAB 134 - Amended Judgment and Commitment

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **AMENDED**<br>**JUDGMENT IN A CRIMINAL CASE** |
| | ) | |
| v. | ) | Case Number:   3:21-CR-4-TCB |
| | ) | USM Number:   33134-509 |
| ROBERT PURBECK | ) | |
| | ) | Andrew C. Hall |
| | ) | Defendant's Attorney |

**THE DEFENDANT:**

The defendant pleaded guilty to count(s) 1,2.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(i) and (c)(2)(B)(iii), and 2 | Computer Fraud and Abuse | March 4, 2021 | 1 and 2 |

The defendant is sentenced as provided in pages 1 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

November 13, 2024
_____
Date of Imposition of Judgment

_____
Signature of Judge

TIMOTHY C. BATTEN, SR., U. S. DISTRICT JUDGE
_____
Name and Title of Judge

November 15, 2024
_____
Date

DEFENDANT:  ROBERT PURBECK
CASE NUMBER:  3:21-CR-4-TCB                                    Judgment -- Page **2** of **8**

Judgment in a Criminal Case
Sheet 2 -- Imprisonment

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:  **SIXTY (60) MONTHS as to Counts 1 and 2 each, to run CONSECUTIVELY to each other, FOR A TOTAL OF ONE HUNDRED AND TWENTY (120) MONTHS.**

The court makes the following recommendations to the Bureau of Prisons:  That the Defendant be permitted to participate in the RDAP Program while incarcerated.  That the Defendant be incarcerated at Sheridan FPC.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

_____

Defendant delivered on  _____  to  _____

at  _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

_____
DEPUTY UNITED STATES MARSHAL

DEFENDANT:  ROBERT PURBECK
CASE NUMBER:  3:21-CR-4-TCB                                          Judgment -- Page **3** of **8**

Judgment in a Criminal Case
Sheet 3 -- Supervised Release

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:  **THREE (3) YEARS as to Counts 1 and 2 each, to run CONCURRENTLY to each other, FOR A TOTAL OF THREE (3) YEARS.**

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
4.  You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution.   Restitution payments must be made to Clerk, U.S. District Court, Northern District of Georgia, 2211 U.S. Courthouse, 75 Ted Turner Dr. SW, Atlanta, GA 30303.
5.  You must cooperate in the collection of DNA as directed by the probation officer.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT:  ROBERT PURBECK
CASE NUMBER:  3:21-CR-4-TCB                                                                 Judgment -- Page **4** of **8**

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

**U.S. Probation Office Use Only**

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see Overview of Probation and Supervised Release Conditions, available at:  www.uscourts.gov

I understand that a violation of any of these conditions of supervised release may result in modification, extension, or revocation of my term of supervision.

Defendant's Signature    _____    Date    _____

USPO's Signature    _____    Date    _____

DEFENDANT:  ROBERT PURBECK
CASE NUMBER:  3:21-CR-4-TCB                                                          Judgment -- Page **5** of **8**

## SPECIAL CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following special conditions of supervision.

You must not access the internet.

You must cooperate with the U.S. Probation Office in the monitoring of any computer system, Internet capable devices, and / or similar electronic devices that you have access. Cooperation includes, but is not limited to, identifying computer systems, Internet capable devices, and / or similar electronic devices (as defined in 18 U.S.C. § 1030(e)(1)) to which you have access and allowing the installation of monitoring software/hardware on said devices. You and/or your probation officer shall inform all parties that access a monitored computer or similar electronic device that the device is subject to search and monitoring. You may be limited to possessing only one personal Internet capable device to facilitate your probation officer's ability to effectively monitor your Internet related activities. You must not remove, tamper with, reverse engineer, or in any way circumvent installed software. You must provide passwords for said computer systems. If able, you must pay the cost of monitoring unless excused by the probation officer.

To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers, computer systems, Internet capable devices, and similar electronic devices (as defined in 18 U.S.C. § 1030(e)(1)) subject to monitoring. These searches shall be conducted for the purpose of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning properly after installation; and to determine whether there have been attempts to circumvent the monitoring software after installation.

You must not engage in an occupation, business, profession, or volunteer activity that would require you to with access to personal identifying information of individuals.   without the prior approval of the probation officer.

You must make full and complete disclosure of your finances and submit to an audit of your financial documents at the request of your probation officer. You must provide the probation officer with full and complete access to any requested financial information and authorize the release of any financial information.  The probation office may share the financial information with the United States Attorney's Office.

You must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

You must participate in a mental health treatment program and follow the rules and regulations of that program. Such program may require that you submit to an evaluation and / or testing. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).  You must pay all or part of the costs of the program based on your ability to  pay unless excused by the probation officer.

You must take all mental health medication prescribed by your treating provider. You must pay for all or part of the costs of medication based on your ability to pay unless excused by the probation officer.

You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer.  Failure to submit to a search may be grounds for revocation of release.

DEFENDANT: ROBERT PURBECK
CASE NUMBER: 3:21-CR-4-TCB                                    Judgment -- Page **6** of **8**

You must warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that you violated a condition of your supervision and that areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

You must permit confiscation and/or disposal of any material considered to be contraband or any other item which may be deemed to have evidentiary value of violations of supervision.

You must participate in an alcohol and / or other substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.) You must pay all or part of the costs of the program based on your ability to pay unless excused by the probation officer.

You must submit to substance abuse testing to determine if you have used a prohibited substance. You must not obstruct, attempt to obstruct, or tamper with any testing methods. You must pay all or part of the costs of testing based on your ability to pay unless excused by the probation officer.

You must not use or possess any controlled substances without a valid prescription. If you do have a valid prescription, you must disclose the prescription information to the probation officer and follow the instructions on the prescription.

You must not use or possess alcohol.

DEFENDANT:  ROBERT PURBECK
CASE NUMBER:  3:21-CR-4-TCB

Judgment -- Page **7** of **8**

Judgment in a Criminal Case
Sheet 5 -- Criminal Monetary Penalties

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties.

<u>Special Assessment</u>

TOTAL      $200

<u>Restitution</u>

TOTAL      $1,048,702.98

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| <u>Name of Payee</u> | <u>Restitution Ordered</u> |
|---|---|
| A.Y. | $92,095.00 |
| C.O.N | $113,935.00 |
| N.D. | $400.00 |
| F.M.C. | $138,500 |
| G.H.A.P. | $142,568.85 |
| H.E.C. | $130,174 |
| S.O. | $285,980.13 |
| U.F.C | $145,050 |
| | |
| TOTALS | <u>$1,048,702.98</u> |

**The probation officer will submit the individual victims' full names and addresses to the Clerk of Court for the Northern District of Georgia separately, via memorandum.**

DEFENDANT:  ROBERT PURBECK
CASE NUMBER:  3:21-CR-4-TCB                                                      Judgment -- Page **8** of **8**

*Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
**Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
***Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after
September 13, 1994, but before April 23, 1996.

TAB 147 - Transcript of 11-13-2024 Sentencing Hearing
Pages 1-65

1

1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF GEORGIA
2                           NEWNAN DIVISION

3

4
UNITED STATES OF AMERICA,           )
5                                   )
            Plaintiff,              )
6                                   ) Case Number
                 v.                 )  3:21-cr-00004-TCB
7                                   )
ROBERT PURBECK,                     )
8                                   )
            Defendant.             )
9   _____)

10

11

12          Transcript of Sentencing Hearing
      before the Honorable Timothy C. Batten, Sr.,
13             United States District Judge
             November 13, 2024, 11:30 a.m.

14

15

16

17          Proceedings recorded by mechanical stenography,
   transcript produced by computer.
18   _____

19

20

21

22

23          Geraldine S. Glover, RPR, CRR, RCR
             Federal Official Court Reporter
24          75 Ted Turner Drive, SW, Suite 1714
               Atlanta, Georgia  30303-3309
25

                    UNITED STATES DISTRICT COURT

2

1

2  A P P E A R A N C E S:

3

4  On Behalf of the Plaintiff:

5        Michael V. Herskowitz
         Brian Z. Mund
6        Nathan Parker Kitchens
         Alex R. Sistla
7  United States Attorney's Office

8

9  On Behalf of the Defendant:

10       Andrew C. Hall
   Hull Hirsh Hughes, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    UNITED STATES DISTRICT COURT

1              P R O C E E D I N G S

2           THE COURT:  Good morning, gentlemen.

3           MR. HERSKOWITZ:  Good morning, Your Honor.

4           MR. HALL:  Good morning, Judge.

5           THE COURT:  All right.  Are we ready?

6           MR. HALL:  Yes, Your Honor.

7           MR. HERSKOWITZ:  Yes, Judge.

8           THE COURT:  Mr. Purbeck, have you read the

9    presentence investigation report in your case?

10          THE DEFENDANT:  I have.

11          THE COURT:  The Court will adopt the findings of fact

12   and conclusions of law in the report.  We have two charges,

13   Counts 1 and 2.  They are computer fraud and abuse,

14   unauthorized access.

15          Let's compute the guideline range.  Well, the base

16   offense level is 6.  And we add 14 levels because the amount

17   of the loss is between $550,000, and $1,500,000.  So that

18   brings us to 20.  And then we add two levels because the

19   offense involved 10 or more victims.  So we're at 22.  Then we

20   add two levels because the offense otherwise involves

21   sophisticated means.  So that puts us at 24.

22          Then we had an issue of whether or not the offense

23   involved the production of trafficking of an unauthorized

24   access device.  And although the defendant originally made

25   that objection, he has since waived that objection, so that

                     UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 4 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 76 of 138

4

1  brings us to 26.

2          And then we have an issue as to whether or not -- no.

3  I'm sorry.  Next is the offense involved an intent to obtain

4  personal information, so we increase by two levels, so that

5  takes us to 28.

6          Then we have an issue as to whether or not the

7  offense involved obstruction of justice.  Apparently the

8  probation officer says and the United States takes the

9  position that the defendant obstructed justice by filing a pro

10  se civil case for mandamus relief out in the federal district

11  court in Ohio, in which he made untruthful accusations against

12  the Government and falsely accused the Government of perjury

13  with respect to the case.

14          Mr. Hall has made an objection on behalf of the

15  defendant to the effect that whatever his client may have done

16  in that other case is not related to this case and therefore

17  the obstruction enhancement does not apply.

18          And, Mr. Herskowitz, I'd like to hear the

19  Government's answer to that.

20          MR. HERSKOWITZ:  Yes, Judge.  Mr. Mund, actually, if

21  it pleases the Court, is going to take this objection.

22          THE COURT:  All right.

23          MR. HERSKOWITZ:  Thank you.

24          MR. MUND:  Good morning, Your Honor.

25          Just to clarify, the Government's position at the
                        UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV    Document 147    Filed 12/18/24    Page 5 of 79
USCA11 Case: 24-13841    Document: 27    Date Filed: 09/04/2025    Page: 77 of 138

5

1  outset is we do agree with Mr. Hall that an obstruction

2  enhancement would not be appropriate based on the civil filing

3  in Idaho.  We -- the initial presentencing report laid out

4  that an obstruction enhancement was appropriate based on the

5  false testimony at a supression hearing before Judge Vineyard

6  in this case.

