No. 24-13841-AA

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT PURBECK,

*Defendant-Appellant.*

---

On appeal from the United States District Court
for the Northern District of Georgia
No. 3:21-CR-004-TCB-RGV-1

---

## BRIEF OF APPELLEE
## THE UNITED STATES OF AMERICA

---

THEODORE S. HERTZBERG
*United States Attorney*

DANIEL GRILL
*Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303
(404) 581-6000

No. 24-13841-AA

*United States of America v. Robert Purbeck*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In addition to those listed in Appellant's brief, the following people and entities have an interest in the outcome of this appeal:

Hertzberg, Theodore S., United States Attorney

Mendel, Gabriel A., Assistant United States Attorney

Grill, Daniel K., Assistant United States Attorney


No publicly traded company or corporation has an interest in the outcome of the case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case. The issues and positions of the parties, as presented in the record and briefs, are sufficient to enable the Court to reach a just determination.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure
Statement....................................................................................C-1

Statement Regarding Oral Argument ................................................. i

Table of Contents............................................................................ ii

Table of Citations...........................................................................iv

Statement of Jurisdiction...............................................................vii

Statement of the Issues ................................................................... 1

Statement of the Case..................................................................... 2

    A. Course of Proceedings and Disposition Below..................... 2

    B. Statement of the Facts ...................................................... 2

        1. Offense Conduct ............................................................ 2

        2. Plea Agreement............................................................. 4

        3. Purbeck's Post-Plea Conduct.......................................... 6

        4. Sentencing.................................................................... 6

    C. Standard of Review ........................................................ 11

Summary of the Argument.............................................................. 13

Argument and Citations of Authority ............................................. 15

1. Purbeck cannot demonstrate any error—plain or otherwise—
because the government did not breach the plea agreement by
recommending a 70-month sentence as it agreed to and any
error did not affect his substantial rights. ................................ 15

    A. Purbeck cannot show any error because the government did
not breach the plea agreement when it recommended—as it
expressly agreed it would—that he receive a 70-month
sentence. ............................................................................... 16

B.  Purbeck cannot show plain error because no binding precedent holds the that the government's conduct breached the plea agreement. ............................................... 25

C.  Purbeck cannot show that any purported breach affected his substantial rights. ................................................. 28

D.  The alleged breach did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. ...... 30

2.  The government does not oppose a limited remand for the narrow purpose of conforming the district court's written order to its oral pronouncement. ........................................ 31

Conclusion ..................................................................... 32

Certificate of Compliance and Service ......................................... 33

iii

# TABLE OF CITATIONS

**Federal Cases**

*Bonner v. City of Prichard,*
    661 F.2d 1206 (11th Cir. 1981) ..................................................... 20

*Puckett v. United States,*
    556 U.S. 129 (2009) ........................................................................ 28

*Stein v. Reynolds Sec., Inc.,*
    667 F.2d 33 (11th Cir. 1982) ......................................................... 17

*United States v. Al-Arian,*
    514 F.3d 1184 (11th Cir. 2008) ............................................... 15, 22

*United States v. Bates,*
    213 F.3d 1336 (11th Cir. 2000) ..................................................... 31

*\*United States v. Benchimol,*
    471 U.S. 453 (1985) .................................................................. 20, 23

*United States v. Block,*
    660 F.2d 1086 (5th Cir. Unit B. Nov. 1981) ................................. 17

*United States v. Boatner,*
    966 F.2d 1575 (11th Cir. 1992) ..................................................... 17

*United States v. Booker,*
    543 U.S. 220 (2005) ........................................................................ 23

*United States v. Brown,*
    503 F. App'x 895 (11th Cir. 2013) ................................................ 22

*United States v. Carrazana,*
    921 F.2d 1557 (11th Cir. 1991) ..................................................... 18

*United States v. Copeland,*
    381 F.3d 1101 (11th Cir. 2004) ..................................................... 15

*United States v. Davis,*
    105 F.4th 541 (3d Cir. 2024) ......................................................... 25

*United States v. De La Garza,*
    516 F.3d 1266 (11th Cir. 2008) ..................................................... 28

*United States v. Farias-Contreras,*
    104 F.4th 22 (9th Cir. 2024) .......................................................... 25

\*Citations primarily relied upon. 11th Cir. R. 28-1(e).

iv

*United States v. Grandinetti,*
  564 F.2d 723 (5th Cir. 1977) ............................................. 19, 20, 23
*United States v. Horsfall,*
  552 F.3d 1275 (11th Cir. 2008) ............................................... 26, 27
*United States v. Lawyer,*
  771 F. App'x 970 (11th Cir. 2019) ................................................ 24
*United States v. Lejarde-Rada,*
  319 F.3d 1288 (11th Cir. 2003) ............................................... 25, 26
*United States v. Lovett,*
  601 F. App'x 787 (11th Cir. 2015) ................................................ 28
*United States v. Maldonado-Maldonado,*
  134 F.4th 32 (1st Cir. 2025) ....................................................... 25
*United States v. Miller,*
  432 F. App'x 955 (11th Cir. 2011) ................................................ 24
*United States v. Olano,*
  507 U.S. 725 (1993) ................................................................. 30
*United States v. Rodriguez,*
  75 F.4th 1231 (11th Cir. 2023) .................................................... 12
*United States v. Rodriguez,*
  398 F.3d 1291 (11th Cir. 2005) ............................................... 28, 30
*United States v. Romano,*
  314 F.3d 1279 (11th Cir. 2002) ............................................... 12, 15
*United States v. Sharpe,*
  2022 WL 16835532 (11th Cir. Sept. 11, 2022) ...................... 22, 26
*United States v. Sosa,*
  782 F.3d 630, 638 (11th Cir. 2015) ......................................... 27, 30
*United States v. Taylor,*
  77 F.3d 368, 370-71 (11th Cir. 1996) ......................................... 23
*United States v. Villegas,*
  2024 WL 1406146 (11th Cir. Apr. 2, 2024) .................................. 29
*United States v. Wukoson,*
  798 F. App'x 551 (11th Cir. 2020) .................................... 21, 22, 27
*United States v. Young,*
  851 F. App'x 938 (11th Cir. 2021) ................................................ 15