7          THE COURT:  Right.

8          MR. MUND:  And our understanding is, while the final

9  presentencing report did not explicitly contain that

10  information, it was never revised from the original

11  presentence report.  But in any event, the Government takes

12  the position that the obstruction enhancement is appropriate

13  based on the false -- the materially false testimony I should

14  say, at the sentencing hearing on September 2nd of 2022.

15          THE COURT:  Okay.  Mr. Hall, I'll hear from you.

16          MR. HALL:  Yes, sir.  First I would say, Your Honor,

17  that the presentence report did correctly sustain my objection

18  to the grounds that the Government is now moving on.  So my

19  position would be, that matter having now been resolved at the

20  presentence level we should not revisit before Your honor.

21  Assuming, without commenting, that Your Honor may decide, no

22  no, let's go ahead and address it, I'm happy to address the

23  substance of it in some detail.  I'll give you the short

24  version first and then as necessary, Your Honor, I will go

25  further.

UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV    Document 147    Filed 12/18/24    Page 6 of 79
USCA11 Case: 24-13841    Document: 27    Date Filed: 09/04/2025    Page: 78 of 138

6

1      My first position is that matter is no longer part of

2 the presentence report, therefore that matter is not something

3 that we need to decide here today.  This -- what I'll refer to

4 as the original grounds are in the presentence report.

5      First of all, Judge Vineyard never found that

6 Mr. Purbeck perjured him or committed false testimony.  He

7 does have language in the report and recommendation that the

8 Government cited -- and we can look at as well.  And I'm happy

9 to refer specific pages for the Court -- where he did say --

10 I'll go ahead and refer to some of it right now since we're

11 not talking in abstract.  He did make comments that

12 Mr. Purbeck's testimony regarding the circumstances

13 surrounding the interview was not fully credible, as it was

14 contradicted by the more credible and consistent testimony of

15 Agents Coffin and Pinette.  That's Page 38 of the R and R.

16      He made another comment:  Indeed Purbeck's testimony

17 at that hearing was illogical and even fanciful at times, as

18 he seemed to embellish and speculate about circumstances that

19 he stated as fact.  That's Page 39.

20      And then he also has what I believe the Government's

21 relying on over on Page 54 of the R and R, where it says:

22 Indeed despite Purbeck's incredible testimony that he thought

23 he was on the verge of organ failure after sitting in the

24 direct sunlight for hours on August 21, 2019, he admitted he

25 never sought any medical attention and he even subsequently

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 7 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 79 of 138

7

1  flew to Atlanta for a proffer session with the agents just

2  weeks later.

3       I believe those are the three principal passages that

4  the Government's relying on.  If I've missed one, that's on

5  me.

6       THE COURT:  I'm looking at Page 7 of Document 127,

7  which is the Government's sentencing memorandum.  And they

8  quote Judge Vineyard as having found that, quote, Purbeck's

9  testimony at the hearing was illogical and even fanciful at

10  times, as he seemed to embellish and speculate about

11  circumstances that he stated as fact, close quote.

12       And the Government goes on in its memo to argue:

13  Judge Vineyard observed and found, quote, in general Purbeck's

14  testimony was incredible, close quote, in that he, quote,

15  contradicted himself and told an untenable story, close quote,

16  and, quote, his testimony was not plausible, close quote.

17       That seems like a pretty firm finding of perjury to

18  me.

19       MR. HALL:  Okay.  Well, I -- I mean, Judge, I'm not

20  going to sit here and quibble with the Court because Your

21  Honor is the one making the rulings and I respect and

22  recognize that.

23       I guess our position -- and just to be clear -- I'm

24  listening to Your Honor.  It's not like I'm not listening.

25       THE COURT:  I know you are.

                   UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 8 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 80 of 138

8

1            MR. HALL:  We're in a position here where you have

2    two FBI agents come in and testify to a set of facts, you

3    know, and they testified under oath.  And Mr. Purbeck also

4    testified to a set of facts.  And Judge Vineyard found that

5    the two agents were more credible and therefore went with

6    their versions of events than Mr. Purbeck's version of events.

7            THE COURT:  No.  He went further than that.  He

8    didn't just say the prosecution's side of the story is more

9    credible than the defendant's.  He specifically said what I

10   just said, which is tantamount to, if not equal to, a finding

11   of perjury, in my mind.

12           MR. HALL:  Okay.  Fair enough.  I'm going to add

13   another comment and then I'll be quiet.

14           So I think my second point on that, recognizing Your

15   Honor has already stated and ruled as to how you interpret the

16   language by Judge Vineyard, is that Judge Vineyard did not

17   have before him what we believe to be some testimony that was

18   important.  And so this is a CJA case and I'm obligated, you

19   know, to seek out permission from the Court to both fund and

20   get Rule 17(c) subpoenas --

21           THE COURT:  Right.

22           MR. HALL:  -- which I did by filing a motion under

23   seal, which is in part of the docket.  I brought copies today

24   if we get into that level of detail I can share with

25   everybody.  But one of the people that we asked to subpoena

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 9 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 81 of 138

9

1  was Steven O'Meara.

2           THE COURT:  I allowed that; right?

3           MR. HALL:  No, sir.  And to be specific, it's not

4  you, Your Honor, it's Judge Vineyard.

5           THE COURT:  Magistrate judge?

6           MR. HALL:  Yes.  So Judge Vineyard we specifically

7  asked that we be able to subpoena Steven O'Meara.  and Steven

8  O'Meara -- that was denied.  That happens.  That's fine.

9           THE COURT:  I know.

10          MR. HALL:  But as is often the case from the defense

11 side of things, we don't have easy access to these people.

12 They don't want to talk to us.  The power we have is the

13 court's subpoena power that we then say, okay, we're going to

14 come in here and we're going to find out under oath what you

15 have to say about things.

16          And so we asked about Steven O'Meara.  It was denied.

17          Subsequently in this civil proceeding that

18 Mr. Purbeck filed -- and it had already been filed, but in

19 that civil proceeding that was pending --

20          THE COURT:  In Idaho?

21          MR. HALL:  Yes, sir, in Idaho.

22          Subsequently there is a civil deposition of different

23 individuals.  One of them was Mr. Steven O'Meara.  I brought

24 excerpts of the deposition.  I've quoted the relevant portion

25 in my objections to the PSR.

                    UNITED STATES DISTRICT COURT

1           THE COURT:  Right.

2           MR. HALL:  And I'm happy to -- I have the actual

3    excerpts.  I filed under seal last night the entire

4    deposition.  I previously shared the entire deposition with

5    the Government and the probation officer.  So everyone is

6    working off the same set of information.

7           But to cut to the point, Your Honor, is what -- the

8    testimony that was given at the evidentiary hearing before

9    Judge Vineyard by FBI Agent Coffin was, among other things,

10   that he had -- he had no idea that Ada County, which is who

11   Steven O'Meara works for and Mr. Purbeck worked for, wanted to

12   come out on the day of the search warrant by FBI and interview

13   and participate and be part of that search warrant event.

14          They actually had a meeting the day before with the

15   sheriff that O'Meara was present at and Agent Coffin was

16   present at.  At least according to Mr. O'Meara's testimony in

17   the civil deposition, he said we told him we wanted to come

18   out -- I'm paraphrasing.  We told him we wanted to come out.

19   And he said he'd call us the next morning and let us know when

20   we could come out.

21          When I asked him under oath here in this very

22   courtroom before Judge Vineyard about that question, he said,

23   first he ever heard of Ada County wanting to come out was on

24   the 21st of August 2019, which is the date of the search

25   warrant, whereas just the day before on August the 20th they

1   had this meeting where that discussion came up.

2          The significance I'm presenting to the Court of this

3   is, that when Judge Vineyard heard that, it wasn't like a

4   wholesale -- contradiction.  But I do think it's the kind of

5   material fact that went right to our *Geraghty* claim that was

6   denied by the Court, by Judge Vineyard.  Maybe at that point

7   Judge Vineyard said:  Okay, hold on.  You know, I've been

8   going all the way with these FBI agents saying everything.

9   And yet on something that's a pretty basic fact that was

10  happening close to time, we have a contradiction, what I

11  submit is a material contradiction as it relates to the

12  *Geraghty* claim about whether they knew employers of

13  Mr. O'Meara were planning to come out and wanted to come out,

14  and in fact, agreed that they would advise them when it was

15  okay for them to come out once they cleared the scene.  And

16  Agent Coffin claimed he -- it didn't happen.

17         So to me does that -- is that a contradiction to

18  every single piece of testimony?  No.  The answer is, it's

19  not.  But to me it's a material fact it may -- I don't know.

20  I can't tell you what Judge Vineyard would have done.  But in

21  my mind and what I'm presenting to the Court, it may have

22  caused Judge Vineyard to back up and think, okay -- oh, sorry.

23  Yes, my apologies, Madam court reporter.  It's my red hair

24  that's now turned gray.

25         So it may have caused Judge Vineyard to back up and
                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 12 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 84 of 138

12

1  decide -- he may have still ruled against us, but maybe his

2  language in concluding, as Your Honor has ruled, and held that

3  this is tantamount to finding that he falsified his testimony

4  and tantamount to perjury, that maybe it wasn't all a one-way

5  street and there's more going on here under oath.  So

6  that's --

7           THE COURT:  Let me ask you a couple of things.

8           MR. HALL:  Yes, sir.

9           THE COURT:  That deposition you're referring to was

10 taken 14 months ago; right?

11          MR. HALL:  I wasn't -- I had no part in the civil

12 proceedings, so let me do my math in my head.  But I'm going

13 to go with yes.

14          THE COURT:  September 8, 2023, according to the cover

15 sheet of the transcript.

16          MR. HALL:  Yes, sir.

17          THE COURT:  And that was filed last night at 6:30 I

18 believe.

19          MR. HALL:  Yes.  It was filed under oath.  Yes.  I

20 shared it with the Government over a week ago and the

21 probation officer.  But yes --

22          THE COURT:  Why don't you go ahead and tell me.

23 Because I've read your memo and I've skimmed the deposition.

24          What parts of this deposition?  Do you have the page

25 numbers --

                    UNITED STATES DISTRICT COURT

1          MR. HALL:  Yeah, I do.

2          THE COURT:  -- specifically?

3          MR. HALL:  May I approach, Your Honor?

4          THE COURT:  Yes, sir.

5          MR. HALL:  Judge, I forgot to mark it, but I'm going

6  to treat that as Defendant's Exhibit 1.  I'll perfect my

7  marking in just a moment.

8          THE COURT:  All right.  That's admitted.

9          MR. HALL:  All right.  So, Your Honor, if you would

10  look -- and this is -- and what this is is an excerpt from the

11  deposition of Steven O'Meara, because it runs

12  160-and-something pages.  I didn't excerpt the whole portion.

13  I filed the whole portion of record so we would have it in the

14  record so people wouldn't say I'm just picking and choosing.

15  But this is my picking and choosing excerpt that I'm using.

16          And so if you start -- we're at Page 35.  And

17  specifically at Page 36 and 37, Mr. O'Meara discusses how he

18  met with the sheriff and the FBI agents.