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

**Federal Statutes**

18 U.S.C. § 3231 .................................................................. vii
18 U.S.C. § 3553 ................................................................... 27
18 U.S.C. § 3553(a) ................................................................ 6
18 U.S.C. § 3742 .................................................................. vii
28 U.S.C. § 1291 .................................................................. vii

**Federal Rules**

11th Cir. R. 28-5 ................................................................... 2
Fed. R. App. P. 4(b)(1)(A) ..................................................... vii
Fed. R. App. P. 32(a)(5) .......................................................... 33
Fed. R. App. P. 32(a)(6) .......................................................... 33
Fed. R. App. P. 32(a)(7)(B) ....................................................... 33
Fed. R. App. P. 32(f) ............................................................... 33

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

No. 24-13841-AA

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

————————————

## UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

## ROBERT PURBECK,

*Defendant-Appellant.*

————————————

## STATEMENT OF JURISDICTION

(A)  The district court had subject matter jurisdiction over the underlying criminal case based on 18 U.S.C. § 3231.

(B)  The court of appeals has jurisdiction over this direct appeal from the judgment and sentence of the district court, under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

(C)  While not jurisdictional, the notice of appeal was timely filed on November 20, 2024, within 14 days of the entry of the district court's amended judgment and commitment order, on November 15, 2024. Fed. R. App. P. 4(b)(1)(A).

(D)  This appeal is from a final judgment and commitment order that disposes of all the parties' claims in this criminal case.

## STATEMENT OF THE ISSUES

1. Despite the government advocating both in writing and at the sentencing hearing that Purbeck receive a 70-month sentence—as it agreed to in the plea agreement—the district court sentenced Purbeck to 120 months' imprisonment. Has Purbeck met his burden under plain-error review to show that the government breached the plea agreement by failing to make a sufficiently "forceful and intelligent" sentencing recommendation where the plea agreement did not require the government to do so?

2. At sentencing, the district court orally pronounced that one of Purbeck's supervised release conditions permitted him to access the internet with advance approval from a probation officer, but the written judgment and commitment order stated that Purbeck "must not access the internet" while on release. Should the Court issue a limited remand so that the district court may conform the written judgment with its oral pronouncement?

1

# STATEMENT OF THE CASE

## A. Course of Proceedings and Disposition Below

In March 2021, Purbeck was indicted on four counts of computer fraud and abuse, four counts of wire fraud, and three counts of access device fraud arising from a scheme of using stolen login credentials to hack computer servers, steal personal identifying information (PII), and extort individuals and companies. (Doc. 1)[1]. Purbeck eventually pleaded guilty to two counts of computer fraud and abuse pursuant to a written plea agreement under which the government agreed to recommend a 70-month sentence. (Doc. 116-1).

In March 2024, Purbeck was sentenced to 120 months' imprisonment—60 months on each count to run consecutively. (Doc. 147 at 57; Doc. 134 at 2). He timely filed a notice of appeal. (Doc. 137). Purbeck is currently incarcerated.

## B. Statement of the Facts

### 1. Offense Conduct

From June 2017 to July 2018, Purbeck engaged in an elaborate plot to hack computer systems, steal PII, and extort victims in Georgia and elsewhere. (PSR ¶¶ 12-33). Using three different aliases, Purbeck purchased login credentials for computer servers on the dark web and

---

[1] Page numbers to any transcripts cited are the page numbers designated by the court reporter. *See* 11th Cir. R. 28-5.

2

used them to hack computer servers and steal PII and other sensitive information. (*Id.*). Purbeck hacked computer servers of nineteen victims, including medical clinics, a police department, and church in Georgia, a Florida orthodontist, a California dentist, a former mayor in Michigan, a medical billing service in Alaska, an Idaho health department, and a safehouse for victims of domestic violence. (*Id.* ¶ 66). From these victims, Purbeck stole PII belonging to more than 132,000 individuals. (*Id.*). As a result of Purbeck's conduct, many victims incurred substantial expenses, including remediation costs and disruption to business operations totaling more than $1 million. (*Id.* ¶¶ 7, 12-33).

Purbeck used the stolen PII to extort many of his victims, including a farmers' co-op that paid a $12,500 ransom to Purbeck. (*Id.* ¶ 66). In another notable instance, in July 2018, Purbeck threatened to sell patient and personal information of a Florida orthodontics practice unless its owner paid him a $15,000 ransom in bitcoin. (*Id.* ¶¶ 26-32). Purbeck emailed the owner that he knew about his daughter, her age and where she attended school, and while claiming he did "not mean threat or harm to [the] sweet child," Purbeck wanted him to be aware of what he knew and controlled. (*Id.* ¶ 26).