19          I'm happy to keep talking.  I'm happy to be quiet.  I

20  just wanted to address your --

21          THE COURT:  Go ahead.  Lead me through it.

22          MR. HALL:  Okay.  All right.

23          I'm over on Page 37.  And then the agents walked in

24  and introductions were made.  Coffin clearly -- well, to me

25  was the lead.  This is Steven O'Meara testifying at the

                    UNITED STATES DISTRICT COURT

1    deposition.  He's the only person I really talked to even

2    though there was a local FBI guy.  This was Coffin's baby.

3         It goes on.  We're going to take everything back to

4    Georgia, blah, blah, blah, blah, blah.  And then he goes --

5    he's part of this big organization, international, and I

6    didn't get to read anything.  But basically they just told me

7    this and said, we will let you know when you can go.  They

8    made it clear that the sheriff had asked for the two of us to

9    have to go over to your house, your house being Mr. Purbeck's

10   house.

11        THE COURT:  Right.

12        MR. HALL:  That they have agreed to it, they being

13   the FBI agents.  That was okay with them.  And I kind of got

14   the feeling that maybe that was almost like a -- they were

15   being nice; because I got the feeling that it wasn't a local,

16   it's not a local case.  So they didn't have to go.  And they

17   didn't have to let us go over there.  Bartlett -- that's the

18   sheriff of Ada County at that time -- wanted it.  And I think

19   the FBI said okay.

20        And so he said:  We'll call you in the morning.  You

21   be here.  We'll call you in the morning.  We'll let you know

22   where the address is -- and then turning over to Page 38 --

23   and you show up.

24        THE COURT:  Okay.  All right.  Let me hear the

25   Government's response to that.

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 15 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 87 of 138

15

1            MR. HALL:  Yes, sir.

2            THE COURT:  Mr. Mund.

3            MR. MUND:  Your Honor, with respect to specifics, may

4    I have one moment to confer with the agent?

5            THE COURT:  Yeah, sure.

6                          **(brief pause)**

7            MR. MUND:  So, Your Honor, a couple of points.  The

8    first is, you know, this -- with respect to this civil

9    deposition, the government prosecutors here were not there, so

10   we don't have direct knowledge.

11           I think at the outset, we don't think that this is

12   relevant to the question -- the questions of what may or may

13   not have been said is not relevant to the separate clear false

14   statements that were made at the supression hearing,

15   specifically with respect to the, you know, physical condition

16   of the defendant at the time of the hearings -- at the time of

17   the interview, the questions with respect to the repeated --

18   claimed repeated requests for attorneys, et cetera.

19           So that's Point 1, that the -- and this one specific

20   fact, taking it in the grand scheme of things, it's -- as

21   Judge Vinyard made his credibility findings, they speak for

22   themselves.

23           With respect to the specific instant and factual

24   questionnaire, of course there was no opportunity for this to

25   come out at -- these questions to come out at the suppression

                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 16 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 88 of 138

16

 1   hearing themselves.  Insofar as we recollect -- and I don't

 2   have the suppression transcript before me -- the question had

 3   to do with whether or not the FBI agents had coordinated the

 4   visits of Ada County in the past.  And the recollection of the

 5   agent's proffer to the Court is that there was no previous

 6   coordination.

 7          Now, there wasn't the -- the opportunity for that to

 8   happen did not take place, so it's speculation here.  But, you

 9   know, we're in a situation of there's an outside deposition

10   which we've just been recently made aware of, which ultimately

11   does not speak --

12          THE COURT:  It does not impeach the other testimony

13   in the case.  I find that the Government has carried its

14   burden of showing that a point should be added for obstruction

15   of justice on the grounds that I've already stated.  So that

16   brings us to 30.  That's the offense level.

17          The defendant has accepted responsibility, and

18   therefore gets a three-level reduction.  That takes us to 27.

19          And then we have an issue as to whether or not the

20   defendant is eligible for a further two-level decrease

21   because -- and the Government says that he is not eligible

22   because he caused a financial hardship to one of the victims,

23   whose initials are DS.

24          I've read the defendant's response to this.  The

25   defendant, understandably, takes a pretty technical view of

                    UNITED STATES DISTRICT COURT

1   the reading.  Points out that sentencing guidelines Section

2   4C1.1 requires for this 2-point reduction to be disallowed

3   that the defendant have caused substantial financial hardship.

4   And according to the defendant, that is not what the

5   presentence writer wrote in the report.  She wrote that DS had

6   suffered financial hardship.  So we're missing that adjective

7   of the word "substantial".

8        I've got your argument down pretty correct, don't I,

9   Mr. Hall?

10        MR. HALL:  You do, as Step 1, yes, sir.  But, yes,

11   sir, that's spot-on.

12        THE COURT:  That's the first step.

13        The second one, I think what you're saying today is,

14   again, a more of a procedural and technical objection along

15   the lines of, it's too late to change it now.

16        The probation writer wrote that it was financial

17   hardship.  She didn't say substantial financial hardship.  And

18   we're not going to modify the report at this hour because the

19   Government didn't object to the fact that the word

20   "substantial" was not included.

21        That's your second argument?

22        MR. HALL:  Yes.  I think the second one was that we

23   don't think that evidence is that Mr. Purbeck personally

24   caused substantial financial hardship.  But what Your Honor

25   just stated correctly states my initial argument totally.

                    UNITED STATES DISTRICT COURT

1          THE COURT:  Okay.  Now -- well, let me skip to the

2    next one, though.  How can you possibly say that your client

3    did not cause substantial financial hardship?  Forget for the

4    moment whether or not we should be considering the

5    significance of the omission of the word "substantial" and

6    just tell me.

7          I mean, this Dr. S had to sell his orthodontic

8    practice.  I don't need to get into all the details.  And I

9    understand he's here today to make a statement.  So we're

10   going to hear what I've already read, which is that he had

11   tremendous financial loss.

12         Why do you say it's not substantial?

13         MR. HALL:  Well, I think the argument I would make is

14   slightly different.  And it's really from a lack of

15   information.

16         Okay.  We have agreed that we owe him $285,000 and

17   some change in restitution.  Didn't quibble about that.

18   Didn't go down -- you know, show us all that.  We just signed

19   up for that, as well as many other victim of relevant conduct.

20         Dr. Simon, we're very sorry for what happened to him.

21   Mr. Purbeck will address that at the appropriate time in a

22   statement of allocution.  But to be super clear, every victim,

23   relevant conduct or victim of -- kind of conviction, we just

24   agreed, signed up for it.  And we're not --

25         THE COURT:  How can you say 200 plus thousand dollars

                    UNITED STATES DISTRICT COURT

1  is not a substantial financial hardship?

2        MR. HALL:  I can't.  That in and of itself is -- if

3  that's the end of the story, then that's the end of the story.

4  We are a lack of information because when I read -- and Your

5  Honor has not seen this.  I'm not suggesting -- it's not been

6  part of -- but what has been produced to me yesterday by the

7  Government was a 302 in where they discussed with -- basically

8  interviewed Dr. Simon again about things.

9        And among the information that came to my knowledge,

10  but I know very little about it, was he had a loan or he had

11  some kind of bank debt for $1.1 million to expand or build a

12  new practice or new building.  I can't tell from the context

13  of it, but something along those lines.  And the allegation is

14  he was unable to service that loan and ultimately had to sell

15  his practice at a discount to clear out that loan.  And that

16  is the cause of him having to sell the business.

17        I don't know enough to know, was that because of

18  Mr. Purbeck, was that because of some downturn or change in

19  the business unrelated to Mr. Purbeck.  I know their position

20  is, it's all due to Mr. Purbeck.

21        I have a list of the -- of how the $285,000 came

22  about that they produced in discovery quite sometime ago.  And

23  it is both the initial -- I mean, it is legal fee after legal

24  fee after legal fee that goes on for close to a year.

25        Again, this is not quibbling about the restitution we

                    UNITED STATES DISTRICT COURT

1  signed up for, but it is asking about whether all of that is

2  fairly attributable to Mr. Purbeck.  If it is -- I guess two

3  thoughts.  One is, if just the mere fact there's $285,000 of

4  restitution in and of itself as substantial financial

5  hardship, then I lose.  I mean, I just think I lose.  That's

6  not really my argument.

7          My argument is more -- a lot of it is from a lack of

8  information and lack of knowledge -- is I don't know that just

9  because someone says it was Mr. Purbeck we have to agree with

10  that or sign up for that without knowing more about exactly

11  why this 1.1 bank loan that apparently preexisted -- I'm

12  assuming preexisted Mr. Purbeck -- was that the cause of it?

13  It's just we have some unknowns here.  And I guess that was

14  the basis for my secondary objection.

15          But if Your Honor finds, look, any way you slice and

16  dice it, if you cause $285,000 of restitution to somebody,

17  that's financial hardship, then I lose.  That's not my

18  argument.  But I would say, if that is an argument to be made,

19  that's one even I agree I lose on.

20          THE COURT:  We both agree on that then.

21          MR. HALL:  Yes, sir.

22          THE COURT:  In terms of whether or not actual

23  information has been provided to your client to make a

24  judgment as to what the measure of substantial financial loss

25  was by Dr. Simon, what about the fact that you didn't object

UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV    Document 147    Filed 12/18/24    Page 21 of 79
USCA11 Case: 24-13841    Document: 27    Date Filed: 09/04/2025    Page: 93 of 138

21

1   to Paragraph 66 of the PSR, at least not on that ground, not

2   on that basis?  Paragraph 66 is the chart that identifies the

3   victims, describes the information stolen, and lists the

4   actual losses.  And for Simon Orthopedics, it's got the

5   $285.980.13 figure.  And there's no objection to that as to we

6   don't have enough information to know that that's valid or

7   not.

8          MR. HALL:  I'm sorry if I'm not -- that's on me.

9   But, yeah, that's -- I agree that we're not quibbling over the

10  $285,000 of restitution --

11         THE COURT:  Yeah, but I mean, if it's restitution

12  loss, wouldn't that be a loss to the defendant -- I mean to

13  Dr. Simon?

14         MR. HALL:  Yes.  And we didn't object -- I agree we

15  didn't object to Paragraph 66.  And I'm not trying to

16  introduce an objection to that now.  And that's why my

17  point to Your Honor -- and I feel like I'm the one who's

18  sorry.  But it's just, my point to Your Honor was, that if

19  $285,000 in and of itself -- it's just like there's a level.

20  We don't -- whatever the number is, once you get to 285,000,

21  it's got to be substantial.  I don't, frankly, candidly,

22  believe that's the law.  I believe that it could be different

23  amounts cause a substantial financial hardship to different

24  people.

25         THE COURT:  I understand what you're saying.  I think

                    UNITED STATES DISTRICT COURT

1    the Government has carried its burden on this.  I'm not sure

2    the Government even has the burden.  But assuming the

3    Government has the burden of showing that the defendant is not

4    entitled to the 2-point reduction, I find that the Government

5    has carried it.  And to the extent the defendant had that

6    burden, he has not.

7         So that brings us to:  We stay at an offense level of

8    27.  The defendant has no criminal history other than this

9    case.  He's therefore in Criminal History Category 1.  And A

10   person in Criminal History Category 1 with an offense level of

11   27 has a custody guideline range of 70 to 87 months.