Purbeck also texted the owner's wife cautioning "[d]o not allow your husband to be a cheap jew" and threatening to contact patients if

he was not paid. (*Id.* ¶ 28). When the owner elected not to pay the ransom, Purbeck texted his patients, sending one an x-ray of their teeth and demanding that another "make [the owner] aware that there are consequences to not securing his network." (*Id.* ¶ 30). Purbeck texted another patient her PII and threatened that he "can do a number of things, from staring [sic] new lives for dangerous individuals that are looking for a fresh start, to buying homes, opening credit, staring [sic] bank accounts, staring [sic] businesses." (Doc. 127 at 6).

As a result of Purbeck's extortion campaign, the orthodontist incurred nearly $300,000 in expenses, which ultimately forced him to sell his practice at a loss. (PSR ¶ 32).

In August 2019, the FBI executed a search warrant at Purbeck's home and seized several computers and electronic devices that contained PII for at least 132,725 individuals. (*Id.* ¶ 7). The FBI also interviewed Purbeck, and he admitted to using aliases to purchase credentials for computer servers on the dark web, hacking those computer servers, stealing PII and other sensitive information, and using the stolen information to extort victims. (*Id.* ¶¶ 34-63).

### 2. Plea Agreement

In March 2024, Purbeck pleaded guilty to two counts of computer fraud and abuse pursuant to a written plea agreement, in which the

government agreed to "recommend that the Defendant be sentenced
to no more than 70 months." (Doc. 116-1 ¶ 20). The agreement also
provided that the district court was not bound by the government's
recommendation and may "impose a sentence up to and including the
statutory maximum" on each count and that "no one can predict his
exact sentence at this time." (*Id.* ¶¶ 8, 38 ("The Defendant
understands and agrees that the recommendations of the Government
incorporated within this Plea Agreement . . . are not binding on the
Court and the Court's failure to accept one or more of the
recommendations, stipulations, and/or guideline computations will
not constitute grounds to withdraw his guilty plea or to claim a breach
of this Plea Agreement.")). At Purbeck's change of plea hearing, the
court explained that if the plea agreement contains a promise to make
a particular sentencing recommendation, "I don't have to accept that
recommendation or request . . . [a]nd if I were to not accept any such
recommendation or request, that would not give you a ground for
withdrawing your guilty plea because, again, you'd be stuck with
whatever term of imprisonment I give you." (Doc. 118 at 12). Purbeck
confirmed he understood. (*Id.*).

In the plea agreement, the parties further "reserve[d] the right to
inform the Court and the Probation Office of all facts and
circumstances regarding the Defendant and this case, and to respond

to any questions from the Court and the Probation Office and to any misstatements of fact or law." (Doc. 116-1 ¶ 18). Apart from the written plea agreement, the parties agreed "[t]here [were] no other agreements, promises, representations, or understanding between the Defendant and the Government." (*Id.* ¶ 41).

### 3. Purbeck's Post-Plea Conduct

In August 2024, Purbeck made a *pro se* filing in the District of Idaho targeting and harassing one of the prosecutors involved in this case. (Doc. 127 at 22). In the filing, Purbeck discussed the prosecutor's family members, identified his place of worship, and engaged in extensive antisemitic harassment, including calling the prosecutor an "apostate Jew" who attends a "wicked church" and "is no different than a Jihadist." (*Id.* at 23).

### 4. Sentencing

The government filed a sentencing memorandum recommending that the district court sentence Purbeck to 70 months' imprisonment.[2]

_____

[2] In its sentencing memorandum, the government repeatedly recommended a custodial sentence of 70 months. (*See* Doc. 127 at 19 ("A thorough consideration of all the sentencing factors set forth in 18 U.S.C. 3553(a) suggests that the most appropriate sentence for Purbeck is the Government's recommended sentence of 70 months in custody . . . ."); *id.* at 21 ("The Government submits that 70 months in prison, together with a judgment of over a million dollars in restitution, should hopefully deter Purbeck (who will be in his early

(*Id.* at 1). The government explained that its recommendation reflected "consider[ation] of both aggravating and mitigating factors and ask[ed] the Court to take account of both factors as well." (Doc. 127 at 20).

With respect to aggravating factors supporting its recommendation, the government explained Purbeck's "sinister cyber extortion attacks . . . required careful calculation and deliberation." (*Id.* at 22). The government characterized the offense as "simply egregious" in light of Purbeck's use of stolen data and information as a "weapon" to threaten and extort victims. (*Id.* at 20). The government also discussed Purbeck's "despicable antisemitic" civil filing, in which he made public personal information regarding the prosecutor in this case. (*Id.*).

But the government also observed that the "serious nature and circumstance of the offense need to be balanced by mitigating factors," including that Purbeck (i) was 45 years old with no prior criminal history, (ii) did well on pretrial release for four years (aside from his civil filing in Idaho), (iii) agreed to resolve the case without a multi-week trial, and (iv) agreed to pay full restitution to his victims. (*Id.*).

_____

50s upon release) from future crimes, as well as send an appropriate message to other cybercriminals.").

7

At the sentencing hearing, the district court adopted without objection the findings of fact in the PSR. (Doc. 147 at 3). After hearing arguments from the parties, the court calculated Purbeck's guidelines as 70 to 87 months based on an offense level of 27 and Criminal History Category I. (*Id.* at 22).