12        Counsel, based on my rulings today and without

13   waiving any objection thereto, have I correctly computed the

14   custody guideline range?

15        MR. HALL:  Yes.

16        MR. HERSKOWITZ:  Yes, Your Honor.

17        THE COURT:  I will hear from Mr. Mund as to what the

18   sentence should be.

19        MR. HERSKOWITZ:  Judge, I'm going to handle the

20   3553(a) argument.

21        If it pleases the Court, I would like to have

22   Dr. Simon come up and give his impact statement and start with

23   that.

24        THE COURT:  That's fine.

25        MR. HERSKOWITZ:  Thank you.

                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 23 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 95 of 138

23

1          DR. SIMON:  In 1975 -- sorry -- at just two years

2   old, I had a root canal.  Most kids would have vowed never to

3   set foot in a dentist's office again, but I was the opposite.

4   I became fascinated by all things teeth and knew I would

5   become a dentist.  Bugs Bunny Goes to the Dentist was my

6   favorite book.  And every science fair project was another

7   chance to learn more about teeth.

8          Still obsessed with teeth as a middle schooler, I saw

9   an interview with tennis star Ivan Lendl.  He was an amazing

10  athlete, but he always seemed to be scowling.  He revealed

11  that despite all of his success on the court he never smiled

12  because he was so embarrassed by his crooked teeth.  What a

13  shame.  In that moment, I committed to pursuing my career in

14  orthodontics so I could help people be proud of their smiles.

15         Fast-forward past four years of college, four years

16  of dental school and two years of orthodontic residency, ten

17  days after I graduated from my orthodontics residency, I

18  finally made my -- I finally made my dream come true and

19  opened my own orthodontic practice in Wellington, Florida.

20         For the next 18 years, the practice I owned and ran

21  certainly went through its ups and downs, but overall I was

22  living comfortably with my family and was proud to be doing

23  what I love each day for work.  I had even inspired my only

24  child, my daughter, to pursue the same career path, in the

25  hopes of eventually joining me in running our shared namesake,

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 24 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 96 of 138

24

1  Simon Orthodontics.

2          That all changed just after 6 a.m. on the morning on

3  July 3rd, 2018.  My wife and I awoke to a disturbing cell

4  phone message to her and equally awful e-mails to both of us

5  from what appeared to be a cyberattacker.  The communications

6  we received included detailed personal information and data

7  that clearly showed our information had been stolen and we

8  were being attacked.  Someone was trying to extort us for

9  money in the form of Bitcoin.

10          We immediately called police and contacted FBI to

11  initiate an investigation, as it was clear from the e-mails to

12  us that this person or persons had very detailed information

13  about me, my family, our extended family and my practice,

14  including 18 years of patients and employees, and that the

15  intent was to sell it and use it as a weapon against us.  We

16  had to lock down all business and personal bank accounts,

17  credit cards, et cetera, to minimize as much damage as we

18  could as quickly a possible.

19          The initial e-mail began with a regurgitation of my

20  own personal information as well as my wife's.  But what was

21  scariest in those first few moments of torture was the way the

22  unknown-at-the-time perpetrator used my daughter to threaten

23  us, naming where she attended school and letting us know

24  harming her was not off the table.

25          I quote from that e-mail:  "And most importantly,

                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV    Document 147    Filed 12/18/24    Page 25 of 79
USCA11 Case: 24-13841    Document: 27    Date Filed: 09/04/2025    Page: 97 of 138

25

1  sweet Lexi D. Simon, born the 11th of February 2003, she

2  currently attends Arthur I. Meyer and will hopefully continue

3  to do so in a safe and secure way.  Fear not my new friend, I

4  do not mean threat or harm to your sweet child, I just needs

5  you to be aware of what I know control.  What I have."

6          The long e-mail using distorted English continued,

7  suggesting what would be done with the data that had been

8  stolen from me and how it would be sold and used to harm me,

9  my patients, my employees and my family.

10         The disgusting e-mail attack continued.  And in

11  addition to the data and money extortion threats, my religion

12  was being attacked and used against me, as it would continue

13  to be through various other texts throughout the ordeal.

14         "This will ruin your life if you cast my hand aside

15  and spit in my face.  Friendship is better for you than enemy.

16  But if enemy is what you seek, I have many ways of dealing

17  with those that displease me.  I know that you are of the

18  Jewish faith and that family and community are of the most

19  importance to you.  Do not let them all down, David.  That

20  would end in much bloodshed and tears."

21         Much bloodshed and tears?  Understandably, Your

22  Honor, I hope you can see why we were terrified right from the

23  start.  A deadline was given as well, so we felt even more

24  pressure to get help and find a way to get out of this

25  nightmare without further mental injury and praying there

UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV    Document 147    Filed 12/18/24    Page 26 of 79
USCA11 Case: 24-13841    Document: 27    Date Filed: 09/04/2025    Page: 98 of 138

26

1   would be no physical injury.

2           At this time, our daughter was at a sleep-away camp.

3   And the name and location of the camp was most certainly in

4   the information that was stolen, as was our flight information

5   for the next day when we were scheduled to leave to pick her

6   up from camp.  We frantically ran around our house grabbing

7   everything that was important to us and securing it at a

8   friend's house, thinking for sure when we came back after our

9   short two-day trip our home would have been broken into as

10  well as destroyed.

11          We had to alert the camp that no one other than my

12  wife and I were to be allowed on campus or to pick up our

13  daughter, in fear that the perpetrator could easily gain

14  access using the detailed personal information that had been

15  stolen.  We had to alert her local school where she would be

16  taking classes the following week to be sure they were aware

17  of what was happening, that our family's safety and security

18  had been terrifyingly compromised.

19          We had to file detailed reports and provide extensive

20  documentation with various law enforcement and government

21  agencies and alert our parents and other family members as

22  well as every one of my patients and current and past

23  employees spanning all 18 years of my practice.  We were

24  advised not to pay and not to engage with the

25  hacker/extortionist/terrorist.

                        UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 27 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 99 of 138

27

1          The e-mail described texts that the perpetrator sent

2   to encourage us to pay and again included antisemitic trope.

3   This is from a text sent to a teenage patient:  "I'm a hacker

4   who breached your orthodontist's office.  The cheap Jew didn't

5   care about you.  So let me show you what I have."  He then

6   listed her date of birth, social security number, cell phone,

7   address, driver's license number and bank account.

8          A little later that morning -- and this is only the

9   first day of this -- a teenage patient's mother sent us a copy

10  of the text her daughter received where their personal data,

11  including social security number and bank account number, were

12  given back to them as proof it had been stolen and included

13  giving this teenager my cell phone number and my wife's.

14         After day one, the texts to patients continued with

15  nasty language and threats:  "I'm not going to fuck with your

16  family credit or bank accounts.

17         "If he does not reply to me tomorrow, I will start

18  draining his other clients' bank accounts and his daughter

19  Lexi's accounts.

20         "With child social security number, I can do a number

21  of things, from starting new lives for dangerous individuals

22  that are looking for a fresh start, to buying homes, opening

23  credit, starting bank accounts, starting businesses."

24         On Day 6 there was a fax sent to my office:  "You are

25  a fool.  I have extended an olive branch and you have taken a

                    UNITED STATES DISTRICT COURT

1   piss on me.  You deserve to have your entire malpractice and

2   umbrella policies drained, your house sold at auction and your

3   family to be made homeless by the bankruptcy court.  You will

4   lose your wife and daughter because they are greedy twats just

5   like you."

6        There were also text messages and e-mails to current

7   and former employees intended to scare them and encourage them

8   to get me to pay.

9        I sat on the board of trustees at my daughter's

10  Jewish Day School.  And the perpetrator sent an e-mail to the

11  other board members:  "He is not the brightest star in the

12  sky, to use a common idiom.  He's also a greedy Jew who lied

13  to his mortgage company."  Many of the communications sent

14  were filled with disgusting antisemitic sentiment like this.

15       We now knew it was you who had all of our personal

16  information, as well as that of my patients and their

17  families.  What could we possibly do to protect ourselves at

18  that point, as you already had all of our data?

19       Over the next ten days, our hearts stopped every time

20  our phones beeped.  We were terrified that it was you again.

21  We were enduring psychological torture all the while trying to

22  go to work, run my practice and tend to our scared, broken

23  family.

24       After ten days, it got eerily quiet.  Although one of

25  the threats included:  "I will wait 60 days and then inform

                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 29 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 101 of 138

29

1  the media.  You will be fined millions of dollars by HHS,"

2  suddenly there were no more texts, e-mails and faxes.  Just

3  terror running through our veins not knowing if your torture

4  was truly over.  I guess at that point you moved on to your

5  next targets.  However, those 10 days did indeed destroy our

6  lives.

7      Those 10 days were also just the beginning.

8  Following law enforcement's guidance, we were now forced to

9  embark on a devastatingly costly path to remediate the

10  situation, having to spend upwards of $300,000.  We had to

11  hire lawyers, forensic specialists, and credit monitoring

12  companies, just to name a few, as we began to pick up the

13  pieces, while also still trying to find out who did this to us

14  and trying to protect ourselves and my practice from future

15  incidents, all the while having to work and live each day.

16      None of us, me, my wife and daughter, our extended

17  family, has been the same since.  And this is an

18  understatement.  In the ensuing months, as I navigated through

19  the situation and continued to support my family, my wife and

20  I each ended up in the hospital, suffering from anxiety and

21  stress-related illnesses, both on separate occasions, being

22  rushed back to the ER thinking we were having a heart attack.

23  My wife's condition led to pseudo tumor cerebri, which caused

24  issues with her optic nerves, affecting her sight, a condition

25  she then had to overcome after a dangerous lumbar puncture and

UNITED STATES DISTRICT COURT

1  through medication while continuing to be monitored by a neuro

2  ophthalmologist for several years following.  Again, both

3  scary and costly.

4          The time, effort, energy and money we expended over

5  the next two years led us to teeter on the edge of bankruptcy,

6  both personal and professional.  Albeit at a loss, gratefully

7  we somehow managed to sell the practice to get out from under

8  this nightmare.

9          I wanted to be an orthodontist since age 6.  I

10  dreamed of having my own practice.  My daugher was pursuing an

11  academic career with the goal of joining me in my practice.  I

12  had built that practice, my practice, over the previous 18

13  years.  And you stole it from me.  Your actions forced me to

14  give up my dream.  There is no more Simon Orthodontics.  And,

15  with that, my daughter was eventually forced to give up on her

16  dream, too.  I am no longer my own boss.  I no longer control

17  my own career destiny.  I can no longer look forward to

18  working alongside my daughter doing what I love.

19          The psychological effects continue even today.  Tears

20  stream down our faces, and I gasp for breath as we watch TV

21  shows with cyberattack storylines and the evening news with

22  real life cases of cyberattacks.

23          As we watch antisemitism continue to rise in America

24  and around the world, we are reminded of the words you used

25  against us like in one of your texts to my wife when you said:

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 31 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 103 of 138

31

1  "Do not allow your husband to be a cheap Jew."