The government—consistent with its obligations under the plea agreement—urged the district court to impose a 70-month sentence. (*Id.* at 35 ("So we believe these facts, Your Honor, both aggravating and mitigating, that I've discussed justify and warrant a 70-month prison sentence . . . .")). Echoing its sentencing memorandum, the government noted the "unbelievably cruel" nature of Purbeck's conduct and the importance of specific deterrence in light of his civil filing in Idaho. (*Id.* at 34). The government also stated that sentencing Purbeck to 70 months would protect the public against future crimes and "send a strong message to other cybercriminals." (*Id.* at 33-34). The government then highlighted several mitigating factors, including his age and lack of criminal history, willingness to resolve the case without a multi-week trial, and agreement to make full restitution without a hearing. (*Id.* at 34-35). The government explained that "[i]n fairness . . . and despite all that's happened . . . [w]e still need to look at his history and characteristics, which we believe justify the 70-month low-end guideline sentence." (*Id.* at 34).

8

One victim, the orthodontist, spoke at the sentencing hearing regarding the impact of Purbeck's hacking and extortion campaign on him, his family, patients, and business. He described the "psychological torture" that he experienced from Purbeck's threats targeting his minor daughter and clients. (*Id.* at 28). Believing his daughter was in imminent danger, the orthodontist contacted her camp (where she was at the time) and school to alert them of the possible threat. (*Id.* at 26). He also alerted his patients and employees that their information was compromised. (*Id.* at 24).

The orthodontist further detailed the costly process of remediation and finding out who had extorted him. (*Id.* at 29). Meanwhile, his family continued to suffer from anxiety and stress-related illnesses leading both him and his wife to be rushed to the emergency room on separate occasions for fear of a heart attack. (*Id.* at 29). In all, Purbeck's extortion scheme required the orthodontist to sell his practice at a loss, while teetering on the edge of bankruptcy. (*Id.* at 30). He requested the district court impose the maximum possible penalty. (*Id.* at 32).

Purbeck's counsel asked for a sentence of 36 months. (*Id.* at 41). The counsel acknowledged that Purbeck "has done a lot of wrong" and engaged in "egregious conduct" in which he made "terrible" threats using "despicable language." (*Id.* at 35-36, 46). And he

9

conceded that Purbeck's civil filing was "indefensible." (*Id.* at 36).
Purbeck's counsel nonetheless argued that a sentence of 36 months is
"much more appropriate" than a sentence of 70 months because
"[y]ou're going to get all the same specific deterrent value [and] general
deterrent value." (*Id.* at 41).

Purbeck also addressed the court at sentencing. Purbeck shared
that he was "profoundly sorry" to his victims. (*Id.* at 52). He also
apologized to the prosecutor in this case for disclosing information
regarding the prosecutor's family and religion in his civil filing in
Idaho. (*Id.* at 53). Purbeck stated that he should have excluded those
sections from his court filings, which he wrote in the "heat of the
moment." (*Id.*)

The district court sentenced Purbeck to 120 months'
imprisonment—the statutory maximum of 60 months on each count,
to be served consecutively, followed by three years supervised release.
(*Id.* at 57). The court explained that in more than forty years of
experience, "I have scarcely seen conduct that was as egregious as this"
and that the "level of cruelty and terror is so distinguishable from all
of the financial crimes that I've seen." (*Id.* at 56). The court further
described Purbeck's conduct as "psychological torture." (*Id.*). The
court also found Purbeck's statement that he wrote his civil filing in
the "heat of the moment" to be incredible. (*See id.* at 57 ("A few

minutes ago Mr. Purbeck stated that he wrote that in the heat of the moment. Well, I don't believe that. It's been so many years, I don't see how that can constitute the heat of the moment.")). The court continued to note that Purbeck's civil filing was "cruel," "vicious," and "shocked the conscience." (*Id.*). Thus, the "the only sentence that's an adequate sentence in this Court's mind is the maximum sentence authorized by law, which is 60 months on Count 1 followed by 60 months consecutive on Count 2." (*Id.*). After reviewing the terms of supervised release, the court observed that it had taken the "opportunity for sedate [reflection]" and reiterated that "there is a reason that these crimes have a maximum term of imprisonment, and this is precisely the type of case. The terror that he inflicted upon people and destroyed their lives, at least for many, many years, and left them with scars that will never leave them on this earth." (*Id.* at 60-61). A top-of-the-guidelines sentence of 87 months "would be woefully inadequate to accomplish the objectives of [] sentencing." (*Id.* at 61). The court clarified that "[t]he record should reflect that my ruling today would have been the same regardless of my disposition of the objections to the [custody guideline range]. (*Id.*)

### C. Standard of Review

1.  This Court generally reviews de novo whether the government has breached a plea agreement, but when a defendant fails to raise this

11

issue before the district court, this Court reviews for plain error. *United States v. Romano*, 314 F.3d 1279, 1281 (11th Cir. 2002).

2.  This Court reviews de novo whether the district court erred by including a condition of supervised release for the first time in its written judgement. *United States v. Rodriguez*, 75 F.4th 1231, 1246 n.5 (11th Cir. 2023).

## SUMMARY OF THE ARGUMENT

Purbeck cannot demonstrate any error, let alone plain error, because the government did not breach the plea agreement by recommending—as it agreed it would—that the district court sentence Purbeck to 70 months' imprisonment. In its sentencing memorandum and at the sentencing hearing, the government repeatedly urged the court to impose a 70-month sentence. Contrary to Purbeck's argument, the government did not pay "mere lip service" in making its recommendation but rather discussed both the aggravating and mitigating factors that justified such a sentence as opposed to a lesser one. Nor is Purbeck correct that the government was required to "forcefully and intelligently" advocate for the 70-month sentence. Both the Supreme Court and this Court have explained that the government does not breach a plea agreement where it makes a recommendation consistent with the agreement but in a manner less enthusiastic than the defendant might like.