2         When we close our eyes and remember all that you

3  stole from us, our information, our family photos, our sense

4  of safety and security, we are also reminded that we don't

5  know what you did with what you took and when and where it

6  could still show up at anytime, bringing us right back to

7  those days of sheer terror.  This will be hanging over our

8  heads for the rest of our lives.

9         I used to love what I did and loved going to work

10  each day.  I now dread going to work in someone else's office,

11  as every little thing is a constant reminder of what you stole

12  from me -- my own practice, my dream.

13         I wish I could say this hearing would help put things

14  behind us.  But truth is, we will never be over this.  I have

15  never been more afraid for myself and my family than on

16  July 3rd, 2018.  It was as if I had a gun pointed at my head

17  and my family for 10 long days.

18         They are real people behind the businesses you

19  attacked and I am just one of them.  And there were undeniable

20  consequences to me, my family and my business.  My practice

21  was a small business, not a huge company.  It could not

22  survive the aftermath of this attack.  What you took from me,

23  I can never get back.

24         To you, Judge, I thank you for allowing me to share

25  these painful details of what this despicable person did to me

1  and my family.

2        I just want to thank my wife Erica for always being

3  by my side, and than the FBI and the U.S. attorneys.

4        I will never have peace of mind and all that was

5  stolen.  Although the direct attack ended after 10 days, we

6  will never know who has our information and that will haunt us

7  forever.  I know I can't get my practice back, but I do hope I

8  can see justice served in this case.

9        I urge you, I beg you, Your Honor, to impose the

10  maximum possible penalty.  My life, our lives, have been

11  irreparably damaged.

12        Thank you.

13        THE COURT:  Thank you, Dr. Simon.

14        MR. HERSKOWITZ:  Judge, it's tough to follow

15  Dr. Simon.  Dr. Simon is extremely brave, him and his wife, to

16  come here today and address the Court.  There's other victims

17  as well, Your Honor.

18        And what sets this case apart is the unbelievably

19  cruel nature that this defendant acted towards his victims.

20  This was not just a data breach, which is bad in itself, but

21  using the information as a weapon to send harassing text

22  messages to the victims, their families, their patients, their

23  community.

24        In addition to Dr. Simon, the Court has seen in the

25  PSR and the sentencing memo, the defendant sent 27 e-mails and

Case 3:21-cr-00004-TCB-RGV    Document 147    Filed 12/18/24    Page 33 of 79
USCA11 Case: 24-13841    Document: 27    Date Filed: 09/04/2025    Page: 105 of 138

33

1    messages to a California dentist threatening to put her on a

2    sex offender registry and have her family members labeled as

3    sex offenders.

4          Purbeck hacked 19 victims across the country,

5    resulted in over a million dollars in collective losses, even

6    vulnerable victims, Your Honor, such as a safe house for women

7    and children, who were victims of domestic violence.

8          And what he did to Dr. Simon, invoking his minor

9    child, identifying her Social Security number, the school she

10   attended, invoking his religion in messages, Your Honor, we

11   would ask for a 70-month sentence, a guideline sentence for

12   Mr. Purbeck.  I believe in this case it's supported by the

13   3553(a) factors, including the nature and circumstances of the

14   offense and the history and characteristics of the defendant

15   that I've talked about, the need for the sentence to reflect

16   the seriousness of the offense, promote respect for the law,

17   provide just punishment for the offense.

18         And I also want to speak about deterrence, Your

19   Honor.  While Purbeck -- and protecting the public.  While

20   Mr. Purbeck is in federal prison, the public will be protected

21   against future crimes.

22         And deterrence is important in this case as well.

23   You have heard in 2018 how this defendant victimized Dr. Simon

24   and his family by publishing personal information about the

25   doctor's religion, his kids, spuing antisemitic rhetoric in

UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 34 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 106 of 138

34

1 the text messages.

2          Unfortunately, Your Honor, Mr. Purbeck's despicable

3 civil proceeding, which he filed just three months ago, shows

4 that not much has changed and deterrence is needed.  He

5 identified the prosecutor in the rants in this civil filing,

6 publicizing personal information, including my temple, the

7 city the temple is in; discussing the prosecutor's family,

8 including the minor children and the number of children.  This

9 filed three months ago highlights the necessity that

10 deterrence is needed for Mr. Purbeck and a prison sentence of

11 70 months is needed to deter him from further threatening

12 communications.

13          General deterrence is needed as well, Your Honor.  As

14 we set forth in the sentencing memo, cybercrime is a huge

15 problem in this country.  And it needs to send a strong

16 message to other cybercriminals as well.

17          Now, we are asking for a low-end guideline sentence

18 pursuant to the plea agreement, Judge.  In fairness to

19 Mr. Purbeck, and despite all that's happened, the Government

20 still needs to be fair.  We still need to look at his history

21 and characteristics, which we believe justify the 70-month

22 low-end guideline sentence.

23          He's 45 years old with no criminal history.  He

24 agreed to resolve this case without a trial.  And this would

25 have been a complex multiweek trial with victims coming in

UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 35 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 107 of 138

35

1  from all over the country.  And he agreed to pay full

2  restitution to all the victims without a restitution hearing.

3         So aside from his recent civil filing, which I just

4  mentioned, he has done well on pretrial release for almost

5  four years and stayed gainfully employed.  So we believe these

6  facts, Your Honor, both aggravating and mitigating, that I've

7  discussed justify and warrant a 70-month prison sentence to be

8  followed by three years of supervised release and full

9  restitution to the victims in the amount of $1,048,702.98.

10        Thank you, Your Honor.

11        THE COURT:  Yes, sir.

12        Mr. Hall.

13        MR. HALL:  So Mr. Purbeck has done a lot of wrong.

14  And the principal wrongs that he has committed for which he is

15  being sentenced here today occurred back in 2017 and 2018.  By

16  the time the FBI showed up in August of 2019, he had ceased

17  his hacking ransom scheme that lasted for a period of, you

18  know, roughly a year.  He made approximately $52,000 --

19  52,500.

20        He advised the FBI he thought it was approximately

21  $48,000.  And in preparation for this hearing, we went back

22  through to try to tighten that number up.  It Actually went

23  up.  Rather than sitting back and relying on what you told the

24  FBI that's reflected in their 302 of 48,000, we affirmatively

25  alerted the Court that the number that we've arrived at is

UNITED STATES DISTRICT COURT

1  actually a little bit higher at fifty-two-five.

2          The restitution amount is not the actual losses or

3  what he took from people through ransoms; it is restitution

4  that they incurred in remediation principally.  He owes it.

5  Doesn't excuse it.  Doesn't make it better.  But I do want to

6  point it out as a distinction that Mr. Purbeck did not make a

7  million dollars, he didn't make $100,000, he made at most --

8  and we did an optimistic estimate of $52,500.

9          There's no -- he shouldn't have filed that civil

10  filing.  He shouldn't have said the things he said about

11  Mr. Herskowitz, about Mr. Herskowitz's family.  It is

12  indefensible.  And I'm not here to try to excuse it or talk it

13  away.  I believe Mr. Purbeck will actually address it in his

14  statement of allocution.

15          But we're not sitting here saying somehow that was

16  okay.  It was certainly I believe what you will hear is with

17  hindsight and reflexion, and had he to do over again, he would

18  not have filed that civil filing, or if he had filed the civil

19  filing, he would not have used the inflammatory and ad homonym

20  rhetoric that he used.

21          I want to make one small point -- again, I'm getting

22  in front of this by saying, it's not to excuse it -- that

23  information about Mr. Herskowitz and where he attends his

24  religious faith services and his family is readily obtainable

25  on Google.  I point that out for this reason:  It is not

UNITED STATES DISTRICT COURT

1  Mr. Purbeck, who is a computer hacker skilled person being
2  sentenced for that, going out and doing some dark web deep
3  search.  I was able to do a five-minute Google search and find
4  the exact same information.  Doesn't excuse it.  Should never
5  have put it in a public filing.  But less the Court think in
6  any way that he had engaged in some kind of deep-level
7  research, I wanted to make that super clear, that even I, who
8  lack all kinds of computer skills, was able to find the same
9  information on a quick Google search.

10          THE COURT:  I accept that.

11          MR. HALL:  That kind of information is just out there
12  for all of us.

13          I would respectfully -- well, let me keep going.

14          Since he's been -- since the FBI raided in 2019, he
15  has had no further trouble.  Now, this case wasn't indicted
16  until 2021.  And there's been absolutely no indication that
17  he's engaged in any criminal conduct from 2019 -- he was not
18  arrested -- all away around until whatever the date of the
19  indictment was, February, March of 2021.

20          He voluntarily surrendered himself and was released
21  on pretrial release.  And as reflected in the PSR, he has had
22  no troubles at all while he's been on pretrial release.

23          And so when we look and see what is his conduct and
24  ability going forward as to what he's done, he's kind of put
25  his money where his mouth is, that even before being under

UNITED STATES DISTRICT COURT

1  federal court supervision -- let me back up.  Even before the

2  FBI showed up, there is no evidence he was engaging in any

3  further of these hacking, stealing data after he ceased that

4  conduct in 2018.  So, you know, it's almost or just over a

5  year of that conduct not occurring.

6        The FBI shows up.  And understandably that should get

7  most people's attention.  But again, there's no problems from

8  2019 around to 2021.  And then from 2021 around to date,

9  there's absolutely been no problems with his pretrial release.

10 He has complied with all the conditions.

11       And I respectfully submit, that demonstrates that he

12 is capable of following and adhering to a lawful, law abiding

13 lifestyle.  And so when the Government gets up here and says

14 we need to deter Mr. Purbeck both generally and

15 specifically -- and I guess as to him it would be specific

16 deterrence -- I don't disagree with that.  I'm not sitting

17 here asking you to put him on probation.  We're not going to

18 ask for that.  But I do think that he has shown he's able

19 to -- he's age 45.  And so he got up to whatever age -- I

20 won't do the math here.  But late 30s, no problem.  Had a

21 problem from a couple years -- 2017, 2018, here and has done

22 well since that time, both before and after law enforcement

23 intervention.  So I respectfully ask that Your Honor look at

24 that.

25       And then we look at the PSR and we have this JSIN.

1  And the JSIN information I think in this case is quite

2  interesting.  It shows, as reflected in both the PSR and again

3  I mention it in my sentencing memorandum, is that for

4  individuals in Mr. Purbeck's exact same situation, same

5  offense level, same criminal history category, that those

6  defendants, the average length of sentence of imprisonment is

7  49 months, the median is 48 months.

8           THE COURT:  But those people didn't threaten people

9  with their lives, did they?

10          MR. HALL:  Well, we don't know; right?

11          THE COURT:  Okay.  But you couldn't find a case where

12  you had allegations and admissions of threats and terror being

13  inflicted by the defendant in this type of a case, aggravated

14  identity theft or whatever you want to call it, stealing their

15  identities and making extortion threats.  Did you find a case

16  like this?  I haven't --

17          MR. HALL:  No, not exactly like that.  But my

18  point on the JSIN score is it doesn't reflect that information

19  one way or the other.