In any event, Purbeck cannot show that any error affected his substantial rights or seriously affected the fairness, integrity, or reputation of the proceedings. There is nothing in the record to suggest that Purbeck would have received a lesser sentence but for the government's alleged breach. To the contrary, the district court

described in detail the offensive nature of Purbeck's conduct and exactly why he deserved the maximum sentence.

The government agrees with Purbeck, however, that a limited remand is appropriate to afford the district court an opportunity to amend the written judgment and conviction to conform with its oral pronouncement regarding the internet access condition of Purbeck's supervised release.

## ARGUMENT AND CITATIONS OF AUTHORITY

**1. Purbeck cannot demonstrate any error—plain or otherwise—because the government did not breach the plea agreement by recommending a 70-month sentence as it agreed to and any error did not affect his substantial rights.**

Because Purbeck failed—as he concedes—to raise a claim of breach of the plea agreement before the district court, this Court reviews only for plain error. *Romano*, 314 F.3d at 1281. Under plain error review, Purbeck must show (1) an error, (2) that is plain, (3) that affects the defendant's substantial rights. *Id.* If Purbeck carries his burden as to all three prongs of plain error review, this Court may notice the error if it (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

The first step in construing a plea agreement is to determine the scope of the agreement. *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004). In so doing, this Court applies an objective standard to determine "whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea." *United States v. Al-Arian*, 514 F.3d 1184, 1191 (11th Cir. 2008). This "inquiry is based on the written terms of the plea agreement" as the "final memorialization of the plea negotiations best informs the court of the agreements the parties have reached." *United States v. Young*, 851 F. App'x 938, 942-43 (11th Cir. 2021).

15

**A. Purbeck cannot show any error because the government did not breach the plea agreement when it recommended—as it expressly agreed it would—that he receive a 70-month sentence.**

Under the plea agreement, the government agreed to recommend that Purbeck receive a 70-month sentence. (Doc. 116-1 ¶ 20). The government complied with its obligations to do so. In its sentencing memorandum and at the sentencing hearing, the government repeatedly "recommend[ed] that the Court sentence Purbeck to 70 months in the custody of the Bureau of Prisons, to be followed by three years of supervised release, and full restitution to the victims." (Doc. 127 at 1; *see also* Doc. 147 at 35 ("So we believe these facts, Your Honor, both aggravating and mitigating, that I've discussed justify and warrant a 70-month prison sentence . . . ."); *see also, supra* 6, fn. 1). In its sentencing memorandum and at the sentencing hearing, the government recommended the defendant receive a 70-month sentence no fewer than 14 times. (Doc. 127 at 1, 19, 21-23, 25-26; Doc. 147 at 33-35).

Purbeck does not dispute that the government recommended a 70-month sentence. Nor does Purbeck suggest that the government expressly advocated for a higher sentence. Rather, Purbeck argues that the government breached the plea agreement "by paying mere lip service to its obligation to recommend that he be sentenced to 70

16

months in prison" and using "extreme language" to describe Purbeck's conduct. (Def. Br. 17). And in doing so, he claims the government breached a supposed implied requirement that the government make a "forceful and intelligent" recommendation. (Def. Br. at 15, 17). Purbeck is wrong both in his characterization of the government's sentencing advocacy and, more fundamentally, that the plea agreement imposed any such obligation on the government.

First, Purbeck's claim that the government supposedly used "extreme language" at sentencing to describe his conduct is belied by the record below. (Def. Br. 15-17). It is the government's duty to ensure "that the court has complete and accurate information concerning the defendant, thereby enabling the court to impose an appropriate sentence." *United States v. Block*, 660 F.2d 1086, 1091 (5th Cir. Unit B. Nov. 1981).[3] Thus, the "solemnization of a plea agreement does not preclude the government from disclosing pertinent information to the sentencing court." *United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992). And so long as the government does not explicitly agree not to provide certain information to the court, it is entitled to elicit all relevant information

---

[3] Decisions of the Unit B panel of the former Fifth Circuit are binding upon this Court. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

at sentencing—even if the information paints the defendant in a negative light. *See United States v. Carrazana*, 921 F.2d 1557, 1569 (11th Cir. 1991) (finding no breach where "prosecutor's statement concerning [defendant's] leading role in the offense was relevant to the sentencing process" and the "government never agreed that [defendant] was not the "kingpin" or that it would refrain from characterizing him as such"); *see also* Doc. 116-1 ¶ 18 ("The parties reserve the right to inform the Court and the Probation Office of all facts and circumstances regarding the Defendant and this case . . . .").

Not only were the government's descriptions of Purbeck's conduct entirely consistent with the facts underlying his guilty plea and information set forth in the PSR, but Purbeck's own counsel described his conduct in similar terms. At sentencing, Purbeck's counsel conceded that Purbeck "has done a lot of wrong" and engaged in "egregious conduct" during which he made "terrible" threats using "despicable language." (Doc. 147 at 35-36, 46). Purbeck's counsel also stated that Purbeck's civil filing was "indefensible." (*Id.* at 36).