20          THE COURT:  It doesn't --

21          MR. HALL:  What it does tell you is that -- folks

22  with comparable offense levels.  Let's think about how he got

23  to that offense level.  That offense level, he got there

24  because, among other things, Your Honor has ruled that he has

25  an obstruction charge.  I mean, I'd be willing to bet -- I

                    UNITED STATES DISTRICT COURT

1  don't know because I don't know how to find those other 168

2  defendants in cases from JSIN.  But I'd be willing to bet that

3  many of them don't have obstruction enhancements, which would

4  put him at even a lower offense level.

5        And so, yes, you're right.  The problem with JSIN is,

6  it lacks the details about individual defendants.  But what it

7  does tell us is when people, however they arrive at that

8  offense level, whether it's a greater amount of loss or

9  whether it's an obstruction or some other enhancement that got

10 them there, that people with zero criminal history -- and

11 that's what Mr. Purbeck has -- and these offense levels,

12 that's how they're sentenced nationwide.

13        It doesn't mean Your Honor has to do that.  I get

14 that.  I'm not trying to argue otherwise.  But I think it's an

15 important data point for us to consider.

16        And then we look at these other examples, which I

17 have tried to look at -- and I have limited information about

18 them.  But what information I had I presented to the Court --

19        THE COURT:  I saw that.

20        MR. HALL:  -- is presumably in the light most

21 favorable to the Government because they're DOJ press

22 releases; right.  And they're talking about very large loss

23 amounts and prison sentences that run, you know, out of this

24 district, from anywhere from, you know, 37 months to 36 months

25 to 12 months and one day.  And some of these loss amounts are

                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV    Document 147    Filed 12/18/24    Page 41 of 79
USCA11 Case: 24-13841    Document: 27    Date Filed: 09/04/2025    Page: 113 of 138

41

 1   much higher or much more egregious from what Mr. Purbeck has

 2   been convicted of and is being sentenced for.

 3            And so it gives us another data point.  Again, it

 4   doesn't mean that Your Honor can't find ways to distinguish

 5   good or bad Mr. Purbeck's case, obviously.  But what I do

 6   respectfully submit is it's a data point that's important for

 7   us to consider overall with these kinds of cases.

 8            So all of that is to say that sending Mr. Purbeck to

 9   prison is going to have an extremely impactful -- extremely

10   influential impact on him.  Right.  I mean, it just is.  And

11   this is a guy with no prior criminal history and they're

12   talking about putting him in prison for five years and ten

13   months, for 70 months -- excuse me, five years and ten months,

14   which is 70 months.

15            I'm going to submit to the Court that a sentence of

16   36 months is much more appropriate.  You're going to get all

17   the same specific deterrent value, general deterrent value,

18   because nobody, nobody in a position like Mr. Purbeck, who has

19   no prior criminal history, who is in their middle 40s, younger

20   or older, for that matter, is going to think going to prison

21   for even one day, much less one year, is not a significant

22   impact.  That's why I think 36 months is much more

23   appropriate.

24            It's consistent with, although lower than the JSIN

25   scores.  It is consistent with and sometimes higher than some

                    UNITED STATES DISTRICT COURT

1  of the comparable cases that I submitted to the Court here in

2  this district.

3        And if Your Honor were to say, well, okay, as you've

4  just said, great, Mr. Hall, what about the threats, what

5  about -- we don't know all the details about those cases, but

6  then you could increase it from the 36 to something higher,

7  like 40 months.

8        The point is, when Mr. Purbeck gets out of prison, at

9  whatever point he gets out of prison, I would respectfully

10 submit, the chance of him reoffending is zero.  I mean, it's

11 just zero; right.  You're not going to go to federal prison,

12 someone like Mr. Purbeck, and somehow the difference between

13 36 months and 70 months is going to have a greater impact on

14 you.

15       He's demonstrated that he can be law abiding and not

16 continue to offend or do anything else.  So again, from a

17 specific deterrent standpoint, you're going to get the 36

18 months, there's zero evidence that -- I'm not asking for

19 probation.  I'm not asking for probation at all.  But there's

20 zero evidence before this Court that if you were to put him on

21 probation today he's a risk to reoffend.  That's what specific

22 deterrence is.  It specifically deters him from committing

23 some act.  So 36 months is going to accomplish that.

24       THE COURT:  Yeah, but the Eleventh Circuit has

25 repeatedly instructed that general deterrence is particularly

                   UNITED STATES DISTRICT COURT

1   appropriate in cases like this one; right?

2           MR. HALL:  Fair enough.

3           So the Government has cited some cases for that

4   proposition.  And specifically I want to take over to Page 23

5   of the Government's sentencing memorandum.  And the *Kuhlman*

6   case, which is the first one, I went and looked at that.  And

7   that's the case where it was reversed.  And it was a

8   healthcare fraud scheme.  The sentencing guidelines were 57 to

9   71 months according to the Eleventh Circuit opinion.  There's

10  $3 million in restitution or loss.  I can't remember exactly

11  which one it is.  It was a scheme that lasted for five years.

12  And the district judge gave probation.  And the Eleventh

13  Circuit reversed that decision.

14          So while, yes, that quote is accurate, it's an

15  important goal of sentencing in white collar crime prosecution

16  the need for general deterrence -- excuse me; the need

17  for general deterrence, that's the *Kuhlman* case, the context

18  for that was 57 to 71 months and the district judge who gave

19  straight probation.

20          Go down to the *Howard* case, which is the one right

21  below, also an Eleventh Circuit case, loss amount was a little

22  harder to figure out because initially it was $4.2 million.

23  And then it seemed the district judge found it was really

24  $3.5 million in loss.  That was reversed by the Eleventh

25  Circuit because despite that loss amount and despite the

                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV    Document 147    Filed 12/18/24    Page 44 of 79
USCA11 Case: 24-13841    Document: 27    Date Filed: 09/04/2025    Page: 116 of 138

44

1  criminality of it, the sentence was a seven-day sentence.  And

2  also was followed by probation and a portion of home

3  confinement.  But the custodial portion, according to that

4  reported decision is seven days.

5        So again, that's not shocking that the Eleventh

6  Circuit reversed that.  But I think that quote that the

7  Government has put in there has to be taken in the context of

8  the case they're dealing with.

9        I go over to Page 24.  This is one I'd look to point

10 out to Your Honor.  It says here:  **United States v McQueen**.

11 Again, they're talking about general deterrence.  The

12 Government's arguing to the Court, we need general deterrence,

13 70 months can be general deterrence.

14       So **United States v McQueen** is an Eleventh Circuit

15 case.  Well, that's a quote where they say:  Such as the

16 sophisticated scheme which Purbeck participated that, quote,

17 may easily go undetected and unpunished.  Right.  And it said

18 that they reversed the lenient sentence because it sapped the

19 goal of general deterrence, which is one of the key purposes

20 of sentencing.  That's true in every case.

21       So let's figure out what that case is about.  In that

22 case right there, that was law enforcement prison guard

23 beating prisoners.  And the actual quote is:  Violent abuse by

24 correction officers may easily go undetected and unpunished.

25       And so if you just take the portion of that quote

UNITED STATES DISTRICT COURT

1   that the Government did, you can apply that to all kinds of

2   cases, in all kinds of context.

3           THE COURT:  Well, indeed that principle is

4   particularly applicable to this type of financial crime

5   because it's so difficult to detect.

6           MR. HALL:  I guess my point -- what I'm trying to

7   convey, Your Honor, is that that quote the Eleventh Circuit

8   made, it's not that general deterrence isn't applicable, it's

9   not that some of these crimes can't be difficult to detect.

10  That applies to all kinds of cases.  But this particular quote

11  had to do with a prison guard beating case.

12          When the appellate court -- my respectful position is

13  that we've got to take within context of what the facts were.

14  And that's true with all these cases down here where each of

15  the cases there was some situation where the sentence by the

16  district court was significantly lower than what the

17  guidelines were recommending but significantly.  I'm not

18  talking about 70 months to 36 months.  We're talking about

19  straight probation or seven days' confinement.  I mean, way

20  different.

21          And the last one that I'll mention where the

22  defendant actually won was a pre-*Booker* case, the Seventh

23  Circuit, 1994.  That's the *Heffernan* case.  And that's one

24  where they actually reversed it to go back and recalculate the

25  guidelines because they thought they had given him too high of

                    UNITED STATES DISTRICT COURT

1  a sentence.  That was a 20-month -- four-month sentence of

2  imprisonment due to an enhancement they thought was wrong.

3  This pre-*Booker* is really not applicable in many ways.

4          So there's no doubt that general deterrence and

5  specific deterrence are significant goals of sentencing.

6          I guess my ask and position of the Court is that 36

7  months or something close thereto if Your Honor finds 36

8  months unpalatable more than successfully achieves each of the

9  goals of sentencing in this case, including the point about

10 the way that he communicated these extortion ransom claims.

11         I mean, I'm confident most people don't just -- I

12 mean, I don't know.  I don't have a bunch of cases out there.

13 But it's certainly egregious conduct taken in isolation, but

14 that's how often times threats are conveyed.  They're not

15 pretty.  They're not nice.  They're terrible.  They use

16 despicable language.

17         But ultimately the sentencing goals are, where do we

18 end up with the individual before you?

19         I would respectfully submit Mr. Purbeck -- an

20 appropriate sentence is 36 months.

21         A couple of last points and I will sit down.  I do

22 have a couple of people that are going to want to speak to

23 Your Honor as well.

24         Regardless of what you decide, Your Honor, if Your

25 Honor decides that, no, 36 months is not on the books, that

                    UNITED STATES DISTRICT COURT

1  you're going to go with the Government's recommendation, if

2  you're going to do something in between, regardless of what

3  Your Honor ultimately rules, I would ask that you recommend

4  Mr. Purbeck for the RDAT program.

5         THE COURT:  I will.

6         MR. HALL:  I'd also ask that you recommend that he be

7  designated to the Sheridan FPC, which we believe is within

8  500 miles of his home, Boise, Idaho, and otherwise would

9  qualify.  And we believe that he should get a minimum

10 designation.  And that would be a place for minimum

11 designation.  We believe that's one where his family can

12 actually get to see him.  Because if he's just left to the

13 devices of the BOP -- I had not realized this, but there's

14 lots of federal facilities here east of the Mississippi; when

15 you get west of the Mississippi, they're either California

16 down in the south; but up in his area, which is kind of more

17 headed towards the northwest, they're much fewer.

18        THE COURT:  I'll make that request.  I don't control

19 that, but I can influence that I think.  But I will make that

20 request.

21        MR. HALL:  And then the last thing I want to address

22 is this, is his voluntary surrender.  So the Government hasn't

23 asked, but I think they're getting ready to ask in some form

24 or fashion that you take him into custody immediately upon

25 sentencing him.  And so I would ask that you not do that.  And

                   UNITED STATES DISTRICT COURT

1  I'm going to just put all my cards out on the table.

2        So he's done absolutely nothing, zero, zip, zilch, to

3  suggest that he's not still going to show up where he's

4  supposed to show up, turn himself in, and be where he's

5  supposed to be when BOP designates him.  Right.  There's been

6  no -- he's been on supervised release for an extended period.

7  He's had no violations.  No one has moved to revoke his

8  pretrial release.  He flew out here on his own dime.  It's a

9  CJA case.  But he's working.  He's been working for -- you

10 know, last year at a good company, working in manual labor for

11 the previous couple of years.