Purbeck also takes issue with part of one sentence in the government's sentencing memorandum, suggesting that it should be understood that the government sought a sentence greater than 70 months. Purbeck asserts that "[t]he government concluded its memorandum not by arguing in favor of a bottom-of-the-guidelines

18

70-month sentence but by arguing that 'any sentence below 70 months would be inadequate'" and that this framing constitutes argument in favor of a sentence greater than 70 months. (Def. Br. at 17-18). Purbeck misconstrues the government's position. The full sentence that Purbeck only partially quotes stated that "[a]lthough Purbeck is free to argue for a lower sentence, the Government respectfully submits that any sentence below 70 months in custody will not offer adequate deterrence, address the seriousness of the offenses, or promote just respect for the law given the breadth and impact of Purbeck's conduct." The government did not advocate for a sentence greater than 70 months (or even hint such a sentence might be appropriate)—but merely acknowledged that Purbeck might argue for a lesser sentence (the exact length of which the government did not yet know) and that such a sentence would be inadequate. This was consistent with the government's obligation to recommend a 70-month sentence. In short, the government did not pay "mere lip service" to its recommendation but properly advocated for such a 70-month sentence while also urging the court not to impose a *lesser* one.

Second, Purbeck is incorrect that the government had an obligation to make a "forceful and intelligent recommendation" in favor of a 70-month sentence. (Def. Br. at 17 (citing *United States v.*

19

*Grandinetti*, 564 F.2d 723, 727 (5th Cir. 1977)[4])). In *United States v. Benchimol*, the Supreme Court held that the government must "carry out its part of the bargain by making the promised recommendation" but need not do so enthusiastically, unless explicitly provided for in the plea agreement. 471 U.S. 453, 456 (1985). The Court explained "[i]t may well be that the Government in a particular case might commit itself to 'enthusiastically' make a particular recommendation to the court, and it may be that the Government in a particular case might agree to explain to the court the reasons for the Government's making a particular recommendation," but no such "implied-in-law terms" are to be read into a plea agreement. *Id.* at 455.

In *Benchimol*, the defendant pleaded guilty to mail fraud pursuant to a plea bargain in which the government agreed to recommend probation. *Id.* at 454. At sentencing, the government recommended probation but "made no effort to explain its reasons for agreeing to recommend a lenient sentence" and instead "left an impression with the court of less-than-enthusiastic support for leniency." *Id.* at 455. The court sentenced the defendant to six years of treatment under the Federal Youth Corrections Act, and the defendant, in a later

---

[4] Fifth Circuit decisions predating October 1, 1981, are binding upon this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)

proceeding, moved to withdraw his plea arguing that the government breached the plea agreement. The Supreme Court found no breach because nowhere did the defendant's plea agreement expressly require the government to make its recommendation enthusiastically.

Following *Benchimol*, the Eleventh Circuit has consistently held that there is no implied obligation to make an "enthusiastic" sentencing recommendation in plea agreements. In *United States v. Wukoson*, for example, the defendant agreed to plead guilty to possession of child pornography and witness tampering and the government agreed to recommend a sentence of no more than four years imprisonment under a plea agreement. 798 F. App'x 551, 554 (11th Cir. 2020). At sentencing, the government recommended four years and explained that it agreed to the below-guidelines recommendation to ensure that the defendant's child would not have to testify at trial. *Id.* at 554-55. The government also detailed the number of times the defendant downloaded child pornography and highlighted the serious nature of the defendant's conduct. *Id.* at 555. The court ultimately sentenced defendant to eight years' imprisonment and the defendant appealed, asserting a breach of the plea agreement. *Id.* at 557. The Eleventh Circuit held that the "government was not required to enthusiastically recommend a 4-year sentence" because the plea agreement "did not expressly require the

21

government to 'advocate' for a 4-year sentence on [defendant's] behalf." *Id.* at 558. The government "met [its] promise by stating its recommendation for a 4-year sentence at sentencing." *Id.*; *see also United States v. Sharpe*, 2022 WL 16835532, at *5 (11th Cir. Sept. 11, 2022) (finding that "[a]lthough [the Government] did not provide enthusiastic advocacy, it was not required to do so under the scope of the agreement"); *United States v. Brown*, 503 F. App'x 895, 896 (11th Cir. 2013) (finding "implied obligations not agreed to by the parties will not be inferred" in plea agreements).

The same is true here; the parties' plea agreement did not require the government to make a forceful or enthusiastic recommendation—only that it recommend the district court sentence Purbeck to 70 months' imprisonment.[5] Purbeck's reliance on *Grandinetti* and *United States v. Taylor* to suggest that the government had an implied obligation to make a "forceful and intelligent" recommendation for a particular sentence is therefore misplaced for several reasons. (Def. Br. at 15-17). In each case, the government took positions inconsistent

---

[5] The parties included an integration clause in the plea agreement foreclosing any implied obligations not expressed in the agreement. (*See* Doc. 116-1 ¶ 41) (stating that "[t]here are no other agreements, promises, representations, or understandings between the Defendant and the Government"); *see also United States v. Al-Arian*, 514 F.3d 1184, 1192 (11th Cir. 2008) (finding no "implicit promise" in a plea agreement that included an integration clause).

22

with the plea agreements. In *Grandinetti*, which predates *Benchimol*, the government expressed doubt as to the legality and propriety of the sentence referenced in the plea agreement and "was not only an unpersuasive advocate for the plea agreement, but, in effect, argued against it." 564 F.2d at 727. Similarly, in *United States v. Taylor*, the government agreed to recommend a ten-year sentence in exchange for a plea but then "affirmatively supported a position inconsistent with the plea agreement" by taking a position on the defendant's relevant conduct that resulted in a guideline range exceeding ten years. 77 F.3d 368, 370-71 (11th Cir. 1996).