12       We talked about reaching out and getting approved for

13 a CJA.  But ultimately decided, no, the right thing to do was

14 just fly out.  He's got a roundtrip ticket.  Doesn't mean that

15 that controls.  My point to you is he's not going to stay

16 here; right.  I understand because of his rhetoric and his

17 filing, the Government rightfully is up in arms about that.

18 But rightfully being up in arms about it is not a bias for

19 taking him in custody today, I respectfully submit.  And I ask

20 that you not take him into custody.

21       I will personally drive him if need be or his boss,

22 who's here and is going to speak to you in a moment if you'll

23 hear from him, will drive him to the airport.  He will be on

24 the plane this afternoon or this evening and he'll be out of

25 here.

                    UNITED STATES DISTRICT COURT

1          And so I ask that you allow him to return to Boise,

2     continue to work and when he gets the letter from BOP to

3     surrender.

4          I'm going to give you some other ones because if Your

5     Honor says, no, I'm not going to do that, then at least let

6     him fly back to Boise and turn himself in at the Boise U.S.

7     Marshal's office.  I'd prefer he turn himself in sometime next

8     week.  But turning himself in at any point is important.  And

9     here's why:

10          When you come into custody and you don't voluntarily

11     surrenderer, your designation is treated more harshly, because

12     they say, well, you're in custody already and are coming in as

13     a custodial person than if you voluntarily returned.

14          And so Mr. Purbeck has done everything he's supposed

15     to do from pretrial release standpoints.  He has had no

16     violation.  He's complied.  He's shown up.  He's flown out

17     here for multiple hearings.  He's flown back.  He's never been

18     late.  We've never had a glitch.  And so I would ask if you're

19     not going to allow him to voluntarily surrender the normal way

20     and just wait for a BOP letter that you at least let him fly

21     back to Boise and turn himself voluntarily into the U.S.

22     Marshal's office out there preferably next week; if next week

23     doesn't work, then Friday; if Friday doesn't work, then

24     Thursday.

25          We've got two more.  If for whatever -- because I

                        UNITED STATES DISTRICT COURT

1   expect the Government is going to get up here and jump up and

2   down and, you know, scream bloody murder about you got to take

3   him into custody right now.  He's zero threat to anybody, but

4   they're going to try to argue otherwise I anticipate.  Then I

5   will personally drive him down -- I won't charge the CJA

6   bill -- personally on my dime to RRB, to the Richard Russell

7   Building this afternoon and turn him into the marshals on the

8   16th floor.  That's how important this voluntary surrender is

9   to us.

10        Or if that's going to mess up the U.S. marshals --

11  and we have someone in the back row we can ask -- then allow

12  us to go to lunch.  I will personally stay -- no, I'm not

13  going to charge.  I'll just do it -- drive over to

14  Chick-fil-A.  We'll have lunch.  We'll come back and we'll

15  voluntarily surrender.

16        Option 3 and Option 4 are my least desirable ones.

17  But such as the vehemence that the Government is going to be

18  coming up here, I anticipate, and asking you to take him into

19  custody right now, I wanted to give a full range of options

20  out there.

21        Because what we're ultimately doing is not just

22  trying to get more time of freedom, we're trying to be in a

23  position of voluntary surrender.

24        And with that, I'm going to thank you for listening

25  to me and I'm going to conclude my remarks.

                    UNITED STATES DISTRICT COURT

1          I would like, if you would, to hear from Mr. Terry

2    Franzen, who has flown here.  He wrote a letter, Your Honor,

3    which I know Your Honor's already read.  I attached it to the

4    sentencing memorandum.  But he thought, and I agreed, that

5    it's great to write a letter -- it's a very nice letter -- but

6    showing up in person speaks even more.  And he would like to

7    address Your Honor.  And I know Mr. Purbeck would like to give

8    you a statement of allocution as well.

9          THE COURT:  All right.  Thank you, sir.

10         First let's hear from Mr. Franzen.

11         MR. HALL:  May he come up to the podium?

12         THE COURT:  Yes, sir, please.

13         MR. HALL:  Just introduce yourself to the judge and

14   tell him whatever you would like to tell him.

15         MR. FRANZEN:  Hi, Your Honor.  My name is Terry

16   Franzen.  My company is Bricks R Us.

17         I have employed Robert for the last -- practically a

18   year.  I came here because I wanted to let you know about

19   Robert's character.  I have only known Robert for a year, so I

20   can't tell you before that.

21         THE COURT:  How much of what you heard today from

22   Dr. Simon were you aware of before today?

23         MR. FRANZEN:  All of it.

24         THE COURT:  Okay.  Keep going.

25         MR. FRANZEN:  And so for the year that I have known
                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 52 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 124 of 138

52

1  him, he has taken over our IT department.  And our IT

2  department has three people within it.  I have 50 employees

3  overall.  And he's been great.  He'll be sorely missed.  I

4  understand what he's gotten himself into, but he'll be sorely

5  missed.  He has a lot of talent to him.  It's a shame that

6  this is where we're at.

7           THE COURT:  Thank you, Mr. Franzen.

8           MR. HALL:  Can Mr. Purbeck stand to address the

9  Court?

10          THE COURT:  Yes, sir.

11          THE DEFENDANT:  Your Honor, Dr. Simon and Erica, and

12 any victims not here today, I stand here before you

13 overwhelmed by the weight of my own wrongdoing.  My actions

14 hacking into private computer systems and threatening to

15 reveal and sell personal information unless I receive payment

16 has caused immeasurable harm to Dr. Simon and others beyond

17 this courtroom.

18          I want to take this moment to express my deepest and

19 most heartfelt remorse to all of those who have been affected

20 by what I have done.  I cannot undo the fear, stress and

21 violation of privacy that I have inflicted upon you.  I

22 invaded not only your personal spaces but also your sense of

23 security and trust in others.  For that I am profoundly sorry.

24          I recognize that my actions have consequences that

25 extend far beyond any immediate damages.  They have impacted

                    UNITED STATES DISTRICT COURT

1  your lives, your peace of mind and your faith in the safety of

2  our community.

3          There are no words sufficient to convey how sorry I

4  am, but I hope that my acknowledgment of my wrongs can be a

5  starting point.

6          I accept full responsibility for my actions and the

7  pain they have caused.  I am committed to facing the

8  consequences and to doing whatever it takes to make amends.

9          To Mr. Herskowitz, to Mr. Kitchens, I apologize for

10  bringing your religion and family -- and Mr. Kitchens, not

11  family, but I made disparaging remarks about him.  I apologize

12  for bringing your religion and family into my public filing.

13  I actually like and am interested in Judaism.  I am not

14  against Judaism in the least.

15          Having taken time to reflect on matters, I should

16  have excluded those sections from my court filings, which I

17  wrote in the heat of the moment.

18          I have never agreed with the way the Government

19  obtained evidence in this case, but I also have never denied

20  my responsibility for the crimes I have committed.

21          Again, I am sorry for the pain I caused you,

22  Mr. Herskowitz, as well as any I have caused your family.

23          Moving forward, I intend to dedicate myself to

24  understanding the root causes of my behavior and seeking

25  rehabilitation.  I want to transform this remorse into

                    UNITED STATES DISTRICT COURT

1  positive action, striving to ensure no one else is hurt by my

2  actions again.

3       I hope that in time, through genuine effort and

4  change, I might earn a fraction of the trust I have broken.

5       Thank you for giving me the opportunity to apologize.

6  I am truly sorry for the harm I have caused.

7       THE COURT:  Thank you, sir.

8       I'll give the Government the last word.

9       MR. HERSKOWITZ:  Thank you, Judge.

10      Just a couple of points.  On these other cases that

11  Mr. Hall cited, there's just one case, the *Epifaniou* [sic]

12  case, that involved extortion.  The other cases that he cited

13  out of this district do not involve extortion.  In *Epifaniou*

14  there were two victims.  And he actually received a guideline

15  sentence because he spent about 46 months in custody overseas.

16  And he paid full restitution coming into court.  I think that

17  had some impact on the recommendation.  But it was a guideline

18  sentence in that case.

19      No case cited by the defense had to deal with the

20  unimaginable threatening, harassing nature of these messages

21  that Mr. Purbeck sent, not only Dr. Simon but others that are

22  not here.

23      Dr. Simon and his wife are incredibly brave to come

24  in here and talk to the Court about what they suffered.

25      I would suspect, Your Honor, if it is just stealing

UNITED STATES DISTRICT COURT

1   data, which is bad, we wouldn't be seeing Dr. Simon in here

2   and Dr. Simon would not have suffered what he suffered.

3        And as to the taking him into custody issue, I submit

4   to the Court that Mr. Purbeck doesn't deserve to walk out of

5   here with Dr. Simon.  Anyone that is a convicted

6   cybercriminal -- and that's what he is, what he was in March

7   of this year when he pled guilty before Your Honor -- to take

8   the prosecutor's name, put it in a search engine, even if --

9   and anyone can be Googled and everyone has personal

10  information out there -- and take that personal information,

11  putting information about religion and kids and put it in a

12  filing, we don't know what he's going to do when he walks out

13  of here.

14        Now, he didn't show up at Dr. Simon's door in

15  Florida, but look what he did to Dr. Simon.

16        So I take exception.  I'm not sure he is sorry,

17  because this was just done three months ago.

18        So he should be taken into custody today.  After the

19  conclusion of this hearing, I would ask the Court to take him

20  into custody and sentence him pursuant to the Government's

21  recommendation.

22        THE COURT:  Thank you, sir.

23        Well, I want to begin by saying that I have carefully

24  considered all of the sentencing factors set forth in 18

25  U.S.C. Section 3553(a).

1          And I have been doing this 19 years.  I was a trial

2    lawyer for 22 years.  And I have scarcely seen conduct that

3    was as egregious as this we have in this case.  The

4    psychological torture that he deliberately -- that the

5    defendant deliberately inflicted upon his victims is

6    incalculable, inestimable and overwhelming.

7          These threats, I just cannot imagine the nightmare

8    situation to Dr. Simon's entire family and I'm sure many

9    people who worked with him and some of the patients as well.

10   It's just incomprehensible and simply shocks the conscience

11   what the defendant did.

12         He has made -- by the way, I don't care any about the

13   fact that he contested the way the evidence was gathered.

14   I've gotten a feeling in there that the defendant was

15   concerned that he was going to be punished for that.  There's

16   zero of that for me.  I wasn't involved in that.  And it

17   doesn't -- I don't think he did anything but exercise his

18   rights on that part.

19         But he destroyed people's lives.  And I'm not able to

20   say that a guideline sentence is an adequate sentence.  This

21   level of cruelty and terror is so distinguishable from all of

22   the financial crimes that I've seen.  But to make statements

23   identifying the victims' young children, minor children, and

24   then threatening that if the doctor did not reply by the next

25   day he would start draining his other clients' bank accounts

                  UNITED STATES DISTRICT COURT

1   and his daughter Lexi's account, and then getting into his

2   personal space telling him you are a fool, I have extended an

3   olive branch and you have taken a piss on me, there's just not

4   a whole lot more I can say about the history and

5   characteristics of the defendant and what he did than this.