 *Grandinetti* and *Taylor* are thus distinguishable because it is "quite different" to affirmatively "express[] personal reservations about the agreement to which the Government had committed itself" and to "le[ave] an impression with the court of less-than-enthusiastic support for leniency."[6] *Benchimol*, 471 U.S. at 456. *Taylor* is further distinguishable because it was decided before *United States v. Booker*, at which time the sentencing guidelines were binding on the district court. 543 U.S. 220 (2005). Therefore, any argument by the government that would increase the guideline range beyond the government's recommendation as agreed in a plea agreement—like in

---

 [6] *Taylor* is also distinguishable because this Court reviewed the defendant's breach of plea argument de novo. 77 F.3d at 370-72.

23

*Taylor*—would by its nature conflict with the government's recommendation and *prevent* the court from issuing a sentence consistent with the government's recommendation. Now, post-*Booker*, district courts have discretion to vary from the guidelines so they would not be so bound. *Id.*; *see also United States v. Lawyer*, 771 F. App'x 970, 974 (11th Cir. 2019) (noting that "*Taylor* was decided before the Supreme Court's decision in [*Booker*] rendered the Sentencing Guidelines advisory").

But more generally, Purbeck's interpretation of *Grandinetti* and *Taylor* is inconsistent with this Court's recognition that *Benchimol* "rejected an interpretation of *Grandinetti* that would require 'enthusiastic' advocacy for recommendations that the government agrees to make." *United States v. Lawyer*, 771 F. App'x 970, 974 (11th Cir. 2019); *see also United States v. Miller*, 432 F. App'x 955, 959 (11th Cir. 2011) ("Since *Grandinetti*, the Supreme Court has clarified, however, that unless specified within the agreement, 'enthusiasm' for the terms of the agreement is not required."). Purbeck cannot point to any positions the government took at sentencing that were inconsistent with the terms of his plea agreement. To the contrary, the

government repeatedly recommended a sentence of 70 months. *See supra* 6-8.[7]

### B. Purbeck cannot show plain error because no binding precedent holds the that the government's conduct breached the plea agreement.

Even if Purbeck could show error, it was not plain. For an error to be plain, the defendant must show binding precedent from the "Supreme Court or this Court directly resolving" the issue. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

As discussed, decisions from the Supreme Court and this Court squarely hold that there is no implied obligation to make an "enthusiastic" sentencing recommendation and limit *Grandinetti* and *Taylor* to instances where the government affirmatively argues against

---

[7] Purbeck also cites three out-of-circuit cases in support of his breach argument. Not only are these cases non-binding but they are factually and procedurally distinguishable. In *United States v. Maldonado-Maldonado*, the government conceded that it "undermined the benefit of the plea agreement" by advocating for a four-point enhancement when the plea agreement provided for only a two-point enhancement. 134 F.4th 32, 37-38 (1st Cir. 2025). In *United States v. Davis*, the Third Circuit reviewed defendant's breach argument de novo—rather than for plain error—because he preserved his objection at sentencing. 105 F.4th 541, 548-49 (3d Cir. 2024). In *United States v. Farias-Contreras*, the Ninth Circuit found no plain error because no circuit precedent was sufficiently instructive to signal a "clear or obvious" error. 104 F.4th 22, 31 (9th Cir. 2024).

its recommendation. That is not what happened here. For example, in *Sharpe*, the defendant argued that the government's failure to provide "enthusiastic advocacy" in support of its sentencing recommendation constituted a breach of the agreement. Citing *Benchimol*, this Court found no obligation for enthusiastic advocacy and was "unconvinced that these actions—even if they were mistakes—were so 'clear' and 'obvious' that they amounted to plain error." 2022 WL 16835532, at *4. Here, Purbeck makes the same argument as the defendant in *Sharpe* but offers no binding caselaw that overrules *Benchimol* or otherwise points to a different outcome than *Sharpe*—because there is no such caselaw, and, thus, no plain error. *See United States v. Horsfall*, 552 F.3d 1275, 1284 (11th Cir. 2008) ("It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.") (citing *United States v. Lejarde–Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003)).

It was similarly not plain error to present a victim impact statement at sentencing. While the orthodontist who presented a victim impact statement described the "psychological torture" that he experienced from Purbeck's threats and requested a maximum sentence, (Doc 147 at 28), the government "expressly recommended

the agreed-upon sentence" and "did not elicit or endorse [the victim's] statements or their recommendations for a higher sentence." *Wukoson*, 798 F. App'x at 559.

And in any event, the plea agreement authorized the government to present victim impact statements. Under the plea agreement, the parties "reserve[d] the right to inform the Court and the Probation Office of all facts and circumstances regarding the Defendant and this case." (Doc. 116-1 ¶ 18). This applies to the presentation of facts through victim witness statements. *See United States v. Horsfall*, 552 F.3d 1275, 1282 (11th Cir. 2008) ("[T]he presentation of the victim impact evidence fell within the terms of the plea agreement, which authorized the government to 'inform the Court ... of all facts pertinent to the sentencing process, including all relevant information concerning the defendant and his background.'"); *see also Wukoson*, 798 F. App'x at 559 ("Nothing in the plea agreement prohibited the government from presenting information that was relevant to the § 3553 factors, including the history and characteristics of the defendant as described by others.").