6           These accusations that he made in this recent civil

7   filing in the federal district court in Idaho also shocked the

8   conscience.  And they include vile accusations that -- a few

9   minutes ago Mr. Purbeck stated that he wrote that in the heat

10  of the moment.  Well, I don't believe that.  It's been so many

11  years, I don't see how that can constitute the heat of the

12  moment.  But regardless, this was vicious, this was cruel.

13          And the only sentence that's an adequate sentence in

14  this Court's mind is the maximum sentence authorized by law,

15  which is 60 months on Count 1 followed by 60 months

16  consecutive on Count 2.

17          I'm going to order the defendant to pay a special

18  assessment of $200.  I'm going to waive the fine and cost of

19  incarceration.

20          The defendant is ordered to make restitution in the

21  amount of $1,048,702.98 payable to our clerk.  And any

22  restitution payment that is not paid in full must be paid in

23  monthly installments from any wages the defendant earns in

24  prison.  And then when he is released from prison, he must pay

25  as a condition of his release $250 per month plus 25 percent

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 58 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 130 of 138

58

1  of his gross income in excess of $2,500 per month.

2          The defendant must notify the United States Attorney

3  for this district within 30 days of any change of mailing or

4  residence address.

5          I will place the defendant on supervised release for

6  a term of six years, three years to run concurrently to three

7  years on Count 1 and Count 2.  And on -- during this time of

8  supervised release -- well, first, he must report within 72

9  hours of his release to the probation office in the district

10 to which he is released.

11         Is it permissible to give the 72 -- I can't run those

12 consecutively, can I?

13         PROBATION OFFICER:  No, Your Honor.

14         THE COURT:  Okay.  It's three years' supervised

15 release.

16         There are conditions of supervised release for which

17 the defendant must comply.  First there are mandatory

18 conditions and then standard conditions and then special

19 conditions.

20         The mandatory conditions are that he not commit

21 another federal, state or local crime; that he not unlawfully

22 possess a controlled substance; that he submit to one drug

23 test within 15 days of release from imprisonment and at least

24 two periodic drug tests thereafter; that he cooperate in the

25 collection of DNA; and that he make restitution as I've

                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 59 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 131 of 138

59

1  already indicated.

2          The standard conditions of supervision are posted and

3  they're hereby incorporated by reference.

4          Finally, I'm going to impose the following special

5  conditions of supervision:  During his three years of

6  supervised release, the defendant must submit his property,

7  all of it, real or personal, and his person to search upon the

8  existence of reasonable grounds to believe that he has --

9  suspect that he has violated one or more of the terms of his

10  supervised release and that the person or areas to be searched

11  could provide evidence of such violation.

12          Second, he must permit confiscation and/or disposal

13  of any material considered to contraband.

14          Third, he must make full and complete disclosure of

15  his finances.

16          Fourth, he must not incur new credit charges or open

17  additional lines of credit without the approval of the

18  probation officer.

19          Fifth is the financial penalty I've already

20  indicated, the restitution.

21          Sixth, he must not access the internet, except for

22  reasons approved in advance by the probation officer.

23          Seventh, he must cooperate with the probation office

24  in the monitoring of any computer system, internet capable

25  device and/or similar electronic devices to which he has

                    UNITED STATES DISTRICT COURT

1 | access.

2 | Eighth, he must allow the probation officer to

3 | conduct an initial and periodic unannounced searches of any

4 | computers, cell phones, internet capable devices, and other

5 | similar electronic devices.

6 | Ninth, he must not engage in any occupation,

7 | business, profession or volunteer activity that would require

8 | him to have access to personal identifying information of

9 | individuals.

10 | Tenth, he must participate in a mental health

11 | evaluation, and if necessary a treatment program.

12 | Eleventh, he must take all mental health medication

13 | prescribed by his treating provider.

14 | Twelfth, he must abstain from the use of alcohol.

15 | And finally, 13th, he must participate in an alcohol

16 | and/or other substance abuse assessment, and if necessary a

17 | treatment program.

18 | I have had an opportunity for sedate reflexion to

19 | consider this.  And I just -- there's a reason that these

20 | crimes have a maximum term of imprisonment, and this is

21 | precisely the type of case.  The terror that he inflicted upon

22 | people and destroyed their lives, at least for many, many

23 | years, and left them with scars that will never leave them on

24 | this earth; and then the fact that just less than three months

25 | ago he files this mandamus petition with the outrageous

UNITED STATES DISTRICT COURT

1    allegations contained in it, they influence my thinking today

2    as to what a reasonable sentence is.

3         I find that a custody guideline sentence of 87 months

4    would be woefully inadequate to accomplish the objectives of

5    the sentencing, particularly including specific -- not

6    specific deterrence so much as incapacitation and general

7    deterrence.

8         I will recommend that he participate in -- be allowed

9    to participate in the RDAP program.  And I will ask that he be

10   designated to the facility identified by his lawyer.

11        The record should reflect that my ruling today would

12   have been the same regardless of my disposition of the

13   objections to the sentencing -- to the custody guideline

14   range.  This would have been my sentence regardless of

15   whichever way we could have come down on any of those

16   objections.

17        Does the United States take exception to the

18   sentence?

19        MR. HERSKOWITZ:  No, Your Honor.

20        THE COURT:  Does the defendant?

21        MR. HALL:  Yes, Judge.  I'll go ahead and state my

22   objections, if I may.

23        THE COURT:  Thank you, sir.

24        MR. HALL:  I object first to Your Honor's finding

25   with respect to the obstruction enhancement that Your Honor

                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 62 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 134 of 138

62

 1  made.  I would respectfully object to that.

 2          I also object to Your Honor declining to give

 3  Mr. Purbeck a 0-point offender reduction for the reasons

 4  already stated.  I know Your Honor found that the

 5  Government -- that there was a preponderance of evidence.  We

 6  respectfully submit that that issue had already been waived by

 7  a failure to raise it in the PSR and it was not otherwise

 8  properly reintroduced at this time in this case.

 9          I also object to the procedural reasonableness of the

10  sentence and the substantive reasonableness of the sentence.

11          As to the procedural reasonableness of the sentence,

12  among the reasons I would object are that calculating the

13  sentence, even given Your Honor's denial of our objections,

14  the range would be 70 to 87 months; that if to the extent that

15  those objections would have made no difference whatsoever and

16  you're giving a maximum sentence, I would respectfully submit

17  that's procedurally unreasonable because we should have an

18  opportunity to come here in a sentencing hearing and argue and

19  present whatever we want to present and then Your Honor would

20  make a determination about the sentence.  Your Honor

21  indicated, however, that regardless of how you ruled on that,

22  you had already sedately reflected and decided that that was

23  going to be the sentence.

24          THE COURT:  No.  My statement was, after

25  consideration of everything said today, everything up to this

                    UNITED STATES DISTRICT COURT

Case 3:21-cr-00004-TCB-RGV   Document 147   Filed 12/18/24   Page 63 of 79
USCA11 Case: 24-13841   Document: 27   Date Filed: 09/04/2025   Page: 135 of 138

63

1   point.

2           MR. HALL:  Yes, sir.

3           I respectfully procedurally object to the manner in

4   which the sentence was calculated and his sentence was

5   imposed.

6           Also, I think it's subsequently unreasonable.  We

7   have both parties coming in here.  The plea agreement, I

8   recognize Your Honor is not bound by that plea agreement.  But

9   this is a matter in which the parties have reached a

10  resolution, and the resolution included that the Government

11  was going to ask for 70 months, allowing Mr. Purbeck to ask

12  for a lower sentence.  Recognizing that it included in the

13  plea agreement a requirement that Your Honor is not bound by

14  that, nonetheless I respectfully submit that it is

15  procedurally unreasonable and substantively unreasonable for

16  us to come in here in this manner where we believe the

17  sentencing range is 70 to something lower or worst case 70 to

18  87 based on the PSR and Your Honor makes a determination that

19  you're going to give a maximum sentence and run that maximum

20  sentence consecutively.

21          So I would respectfully object to all the manners in

22  which Your Honor arrived at that, including deciding that the

23  information from the victim impact statement is sufficient

24  basis to deviate from the sentencing guidelines and impose the

25  statutory maximum.

                    UNITED STATES DISTRICT COURT

1          Thank you for hearing me.

2          THE COURT:  Thank you, sir.

3          I am going to abide the Government's recommendation

4    and remand the defendant to the immediate custody of the

5    United States Marshal.

6          We're adjourned.

7          MR. HERSKOWITZ:  Excuse me, Your Honor.

8          THE COURT:  Yeah, I need to do one other thing.

9          One other thing.  I have to advise the defendant of

10   his appeal rights because I gave an above-guideline sentence.

11         The defendant has 14 days from the entry of the final

12   judgment in the case within which to appeal my decision, which

13   he can do by filing a written notice of appeal in our court's

14   clerk's office.  If he does not file a notice of appeal within

15   that 14-day period, all of his appeal rights will be waived.

16         MR. HALL:  Judge.

17         THE COURT:  Yes, sir.

18         MR. HALL:  I anticipate we will be filing a notice of

19   appeal.  Happy to handle it separately.  But since we're here

20   today -- I've already discussed with Mr. Purbeck -- I

21   respectfully ask that I be relieved of my CJA appointment at

22   this point.  I've been with Mr. Purbeck for four years.

23   There's no problem between us.  But I think given today's

24   developments, he'd be best served by having a fresh set of

25   eyes on the case.  And so I will handle that separately, but

                    UNITED STATES DISTRICT COURT

1  since we're all here, I wanted to put that on the record that

2  was going to be my request.

3       THE COURT:  I think that's a very reasonable and

4  appropriate request.  And of course I hope it goes without

5  saying, I found absolutely no impropriety or inadequacy in

6  Mr. Purbeck's representation in this case.  So I will allow

7  you to step aside now under CJA.

8       MR. HALL:  Thank you.

9       I may, just to make sure, file the notice of appeal.

10 But I'll follow up with Ms. Wiggins and sort that out.  I will

11 make sure his appellate rights are protected, but then ask

12 that someone else be appointed.

13      THE COURT:  We'll say that this remission will be

14 effective immediately upon the filing of the proper notice of

15 appeal.

16      MR. HALL:  Yes, Your Honor.  Thank you.

17      **(The proceedings concluded at 12:57 p.m.)**

18

19                    Reporter's Certification

20 I certify that the foregoing is a correct transcript from the

21 record of proceedings in the above-entitled matter.

22

                              /S/Geraldine S. Glover, RPR, CRR, RCR
23                            Official Court Reporter
                              United States District Court
24                            Northern District of Georgia

25 Date:   December 17, 2024

                    UNITED STATES DISTRICT COURT

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed by uploading it with the Eleventh Circuit's Electronic Filing System which will automatically serve opposing counsel with the pleading.

Dated:  This  4th  day of September, 2025.

*/s/ Leigh Ann Webster*
Leigh Ann Webster
Georgia Bar No. 968087
Attorney for Robert Purbeck

STRICKLAND WEBSTER, LLC
830 Glenwood Ave
Suite 510-203
Atlanta, GA 30316
Telephone: (404) 590-7967
Facsimile:  (404) 393-3617
law@stricklandwebster.com