Without any binding precedent directly supporting Purbeck's breach argument, he fails to meet his burden under the second prong of plain-error review. *See United States v. Sosa*, 782 F.3d 630, 638 (11th Cir. 2015) ("Given all of the factual circumstances of this case, it was

27

not 'clear under current law' that the government patently breached the plea agreements ... or that any such breach should have been 'obvious' to the district court.").

### C. Purbeck cannot show that any purported breach affected his substantial rights.

Even assuming there was plain error, Purbeck must demonstrate that he suffered prejudice; that is, Purbeck must show a reasonable probability that the breach "affected the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009). "In the context of the government's alleged breach of a plea agreement, the question of prejudice does not depend on whether or not the defendant would have entered into the agreement and pleaded guilty, but instead on whether the defendant's ultimate sentence was influenced by the government's breach." *United States v. Lovett*, 601 F. App'x 787, 788 (11th Cir. 2015) (citing *Puckett*, 556 U.S. at 141-42 & n.4; *United States v. De La Garza*, 516 F.3d 1266, 1270-71 (11th Cir. 2008)). If the effect of an error is "uncertain or indeterminate," an appellant cannot meet "his burden of showing that his substantial rights have been affected." *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005).

The district court was clear that it viewed Purbeck's conduct as sufficiently egregious to warrant a maximum sentence—regardless of

28

the government's recommendation. Drawing on nearly 20 years as a federal judge, the court stated that "I have scarcely seen conduct that was as egregious as this" and that the "level of cruelty and terror is so distinguishable from all of the financial crimes that I've seen." (Doc. 147 at 56). And, after an "opportunity for sedate [reflection]," the court observed that "there is a reason that these crimes have a maximum term of imprisonment, and this is precisely the type of case. The terror that he inflicted upon people and destroyed their lives, at least for many, many years, and left them with scars that will never leave them on this earth." (*Id.* at 60-61). Where the district court's "clear statements on the record strongly indicate that it would have imposed a . . . sentence regardless of the government's opinion," the appellant has failed to meet its burden to show prejudice. *United States v. Villegas*, 2024 WL 1406146, at *1 (11th Cir. Apr. 2, 2024).

Despite bearing the burden to show an impact on his substantial rights, Purbeck merely suggests that the district court's references to "psychological torture" and Purbeck's civil filing in Idaho "echoed the government's characterizations of the offense conduct and the need for severe punishment." (Def. Br. at 20). Not only is this far short of a "specific showing of prejudice" but it is inaccurate. It was the victim—not the government—who referred to Purbeck's conduct as causing "psychological torture." (Doc. 147 at 28). Purbeck has made no

showing that absent the government's purported breach, the court would have imposed a lesser sentence. At best, it is mere speculation whether Purbeck would have received a 70-month sentence had the government argued more vociferously on his behalf. Therefore, Purbeck cannot demonstrate there is a reasonable probability that his substantial rights were prejudiced. *See Rodriguez*, 398 F.3d at 1301.

### D. The alleged breach did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

Under the fourth prong of the plain-error test, this Court has discretion to correct a plain error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993). And "[n]ot every breach of a plea agreement seriously affects the integrity of judicial proceedings—courts must consider countervailing factors on a case-by-case basis." *Sosa*, 782 F.3d at 638.

As detailed above, Purbeck engaged in an elaborate plot to hack computer servers belonging to businesses around the country, steal personal information contained on those servers, and use that information to extort victims. (PSR ¶¶ 12-33). After pleading guilty, Purbeck made a public filing specifically targeting and harassing one of the prosecutors in this case. *See supra* 6. As the district court observed, "there is a reason that these crimes have a maximum term

30

of imprisonment, and this is precisely the type of case." (Doc. 147 at 60-61). Upholding a maximum sentence in this case will not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

**2. The government does not oppose a limited remand for the narrow purpose of conforming the district court's written order to its oral pronouncement.**

When a sentence pronounced orally conflicts with a written order of judgment, the oral pronouncement governs. *See United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000). In such a case, this Court may remand the matter to the district court for the narrow purpose of conforming the written order to the oral pronouncement. *Id.*

Here, the district court imposed various conditions of supervision, including that Purbeck "must not access the internet, except for reasons approved in advance by the probation officer." (Doc. 147 at 59). The district court subsequently issued an amended judgment and commitment order, which included as a special condition of supervision that "[y]ou must not access the internet." (Doc. 134 at 5). The court's amended judgment and commitment order thus does not mirror its oral pronouncement. *See Bates*, 213 F.3d at 1340 (11th Cir. 2000).

31

The government does not oppose Purbeck's request that the Court remand the matter to the district court to conform its written order to its oral pronouncement; that is, permitting Purbeck to access the internet with advance approval by a probation officer.

## CONCLUSION

This Court should affirm Purbeck's sentence but issue a limited remand to permit the district to conform its written order to its oral pronouncement.

Respectfully submitted,

THEODORE S. HERTZBERG.
*United States Attorney*

/s/ Daniel Grill
DANIEL GRILL
*Assistant United States Attorney*

32

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style.

This brief complies with the 13,000 word type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, according to the word processing software, it contains 6,585 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Today, this brief was uploaded to the Court's website using the CM/ECF system, which automatically sends notification to the parties and counsel of record:

> LEIGH ANN WEBSTER, ESQ.
> 830 Glenwood Ave.
> Suite 510-203
> Atlanta, GA 30316

October 6, 2025

/s/ Daniel Grill
_____
DANIEL GRILL
*Assistant United States Attorney*

33