No. 24-13841-AA

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT PURBECK,

*Defendant-Appellant.*

On appeal from the United States District Court
for the Northern District of Georgia
No. 3:21-CR-00004-TCB-RGV-1

## SUPPLEMENTAL APPENDIX OF APPELLEE

THEODORE S. HERTZBERG

*United States Attorney*

DANIEL GRILL

*Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000

## INDEX OF SUPPLEMENTAL APPENDIX

**Docket/Tab No.**

| | |
|---|---|
| Transcript of Change of Plea Hearing – Dated March 19, 2024 | 118 |
| Government's Sentencing Memorandum | 127 |
| Defendant's Notice of Appeal | 137 |
| Certificate of Service | |

*Transcript of Change of Plea Hearing – Dated March 19, 2024*

*(Doc. 118)*

1  THE FOLLOWING IS THE P.D.F. OF AN OFFICIAL TRANSCRIPT.  OFFICIAL

2  TRANSCRIPTS MAY ONLY BE FILED IN CM/ECF BY THE OFFICIAL COURT

3  REPORTER AND WILL BE RESTRICTED IN CM/ECF FOR A PERIOD OF 90 DAYS.

4  YOU MAY CITE TO A PORTION OF THE ATTACHED TRANSCRIPT BY THE DOCKET

5  ENTRY NUMBER, REFERENCING PAGE AND LINE NUMBER, ONLY AFTER THE

6  COURT REPORTER HAS FILED THE OFFICIAL TRANSCRIPT.  HOWEVER, YOU

7  ARE PROHIBITED FROM ATTACHING A FULL OR PARTIAL TRANSCRIPT TO ANY

8  DOCUMENT FILED WITH THE COURT.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:21-cr-00004-LMM-RGV    Document 118    Filed 04/29/24    Page 2 of 16
USCA11 Case: 24-13841    Document: 32    Date Filed: 10/08/2025    Page: 5 of 83

1

```
1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF GEORGIA
2                             ATLANTA DIVISION

3
   UNITED STATES OF AMERICA,   )
4                              )
            PLAINTIFF,         )
5                              )           DOCKET NUMBER
        vs.                    )           3:21-cr-00004-TCB-RGV-1
6                              )
   ROBERT PURBECK,             )           ATLANTA, GEORGIA
7                              )           March 19, 2024
            DEFENDANT.         )
8   _____)

9                           CHANGE OF PLEA

10                     TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE TIMOTHY C. BATTEN, SR.,
11                  UNITED STATES DISTRICT JUDGE

12

13

14  APPEARANCES:

15  FOR THE PLAINTIFF:        Michael V. Herskowitz
                              Office of the United States Attorney-
16                            ATL 600
                              Northern District of Georgia
17                            600 United States Courthouse
                              75 Ted Turner Drive, S.W.
18                            Atlanta, GA 30303

19  FOR THE DEFENDANT:        Andrew C. Hall
                              Hall Hirsh Hughes, LLC
20                            Suite 450
                              150 East Ponce de Leon Avenue
21                            Decatur, GA 30030

22
                    COMPUTER-AIDED TRANSCRIPT PRODUCED BY
23
   OFFICIAL COURT REPORTER:   DENISE M. STEWART, RPR
24                            1949-B UNITED STATES COURTHOUSE
                              75 TED TURNER DRIVE, SOUTHWEST
25                            ATLANTA, GEORGIA 30303
                              (404)215-1516
```

Case 3:21-cr-00004-LMM-RGV   Document 118   Filed 04/29/24   Page 3 of 16
USCA11 Case: 24-13841   Document: 32   Date Filed: 10/08/2025   Page: 6 of 83

2

1              (IN ATLANTA, FULTON COUNTY, GEORGIA, MARCH 19, 2024.)

2              THE COURT:  All right.  We're ready?

3              MR. HERSKOWITZ:  Yes, Your Honor.

4              MR. HALL:  Yes, Judge.

5              THE COURT:  Okay.  Would you swear the defendant,

6    please.

7                          ROBERT PURBECK,

8    having been first duly sworn/affirmed, and testified as follows:

9              THE DEFENDANT:  I affirm.

10             THE COURTROOM DEPUTY:  Thank you.  You may have a seat.

11             THE COURT:  This is the United States of America v.

12   Robert Purbeck a/k/a Lifelock a/k/a Studmaster a/k/a Studmaster1.

13             And I presume, Mr. Herskowitz, you have a guilty plea

14   and plea agreement to authenticate.

15             MR. HERSKOWITZ:  I do, Judge.  They're going to need to

16   sign.

17             THE COURT:  Okay.

18             MR. HERSKOWITZ:  I have it on the table.

19             THE COURT:  Okay.

20                          EXAMINATION

21   BY MR. HERSKOWITZ:

22   Q.  Mr. Purbeck, I'm showing you, sir, a guilty plea and plea

23   agreement in this case, and directing your attention to page 20.

24       Is that your signature, sir, on the right side of the page

25   over your typed written name, "Robert Purbeck"?

Case 3:21-cr-00004-LMM-RGV    Document 118    Filed 04/29/24    Page 4 of 16
USCA11 Case: 24-13841    Document: 32    Date Filed: 10/08/2025    Page: 7 of 83

3

1  A.  That's correct.

2  Q.  Mr. Purbeck, did you sign on page 21 over your typed written

3  name as well?

4  A.  I did.

5          MR. HERSKOWITZ:  Mr. Hall, did you sign as his counsel?

6          MR. HALL:  Yes, sir.

7          MR. HERSKOWITZ:  May I approach, Your Honor?

8          THE COURT:  Yes, sir.

9          All right.  Good morning, Mr. Purbeck.

10         I understand you want to plead guilty to Counts 1 and 2

11  of the Grand Jury's indictment in this case.  And I am happy -- I

12  will be happy to accept your plea once I'm satisfied that you know

13  what you're doing here this morning and that you understand the

14  consequences of your plea.  So I'm going to ask you some

15  questions.  And if at anytime you don't understand my question, I

16  need you to let me know.  Otherwise, if you answer my question,

17  I'm going to assume that you understood the question and gave me a

18  truthful response.

19         Is that fair enough?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  I need to begin by advising you that the

22  Government has the right in a separate prosecution for perjury or

23  a false statement to use against you any statement that you make

24  in here today.  In other words, you have to tell the truth today.

25         Do you understand that?

Case 3:21-cr-00004-LMM-RGV   Document 118   Filed 04/29/24   Page 5 of 16
USCA11 Case: 24-13841   Document: 32   Date Filed: 10/08/2025   Page: 8 of 83

4

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  And you have the right to plead not guilty

3  and if you've already pled not guilty, you have the right to

4  persist in that plea.  You don't have to plead guilty today or at

5  any other time.

6           Do you understand that?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  As I'm -- well, you enjoy a number of rights

9  as a criminal defendant in federal court.  These include the right

10  to a jury trial; the right to be represented by counsel and, if

11  necessary, have the Court appoint counsel at trial and every other

12  stage of the proceeding; the right at trial to confront and

13  cross-examine adverse witnesses called by the Government; and the

14  right at trial to be protected from compelled self-incrimination,

15  which in plain English means the right to remain silent and not

16  testify.  You have that right.

17          Conversely, you enjoy the right to testify and present

18  evidence.  And you can use the subpoena power of our court to

19  compel the attendance of witnesses who you think might be able to

20  offer evidence or testimony that would benefit your defense.

21          Do you understand all of those rights that I've just

22  described to you?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  And do you understand that you will be

25  waiving all of these rights if I accept your guilty plea this

Case 3:21-cr-00004-LMM-RGV   Document 118   Filed 04/29/24   Page 6 of 16
USCA11 Case: 24-13841   Document: 32   Date Filed: 10/08/2025   Page: 9 of 83

5

1  morning?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Do you understand that the nature of the

4  charge against you is computer fraud and abuse?

5          Do you understand that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Okay.  Let's talk about the range of

8  punishment applicable to these two charges.

9          Count 1 -- and the two counts are identical.  They're

10 both the same charge.  So what I'm about to read to you actually

11 will apply to each of these two charges, Counts 1 and 2.

12          The maximum term of imprisonment on each count is five

13 years.  Following your release from incarceration you'll be placed

14 on supervised release for up to three years.  The maximum fine is

15 $250,000.  The Court will order restitution to all victims of the

16 offense and relevant conduct.  And there's a mandatory special

17 assessment in the amount of $100 for each count.

18          And, finally, there will be a forfeiture of any and all

19 personal property that was used or intended to be used to commit

20 or facilitate the commission of the offense and the forfeiture of

21 any property, real or personal, constituting or derived from any

22 proceeds obtained directly or indirectly as a result of the

23 offense.

24          Do you understand that range of punishment with respect

25 to each of these two charges, Counts 1 and 2?

Case 3:21-cr-00004-LMM-RGV    Document 118    Filed 04/29/24    Page 7 of 16
USCA11 Case: 24-13841    Document: 32    Date Filed: 10/08/2025    Page: 10 of 83

6

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  I presume that you know from

3   speaking to Mr. Hall we use sentencing guidelines in federal

4   court.

5          Am I right about that?

6          THE DEFENDANT:  That's correct.

7          THE COURT:  Okay.  And in determining a sentence, I am

8   obligated to calculate the applicable custody guideline range and

9   that range is in months.  And I have to carefully consider that

10  range.  I can't just ignore it.

11         But once I've calculated and considered it, I'm actually

12  free to sentence you to a term of imprisonment outside the range.

13  I could sentence you to a term of imprisonment shorter than the

14  low end or longer than the high end.  And that's because the

15  guideline range is only advisory.  It is not mandatory or binding

16  on the Court.  Moreover, the guidelines themselves contemplate

17  that often there will be a variance or a departure from the range

18  to the sentence actually imposed.

19         Now for all of those reasons if I were to sentence you

20  to a term of imprisonment longer than the high end of your custody

21  guideline range, that would not give you a basis for withdrawing

22  your guilty plea but, instead, you'd be stuck with whatever term

23  of imprisonment I give you.

24         Do you understand that?

25         THE DEFENDANT:  Yes, sir.

Case 3:21-cr-00004-LMM-RGV    Document 118    Filed 04/29/24    Page 8 of 16
USCA11 Case: 24-13841    Document: 32    Date Filed: 10/08/2025    Page: 11 of 83

7

1          THE COURT:  Okay.  You are waiving today almost all of

2   your appeal rights.  And that is a big deal because ordinarily if

3   the defendant loses in the district court, he can appeal to the

4   United States Court of Appeals.

5          You're promising today that you will not ever file an

6   appeal in this case unless it's based on at least one of the

7   following three grounds:  First, if I were to sentence you to a

8   term of imprisonment longer than the high end of your custody

9   guideline range, you may appeal.  Second, if the United States

10  appeals for any reason, you may appeal.  And, third, if you feel

11  you have not received effective assistance of counsel, you may

12  appeal.  But other than those three grounds, you're permanently

13  waiving today all appeal rights you have in this case.

14          Do you understand that?

15          THE DEFENDANT:  Does that include *Brady* obligations of

16  the Government?

17          THE COURT:  No.  The *Brady* obligations are separate.

18          But, Mr. Herskowitz, I'll let you answer that.  I mean,

19  if he's pleading guilty today, the Government's under a duty to

20  comply with *Brady* regardless of the status of the case.  I can say

21  that and I presume that the Government not only intends to do that

22  but has done that so far in the case.

23          MR. HERSKOWITZ:  Absolutely, Your Honor.  Yes.

24          THE COURT:  So those are the only three grounds, the

25  ones I mentioned.  If I sentence you to a longer than high end

Case 3:21-cr-00004-LMM-RGV    Document 118    Filed 04/29/24    Page 9 of 16
USCA11 Case: 24-13841    Document: 32    Date Filed: 10/08/2025    Page: 12 of 83

8

1  guideline range sentence, you could appeal that.  You could appeal
2  if you feel you have not received effective assistance of counsel
3  and you could appeal if --
4             MR. HERSKOWITZ:  If the Government appeals.
5             THE COURT:  -- the Government appeals.  That never
6  happens.  If the Government appeals, that's it.  Any other appeals
7  on any other bases are forever being waived.
8             Do you understand that?
9             THE DEFENDANT:  If, however, the Government didn't
10  comply with *Brady*, though, I would still have reason to?
11             THE COURT:  Mr. Herskowitz, what would you say?
12             MR. HERSKOWITZ:  Judge, we've complied with *Brady* and
13  the appeal waiver is clear and it's been provided to Mr. Purbeck.
14  And I'm sure his counsel has talked with him about that and the
15  Court has talked with him about that.
16             THE COURT:  I would say it would include any appeals and
17  based on a failure to comply with *Brady*.
18             But is there any *Brady* issue in the case, Mr. Hall?
19             MR. HALL:  I think we've litigated some issues I
20  referred to as *Brady* and those have been ruled against us.
21             THE COURT:  Right.
22             MR. HALL:  So I think to answer the Court's question --
23             THE COURT:  Then the answer to my question -- the answer
24  is, yes, definitely the waiver would encompass appeals based on
25  the Government's alleged failure to comply with *Brady*.

Case 3:21-cr-00004-LMM-RGV   Document 118   Filed 04/29/24   Page 10 of 16
USCA11 Case: 24-13841   Document: 32   Date Filed: 10/08/2025   Page: 13 of 83

9

1           So do you understand that?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Do you still want to plead guilty?

4           THE DEFENDANT:  Yes.  Although I do believe the

5    Government hasn't complied with *Brady*.

6           THE COURT:  Okay.  You are waiving also your right to

7    file what's called a "collateral attack" against the judgment in

8    this case.  A collateral attack is simply a lawsuit that a

9    prisoner files in which he contends that there was some error or

10   defect in his criminal case and that as a result he should be

11   released from incarceration.  You're promising today that you will

12   never file a collateral attack on the sentence, judgment, or

13   conviction in this case unless it's based on having counsel who

14   failed to adequately represent you.

15          Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  Are you a United States citizen?

18          THE DEFENDANT:  I am.

19          THE COURT:  Are you entering this plea today purely of

20   own free will and volition?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Does this plea result in any way from force

23   or threats?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Does this plea result in any way from any

Case 3:21-cr-00004-LMM-RGV   Document 118   Filed 04/29/24   Page 11 of 16
USCA11 Case: 24-13841   Document: 32   Date Filed: 10/08/2025   Page: 14 of 83

10

1   promises anybody has made you other than the promises in the

2   guilty plea and plea agreement?

3           THE DEFENDANT:  No, sir.

4           MR. HALL:  Well, so, yes and no.  I don't want to be

5   cute with the Court.  We have two agreements from other U.S.

6   Attorney's offices that are not within the scope of this plea

7   agreement technically because the way the plea agreement is

8   defined is -- the Government has defined it as the "Northern

9   District of Georgia and the Acting Assistant Attorney General for

10  the Department of Justice."

11          Mr. Herskowitz already knows I'm going to say this.

12  Just so that we're clear with the Court, we have an agreement from

13  the Central District of Illinois who has declined prosecution and

14  we've entered into a tolling agreement with them.

15          THE COURT:  All right.

16          MR. HALL:  And it's contingent upon us entering a plea

17  here and that being treated as relevant conduct, all that

18  information for the scope of the plea agreement.  But the fact of

19  the stand-alone agreement that I have is a letter, as well as the

20  tolling agreement that I've signed with the Central District of

21  Illinois was not set forth here.  As an officer of the court, I

22  wanted to make sure the Court knows about that --

23          THE COURT:  Thank you.

24          MR. HALL:  -- the basis for Mr. Purbeck proceeding today

25  on this plea agreement.

Case 3:21-cr-00004-LMM-RGV   Document 118   Filed 04/29/24   Page 12 of 16
USCA11 Case: 24-13841   Document: 32   Date Filed: 10/08/2025   Page: 15 of 83

11

1          THE COURT:  All right.

2          MR. HALL:  And there's a separate one I just got this

3    morning.  Mr. Herskowitz told me it was coming.  So "this morning"

4    part is kind of neither here nor there.  And it's a declaration

5    letter from the District of Alaska.  Given that's within the

6    relevant conduct scope of the plea agreement, our position -- my

7    thought is it's outside the statute of limitations anyway but

8    technically that's an agreement.  So I want to be super disclosing

9    to the Court.

10          THE COURT:  Okay.  Mr. Purbeck, did you understand

11    everything he just said?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  So when I ask you if any promises have been

14    made to you, I'm excluding promises made in the plea agreement and

15    the promises in the two agreements from Illinois and Alaska that

16    he just discussed.

17          Other than those promises has anybody promised you

18    anything today to induce you to plead guilty?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Okay.  In this case, as you know, you have a

21    guilty plea and plea agreement and it is a contract.  And the

22    parties to that contract are you and the prosecution.  I'm not a

23    party to your contract and here's how that could affect you.  If

24    the contract, the plea agreement, contains a promise from the

25    Government to you that at your sentencing the Government will

Case 3:21-cr-00004-LMM-RGV   Document 118   Filed 04/29/24   Page 13 of 16
USCA11 Case: 24-13841   Document: 32   Date Filed: 10/08/2025   Page: 16 of 83

12

1   recommend or request of me that you be sentenced a certain length

2   of time, or that the guidelines may be applied or interpreted a

3   certain way, I don't have to accept that recommendation or

4   request.  And, again, that's because I'm not a party to your

5   agreement.

6           And if I were to not accept any such recommendation or

7   request, that would not give you a ground for withdrawing your

8   guilty plea because, again, you'd be stuck with whatever term of

9   imprisonment I give you.

10          Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  All right.  Mr. Herskowitz, if you would

13  tell us what the factual basis is for the plea.

14          MR. HERSKOWITZ:  Yes, Your Honor.

15          Your Honor, if this case went to trial, the Government

16  would prove by admissible evidence and beyond a reasonable doubt

17  the following facts:  Family Medical Center, which I will refer to

18  as "FMC" which is identified in the indictment as "Victim 1" is a

19  medical clinic located in Griffin, Georgia, within this district.

20          FMC, Your Honor, maintained a repository of personal

21  identifiable information or "PII," and confidential personal

22  health information or "PHI," to include patient records, full

23  names, addresses, social security numbers, and birth dates.  The

24  information was confidential and was stored on restricted,

25  nonpublic servers located in Griffin, Georgia and elsewhere.

Case 3:21-cr-00004-LMM-RGV   Document 118   Filed 04/29/24   Page 14 of 16
USCA11 Case: 24-13841   Document: 32   Date Filed: 10/08/2025   Page: 17 of 83

13

1      On or about June 23, 2017, the defendant, Mr. Purbeck
2  purchased access to the computer server of FMC on a darknet
3  marketplace.  Two days later, on or about June 25, 2017,
4  Mr. Purbeck, the defendant, from Idaho used the stolen access
5  credentials to gain unauthorized access to the protected computers
6  of FMC, maintained unauthorized access to those computers and
7  stole medical records and other documents which contained
8  sensitive PII and PHI of over 43,000 individuals including names,
9  addresses, birth dates and social security numbers.  Evidence
10 would be, Your Honor, that FMC suffered losses associated with the
11 breach in the amount $138,500.  Excuse me.

12      On or about February 8th -- 9th, 2018, the defendant
13 purchased access to the City of Newnan, Georgia Police
14 Department's server on the darknet marketplace.  From Idaho,
15 again, the defendant used those access credentials to gain
16 unauthorized access to the City of Newnan's computer systems,
17 maintain unauthorized access to the computers and stole records,
18 consisting of police reports and documents which included PII for
19 approximately 14,394 individuals.  The City of Newnan suffered
20 losses associated with the breach in the amount in excess of
21 $113,000.

22      On August 19, 2019, FBI agents obtained a federal search
23 warrant for the defendant's home in Meridian, Idaho.  Upon
24 execution of the warrant two days later the defendant admitted he
25 used a moniker "Lifelock" on the darknet and during various

Case 3:21-cr-00004-LMM-RGV   Document 118   Filed 04/29/24   Page 15 of 16
USCA11 Case: 24-13841   Document: 32   Date Filed: 10/08/2025   Page: 18 of 83

14

1  computer intrusions and extortions.

2  During the search of his home the FBI seized a number of

3  computers and devices.  Review of the defendant's computer hard

4  drive revealed PII for at least 132,725 individuals, obtained

5  through numerous data breaches, including FMC, City of Newnan, and

6  at least 17 other victims across the United States.

7  In committing these computer intrusions against FMC and

8  the City of Newnan, the defendant executed computer commands from

9  Idaho to other states, including Georgia, to connect to victim

10  computers connected to the Internet.

11  The offenses were committed for purposes of the

12  defendant's private financial gain.

13  The evidence would be, Your Honor, the value of the

14  information obtained exceeded $5,000 as to FMC and exceeded $5,000

15  as to the City of Newnan.

16  Thank you.

17  THE COURT:  Thank you, Mr. Herskowitz.

18  Mr. Purbeck, did you understand everything that

19  Mr. Herskowitz just said?

20  THE DEFENDANT:  Yes, sir.

21  THE COURT:  Are you in fact guilty of the crimes

22  described in Counts 1 and 2 of the indictment?

23  THE DEFENDANT:  Yes, sir.

24  THE COURT:  Mr. Hall, have you reviewed the Government's

25  evidence and satisfied yourself that it is in your client's best

Case 3:21-cr-00004-LMM-RGV   Document 118   Filed 04/29/24   Page 16 of 16
USCA11 Case: 24-13841   Document: 32   Date Filed: 10/08/2025   Page: 19 of 83

15

1   interest to plead guilty today to Counts 1 and 2?

2          MR. HALL:  I have, and yes, sir.

3          THE COURT:  And from conferring with your client do you

4   believe that he is knowingly, voluntarily, and intelligently

5   waiving his constitutional rights this morning?

6          MR. HALL:  I do.

7          THE COURT:  All right.  I will accept the plea.  I

8   adjudge the defendant guilty of Counts 1 and 2.

9          We will have sentencing on June 18, 2024, at 10:30 a.m.

10  in the Newnan courthouse.  Don't come here.  It will be in Newnan.

11         We're adjourned.

12         THE COURT SECURITY OFFICER:  All rise.

13         (Proceedings were adjourned at 11:09 a.m.)

14                    Reporter's Certification

15  I certify that the foregoing is a correct transcript from the

16  record of proceedings in the above-entitled matter.

17

18                              /S/Denise M. Stewart, RPR
19                              Official Court Reporter
                                United States District Court
20                              Northern District of Georgia

21  Date:  April 29, 2024

22

23

24

25

*Government's Sentencing Memorandum*

*(Doc. 127)*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| *v.* | |
| ROBERT PURBECK | 3:21-cr-0004-TCB-RGV |
| A.K.A. "LIFELOCK" | |
| A.K.A. "STUDMASTER" | |
| A.K.A. "STUDMASTER1" | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Comes Now the United States of America, by and through counsel, Ryan K. Buchanan, United States Attorney for the Northern District of Georgia, and Michael Herskowitz, Nathan P. Kitchens, Alex R. Sistla, Assistant United States Attorneys, and Brian Z. Mund, Trial Attorney, Computer Crime and Intellectual Property Section, U.S. Department of Justice, and respectfully submits this Sentencing Memorandum in advance of the November 13, 2024, sentencing hearing for the defendant, Robert Purbeck ("Purbeck").

For the reasons discussed herein, the Government recommends that the Court sentence Purbeck to 70 months in the custody of the Bureau of Prisons, to be followed by three years of supervised release, and full restitution to the victims in the amount of $1,048,702.98.

## Background and Pertinent Facts

Purbeck is a cybercriminal who hacked into computers of victims in our District and in other places across the country, threatened and attempted to extort victims, and possessed stolen personally identifiable information (PII) of over 132,000 people, including dates of birth and social security numbers.  Purbeck's victims included a Florida orthodontist, a California dentist, the City of Newnan Police Department, a Griffin medical clinic, a Locust Grove medical clinic, a former mayor in Michigan, a medical billing service in Alaska, an optometry clinic, a safehouse for women and children who were victims of domestic violence, a dialysis clinic, a church in Stone Mountain, a correctional facility, an Idaho health department, and others.  *See* Presentence Investigation Report (PSR) at ¶66.

In June 2017, Purbeck purchased access to the computer server of a Griffin medical clinic on a darknet marketplace.  *Id.* at ¶18.  He then used the stolen credentials to illegally access the computers of the medical clinic and removed records that contained sensitive personal information for over 43,000 individuals, including names, addresses, birth dates, and social security numbers. *Id.*

During the same month, Purbeck hacked and then attempted to extort a California dentist (identified in the PSR as "A.Y."), initially sending her an email demanding a payment of $10,000 in Bitcoin under threat to publicize her patients' PII on the dark web.  *Id.* at ¶12.  Purbeck, using the moniker "LifeLock," emailed A.Y.:

> If you do not pay me then I will be forced to cause you much
> consternation. I will be forced indeed to cause the closure practice. I will
> text each of your customers their SSN and DOB . . . You will be screwed in
> California. Further, I will sell the details I have obtained on your practice
> on my darkweb page devoted to identity theft.

*Id.*

In total, Purbeck sent approximately 27 extortion emails to A.Y., even threatening to issue warrants against her for sex crimes and place her family members on sex offender registries:

> Just so you know. I have access to several or more likely more than 100
> police stations throughout the US. I can label your family members as sex
> offenders in any of those districts. You won't even know the districts
> where warrants have been issued in your name for crimes such as forcible
> rape and felony injury to a child among many other sadistic crimes I can
> pin on you and your family members. Even if you only get questioned at
> an airport it will be inconvenient. This is circle one of the hell I can put you
> in.

*Id.* at ¶13.

In furtherance of this threat, Purbeck purchased PII on A.Y.'s family members on the dark web that he used in at least one extortion email. *Id.* at ¶15. As a result of Purbeck's hacking and extortion against A.Y. and her patients, A.Y. suffered damages of $92,095.

About eight months later, in February 2018, Purbeck purchased access to a City of Newnan Police Department server on a darknet marketplace. *Id.* at ¶21. Purbeck used the stolen credentials to hack into the City of Newnan computer systems and stole police reports and other documents, including personal information for over

3

14,000 people.  *Id.*  The City of Newnan suffered losses of $113,935 associated with Purbeck's data breach.  *Id.* at ¶23.

Purbeck's hacking and extortion campaign continued.  In July 2018, Purbeck hacked and attempted to extort a Florida orthodontist (identified in the PSR as "D.S."), demanding payment in Bitcoin and threatening to sell patient and personal information unless D.S. paid the ransom.  Purbeck harassed D.S. and his patients for 10 days with numerous threatening emails and text messages.  Purbeck even threatened to sell the personal information of D.S.'s minor child.

Specifically, on July 3, 2018, Purbeck, after hacking D.S.'s practice, sent him an email that included one of his patient's name, date of birth, and social security number, and requested a payment of $15,000 in Bitcoin.  *Id.* at ¶¶26-27. Purbeck then sent D.S. another email – this time identifying his minor daughter, her date of birth, social security number, and the school which she attended:

> and most importantly sweet [name of D.S.'s minor child], born the [date of birth] is [social security number]. She currently attends [name of school] and will hopefully continue to do so in a safe and secure way. Fear not my new friend, I do not mean threat or harm to your sweet child, I just needs you to be aware of what I know [*sic*] control. What I have.[1]

The following day, on July 4, Purbeck sent a text message to D.S.'s wife, demanding payment by midnight the following day or Purbeck would start contacting patients:

---

[1] This email is quoted in D.S.'s victim impact statement that has been separately provided to the Court and defense counsel.

4

> Hello... Enjoy America Birthday. Do not allow your husband to be a cheap
> jew. It is not good for your kid patients. Make sure he contact me on time.
> 5th July at midnight Florida time is as late as I go before I start contacting
> patients. Earlier is much better. You charge $5000 for peoples vanity. You
> can pay my fee.

*Id.* at ¶28.

When D.S. elected not to pay by the deadline, Purbeck made good on his threat
and sent text messages to D.S.'s patients, sending one patient an x-ray of their
teeth. *Id.* at ¶30. In another text message to a patient, Purbeck threatened:

> I'm not going to [expletive] with your families credit or bank accounts.
> However I do want you to make [D.S.] aware that there are consequences
> to not securing his network. I am extending you and your family a
> courtesy. If he does not reply to me tomorrow I will start draining his
> other clients bank accounts and his daughter [identifying daughter's
> name] accounts.

*Id.*

Purbeck's barrage of harassment of D.S., his family, and his patients continued
for 10 days, even attacking D.S.'s religion:

> I know that you are of the Jewish faith and that family and community are
> of the most importance to you. Do not let them all down [D.S.]. That
> would end in much blood shed and tears. [2]

In one instance, Purbeck texted a teenage patient her social security number and
bank account number as proof that her information had been stolen:

---

[2] This email is quoted in D.S.'s victim impact statement that has been
separately provided to the Court and defense counsel.

With child SSN I can do a number of things, from staring [*sic*] new lives for dangerous individuals that are looking for a fresh start, to buying homes, opening credit, staring banks accounts, staring businesses.[3]

As a result of Purbeck's extortion campaign, D.S. incurred expenses for forensic audits, notifications, remediation, and legal fees, which ultimately forced him to sell his orthodontic practice. In total, D.S. suffered losses of $285,980.13, which Purbeck has agreed to pay as restitution. *Id.* at ¶32. D.S. is expected to attend Purbeck's sentencing to read a victim impact statement and share with the Court the profound impact that this incident had on him and his family.

On August 21, 2019, the FBI executed a federal search warrant at Purbeck's home in Meridian, Idaho. *Id.* at ¶34. During the search, the FBI seized multiple computers and electronic devices, which contained personal information of over 132,000 individuals, obtained through Purbeck's numerous data breaches, including the City of Newnan, the Griffin medical clinic, and at least 17 other victims throughout the United States. *Id.* at ¶66. Many of these victims incurred substantial expenses, including remediation costs and disruption to business operations because of Purbeck's conduct.

On the date of the search warrant, the FBI interviewed Purbeck in his backyard, where he admitted that he was the hacker "Lifelock" and was responsible for various hacks and extortions, including of A.Y. *Id.* at ¶¶48-52. He acknowledged that he made approximately $48,000 from the extortions. *Id.* at ¶50. Purbeck also

---

[3] This email is quoted in D.S.'s victim impact statement that has been separately provided to the Court and defense counsel.

admitted that he committed "some minor identity theft" with stolen PII, including setting up "a few fake bank accounts" in the victims' names. *Id.* at ¶54. Purbeck added that he "searched for his former supervisor's personal data and used it to taunt him." *Id.* at ¶56.

On March 2, 2021, a Grand Jury sitting in this District returned an 11-count indictment against Purbeck, which charged him with violations of computer fraud and abuse, wire fraud, and access device fraud. (Doc. 1). On September 1 and 2, 2022, U.S. Magistrate Judge Russell G. Vineyard held an evidentiary hearing on Purbeck's motion to suppress statements where Purbeck and the FBI agents testified. (Docs. 64, 76-77). In recommending denial of the motion, Judge Vineyard found that "Purbeck's testimony at the hearing was illogical and even fanciful at times as he seemed to embellish and speculate about circumstances that he stated as fact." (Doc. 87 at 39). Judge Vineyard observed and found: "[i]n general, [Purbeck's] testimony was incredible" in that he "contradicted himself . . . and told an untenable story," and "[h]is testimony was not plausible." *Id.* at 61.

Following further pretrial litigation, Purbeck pleaded guilty on March 19, 2024, pursuant to a negotiated plea agreement to counts one and two of the indictment, which charged him with two counts of computer fraud and abuse, in violation of Title 18, United States Code, Sections 1030(a)(7)(B), 1030(c)(3)(A), and 2. (Doc. 116-1). Each count carries a 5-year maximum term of imprisonment. *See* PSR, Part D, Sentencing Options.

## <u>Pending Objections to the PSR and Guideline Applications</u>

According to the PSR, Purbeck's total offense level is 27, criminal history category I, with a custodial Guideline range of 70 to 87 months. (PSR, Part D, Sentencing Options). Purbeck's pending objections to the PSR for consideration at sentencing are as follows:

- The PSR's assessment of a two-level increase to Purbeck's base offense level as the offense involved the production or trafficking of an unauthorized access device or counterfeit access device, pursuant to USSG § 2B1.1(b)(11)(B)(i), or involved the unauthorized transfer and unlawful use of means of identification to produce and obtain another means of identification, pursuant to USSG § 2B1.1(b)(11)(C)(i);

- The PSR's assessment of a two-level increase to Purbeck's base offense level for obstruction of justice pursuant to USSG § 3C1.1, as Purbeck provided untruthful testimony and materially false information to Judge Vineyard during the suppression hearing in this case; and

- The PSR's absence of a two-level reduction to Purbeck's base offense level for zero-point offender pursuant to USSG § 4C1.1, due to the financial harm that Purbeck caused D.S.

For the reasons detailed below, the Government submits that Purbeck's objections are without merit and should be overruled.

A. <u>Purbeck Should Receive the Two-Level Unauthorized Access Device Enhancement.</u>

Purbeck should receive a two-level enhancement to his base offense level pursuant to USSG § 2B.1(b)(11)(B)(i) & (C)(i).[4] Subsection (b)(11) provides, in relevant part, "[i]f the offense involved . . . (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device . . . or (C)(i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification . . . increase by 2 levels."

Here, Purbeck's offense conduct involved the use of stolen victim data to open bank accounts in the names of those victims and the sale of some of those fraudulent bank accounts to other individuals. *See* PSR at ¶54. That offense conduct constitutes both production and trafficking of unauthorized access devices, as well as the unlawful use of a means of identification to produce another means of identification.

Purbeck's creation and sale of fraudulent bank accounts constitutes the production and trafficking of unauthorized access devices. The term "unauthorized access device" means "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." USSG § 2B1.1(b)(11) cmt. n.10(a). "Access device" is broadly defined and includes, as relevant here, routing and bank account numbers. *See United States v. Wright*, 862 F.3d 1265, 1275 (11th Cir. 2017) (citing *United States v. Williams*, 790 F.3d 1240, 1250 (11th Cir. 2015) (routing and banking numbers constitute access devices, when not

---

[4] Purbeck styles his objection to the application of this enhancement as a "conditional objection that is being raised pursuant to the plea agreement."

used on a paper check); 18 U.S.C. § 1029(e)(1). Accordingly, fraudulent bank accounts opened in the names of identity theft victims may constitute unauthorized access devices. *See United States v. Blain*, 711 F. App'x 589, 590 (11th Cir. 2018) (applying enhancement for fraudulent bank accounts opened and debit cards issued in names of identity theft victims).

Under Eleventh Circuit law, Purbeck "produced" the bank accounts within the meaning of the Guidelines. *See United States v. Taylor*, 818 F.3d 671, 678 (11th Cir. 2016) (concluding that a defendant "produces" unauthorized access device when causing bank to produce the device); *see also* USSG § 2B1.1(b)(11) cmt. n.10(a) (defining "production" as "manufacture, design, alteration, authentication, duplication, or assembly"). Thus, Purbeck's opening of bank accounts in the names of his identity theft victims qualify as producing an unauthorized access device for purposes this enhancement.

Moreover, Purbeck not only produced the unauthorized access devices, but also trafficked in those access devices for profit. While "trafficking" is not defined in the Guidelines commentary, accepted definitions of that term are generally consistent with the definition of "traffic" in 18 U.S.C. § 1029(e)(5), which means to "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of." *See United States v. Michell*, 728 F. App'x 953, 958 (11th Cir. 2018). Therefore, Purbeck's sale of fraudulently opened bank accounts to other individuals constituted trafficking of unauthorized access devices under the Guidelines—establishing an independent basis for the two-level enhancement.

Purbeck's use of stolen victim data to open unauthorized bank accounts also warrants imposition of the two-level enhancement pursuant to USSG § 2B1.1(b)(11)(C)(i), because it involved the unauthorized transfer and unlawful use of means of identification to produce and obtain another means of identification. Specifically, as set forth in the PSR, Purbeck obtained victim data without authorization and used that PII unlawfully to open bank accounts in the names of victims, thereby producing and obtaining bank account information. *See* PSR at ¶54. Both the victim data and bank account information qualify as "means of identification."[5] Indeed, the Guidelines commentary for this sub-provision specifically envisages the example of a defendant unlawfully obtaining an individual's name and address from a source and using that information to open a credit card in that individual's name. USSG § 2B1.1(b)(11) cmt. n.10(C)(ii)(II). Accordingly, the two-level enhancement in Section 2B1.1(b)(11) is also appropriate pursuant to subsection (C)(i).

---

[5] "Means of identification" is defined in relevant part as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," except that "such means of identification shall be of an actual (i.e., not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable." U.S.S.G. § 2B1.1(b)(11) cmt. n.10(C)(ii)(II).

**B. Purbeck Should Receive the Two-Level Obstruction Enhancement Under USSG § 3C1.1 Because He Testified Falsely During the Suppression Hearing.**

The initial PSR recommended that Purbeck should receive the two-level obstruction enhancement under § 3C1.1 because he provided "untruthful testimony" or "materially false information to a judge" during the suppression hearing. Purbeck objects to the obstruction enhancement. *See* Purbeck Obj. at 4-5. The Court should overrule Purbeck's objection because he offered materially false testimony under oath at the suppression hearing about the circumstances of his non-custodial interview.[6]

The obstruction guideline provides that a defendant's offense level may be increased by two levels if: (1) he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to an investigation, prosecution, or sentencing" of his instant offense; and (2) his obstructive conduct

_____

[6] In the final PSR, the probation officer recommended that Purbeck receive the obstruction enhancement based on a *pro se* civil filing he made in the United States District Court for the District of Idaho. (Final PSR ¶86). The Government disagrees with the probation officer that Purbeck's civil filing—even though it contains false information and untruthful allegations—provides the necessary factual predicate for imposing an obstruction enhancement. *See, e.g.*, *United States v. Campa*, 529 F.3d 980, 1016 (11th Cir. 2008) (explaining the relevant question in applying the obstruction enhancement is "whether the obstructive conduct occurred during the course of the investigation, prosecution, or sentencing" of the offense of conviction or a closely related offense). Accordingly, the Government does not rely on this civil filing (or the reasoning in the final PSR) as a basis for the Court to impose the obstruction enhancement under § 3C1.1. The Court may nevertheless consider Purbeck's various filings, including this most recent one in which he lodges numerous unfounded allegations against one of the government's attorneys, as part of its § 3553(a) analysis.

related to his "offense of conviction and any relevant conduct or . . . a closely related offense." USSG § 3C1.1. Example of conduct covered by this Guideline include "committing . . . perjury" or "providing materially false information to a judge or magistrate judge." *Id.*, cmt. n.4(B), (F). Perjury is "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Duperval*, 777 F.3d 1324, 1337 (11th Cir. 2015) (quotation marks omitted). The application note defines materially false information as "information that, if believed, would tend to influence or affect the issue under determination." USSG § 3C1.1, cmt. n.6. "The [Eleventh Circuit] has noted that [the] threshold for materiality is 'conspicuously low.'" *United States v. Doe*, 661 F.3d 550, 566 (11th Cir. 2011) (quoting *United States v. Odedina*, 980 F.2d 705, 707 (11th Cir. 1993)) (additional citations omitted).

In determining whether to impose the enhancement obstruction because of false or perjured testimony, the preferable course is for the Court to "make specific findings by identifying the materially false statements individually, [but] it is sufficient if the [district] court makes a general finding of obstruction encompassing all the factual predicates of perjury." *Duperval*, 777 F.3d at 1337 (quotation marks omitted). Those factual predicates are finding that the testimony was: (1) under oath; (2) false; (3) material; and (4) given with the willful intent to provide false testimony. *United States v. Singh*, 291 F.3d 756, 763 & n.4 (11th Cir. 2002).

In the report and recommendation denying Purbeck's motion to suppress his statements, Judge Vineyard found his "testimony regarding all of the circumstances surrounding the interview was not fully credible as it was contradicted by the more credible and consistent of the testimony of the Agents[.]" (Doc. 87 at 38).[7] As noted above, the magistrate judge further observed that "Purbeck's testimony at the hearing was illogical and even fanciful at times as he seemed to embellish and speculate about the circumstances that he stated as fact." (*Id.* at 39). In particular, Purbeck falsely testified about the agents subjecting him "to inhumane physical conditions by being forced to sit for hours in direct sunlight in [] August heat without water or food." (*Id.* at 47-48). As a result, Purbeck testified that he was suffering from the symptoms of heat exhaustion, even believing that he was on the verge of organ failure. (*Id.* at 50, 54) (citations omitted). Purbeck's false testimony in this respect included claims that:

- The agents repeatedly ensured that Purbeck be interviewed in the direct sunlight, and in fact purposefully placed Purbeck in the direct sunlight. (*Id.* at 21 n.17, 37 n. 26 (transcript citations omitted)).

- He was suffering from heat cramps, had trouble walking to the bathroom, and had to be assisted by one of the agents. (*Id.* at 22 n. 18 (transcript citations omitted)).

- It was very painful for him to urinate, and his urine was "dark brown, like the color of cola." (Doc. 77, Sept. 2 Tr. at 95).

---

[7] There is no dispute that Purbeck was under oath when he testified at the suppression hearing.

- He was sweating heavily from sitting outside and being in the heat for a "prolonged period[] of time," which caused Purbeck to "get[] a little bit out of it." (Doc. 77, Sept. 2 Tr. at 100-01).

- He was in "bad condition" at the conclusion of the interview "due to the prolonged sun exposure, which was exacerbated by his blood pressure and psychiatric medications," and that he was even on the verge of organ failure. (*Id.* at 24 n. 21 (transcript citations omitted)).

- He had developed heat cramps, and the agents denied him water. The agents also failed to offer Purbeck any water despite drinking water in front of him, in fact taunting him about not having water. (Doc. 77, Sept. 2 Tr. at 78-80, 156, 158-59).

- He suffered from such severe sunburn that he had trouble sleeping in the days following the interview, developed a fever, and "wasn't fully functional for at least a couple of days." (Doc. 77, Sept. 2 Tr. at 114).

The magistrate judge concluded that "Purbeck's assertion that he was subjected to inhumane physical conditions was not supported by the credible evidence in the record." (Doc. 87 at 55) (citation, quotation marks omitted). In doing so, the magistrate judge did not simply rely on the agents' testimony, but evidence about the moderate weather on the day Purbeck was interviewed, as well as the fact that Purbeck "never sought any medical attention" for his alleged heat-related ailments "and even . . . flew to Atlanta for a proffer session with the [same interviewing] agents just weeks later." (*Id.* at 54).

Purbeck's false testimony about the agents' supposed actions and his alleged medical condition was material because he argued that this rendered his statements to the agents involuntary. (*Id.* at 50, 53, 55). In other words, if Purbeck's false testimony about being subjected to inhumane physical conditions had been believed, "it would [have] tend[ed] to influence or affect the issue under determination;" namely, the admissibility of his statements at trial. USSG § 3C1.1 cmt. n.6; (Doc. 87 at 47-54) (analyzing the voluntariness of Purbeck's statement in light of his allegations of being subjected to allegedly inhuman physical conditions) (citing, among other authority, *United States v. Lazarus*, 552 F. App'x 892, 895 (11th Cir. 2014)); *see also United States v. Bedolla-Zavala*, 611 F.3d 392, 396 (7th Cir. 2011) ("The relevant considerations are the kind of information provided and its tendency to influence the court, not the actual effect of a particular misstatement.") (cited approvingly by *United States v. Doe*, 661 F.3d 550, 567 (11th Cir. 2011)). Moreover, as reflected by his lengthy testimony at the suppression hearing, Purbeck willfully made these false statements about his health and being subject to inhumane conditions. He did not make them "as a result of a mistake, confusion, or faulty memory." *Singh*, 291 F.3d at 763 n.4.

The Court should therefore overrule Purbeck's objection and impose the two-level obstruction enhancement. Indeed, the Eleventh Circuit has routinely upheld the imposition of the obstruction enhancement based on a defendant providing false testimony and information in pretrial hearings. *See, e.g., Doe*, 661 F.3d at 566-67 (affirming obstruction enhancement where defendant provided false information to the probation officer in advance of the magistrate judge's bond

determination); *United States v. Hubert*, 138 F.3d 912, 915 (11th Cir. 1998) (holding that district court did not err in imposing obstruction enhancement based on defendant's false testimony at "trial and two prior bond revocation hearings"); *United States v. Tran*, 171 F. App'x 758, 761-72 (11th Cir. 2006) (affirming obstruction enhancement where defendant falsely testified at suppression hearing that he had requested his bankruptcy lawyer's business card in an effort to demonstrate he had invoked his right to counsel); *see also, e.g.*, *United States v. Guevara*, No. 14-cr-20792, 2019 U.S. Dist. LEXIS 6710, at *7 (S.D. Fla. Jan. 15, 2019) (imposing obstruction enhancement based on defendant's false testimony at suppression hearing because this "testimony at the motion to suppress could have been case-dispositive . . . and the Government's case would have been significantly impacted") (citing *United States v. Lincecum*, 220 F.3d 77, 80-81 (2d Cir. 2000) (affirming obstruction of justice enhancement based on defendant making false statements in his affidavit in support of a motion to suppress); *United States v. Matos*, 907 F.2d 274, 275 (2d Cir. 1990) (affirming obstruction of justice enhancement based on defendant's false testimony at a suppression hearing)).

### C. Purbeck Has Not Met His Burden to Show that He is Entitled to the Two-Level Zero-Point Offender Reduction.

Purbeck will not be able to meet his burden of showing that he "did not personally cause substantial financial hardship" to qualify for the two-level zero-point offender reduction under the Guidelines. *See* USSG § 4C1.l(a) (limiting reduction to circumstances where "the defendant meets all of the following criteria"); *Id.* § 4C1.l(a)(6) ("[T]he defendant did not personally cause substantial

financial hardship"); *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014) ("The government bears the burden of proving the applicability of a sentencing guidelines increase, while the defendant bears the burden of proving the applicability of a sentencing guidelines reduction.")

"In determining whether the defendant's acts or omissions resulted in 'substantial financial hardship' to a victim, the court shall consider, among other things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to § 2B1.1 (Theft, Property Destruction, and Fraud)." *See* USSG §4C1.1(b)(3). Application Note 4(F) of the Commentary to § 2B1.1 provides, in pertinent part:

> In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim—
>   (i) becoming insolvent;
>   (ii) filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);
>   (iii) suffering substantial loss of a retirement, education, or other savings or investment fund;
>   (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;
>   (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and
>   (vi) suffering substantial harm to his or her ability to obtain credit.

*See* USSG § 2B1.1, Application Note 4(F).

Here, Purbeck cannot demonstrate that he did not "personally cause substantial financial hardship" to D.S, who is expected to testify at sentencing that

Purbeck's hacking and extortion resulted in D.S. "making substantial changes to his employment" by selling his orthodontic practice to alleviate nearly $300,000 in losses personally caused by Purbeck. D.S. may also testify that for two years he and his family were teetering on the edge of bankruptcy, both personal and professional, due to the damage caused by Purbeck.[8]

Even though Purbeck's intent to cause financial harm is not required, it is telling that Purbeck hoped that D.S. would in fact suffer significant financial hardship, as one of his emails stated:

> You deserve to have your entire malpractice and umbrella policies drained your house sold at auction and your family to be made homeless by the bankruptcy court. You will lose your wife and daughter because they are greedy twats just like you.[9]

For these reasons, the Government respectfully submits that Purbeck does not qualify for the zero-point offender reduction - as the PSR recommends.

### Argument Under Section 3553(a) Factors

A thorough consideration of all the sentencing factors set forth in 18 U.S.C. 3553(a) suggests that the most appropriate sentence for Purbeck is the Government's recommended sentence of 70 months in custody, to be followed by three years of supervised release, and full restitution to the victims in the amount

---

[8] D.S. will also read his victim impact statement to the Court as part of the Government's § 3553(a) presentation.

[9] This email is quoted in D.S.'s victim impact statement that has been separately provided to the Court and defense counsel.

of $1,048,702.98. The Government submits that the Section 3553(a) factors should be applied to Purbeck as follows:

### 1. Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

The nature and circumstances of Purbeck's offense were simply egregious. Purbeck hacked numerous victims throughout the country and stole PII, such as social security numbers and dates of birth, including those of minors. If that were not enough, Purbeck used the stolen data and information as a weapon. He sent threatening and harassing text messages and emails to victims, their family members, and at times their patients, demanding money to make it stop. These hacks and threatening messages caused disruption, anxiety, and stress to victims, patients, and companies, and resulted in over a million dollars in collective losses.

In fairness to Purbeck, the serious nature and circumstances of the offense need to be balanced by mitigating factors. Purbeck is 45 years old with no prior criminal history. Aside from his recent despicable antisemitic civil filing, which is further discussed below, where he researched and doxed one of the Assistant U.S. Attorneys prosecuting this case, it appears that Purbeck has otherwise done well on pretrial release for nearly four years. He agreed to resolve the case without the necessity of a multi-week trial with victims needing to travel from all over the country to relive these difficult events. Purbeck also agreed to pay full restitution of over one million dollars to the victims.

20

In agreeing to recommend a custodial sentence of 70 months (and nothing higher), the Government considered both aggravating and mitigating factors and asks the Court to take account of both factors as well.

**2. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment for the Offense.**

For the reasons mentioned, this is an incredibly serious case, and Purbeck is deserving of a significant punishment.   A 70-month sentence will reflect the seriousness of the offense, promote respect for the law, and provide just punishment to Purbeck for his crimes.   The Government submits that a sentence of 70 months is sufficient, but not greater than necessary, to comply with the purposes of this subsection and the overall factors in 3553(a).

**3. The Need to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

The Court should fashion a sentence for Purbeck that will deter him from future criminal conduct, as well as send a strong message to others who are involved in cybercrimes, that they will be punished with a significant term in federal prison. The Government submits that 70 months in prison, together with a judgment of over a million dollars in restitution, should hopefully deter Purbeck (who will be in his early 50s upon release) from future crimes, as well as send an appropriate message to other cybercriminals.  While Purbeck is in federal prison, the public will also be protected from any future crimes.

A meaningful prison sentence of 70 months is also necessary to provide adequate deterrence—both specific and general—against further criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B). The prolonged nature of Purbeck's threatening communications heightens the importance of deterrence, and the public's interest in deterrence is particularly acute in cases like this given the ever-increasing costs of cyber extortion.

Purbeck's conduct in this case, both before and after facing charges, reflects the need for specific deterrence. For more than a year from mid-2017 through October 2018, Purbeck conducted sinister cyber extortion attacks against seven victims by threatening to disclose sensitive data for his own personal gain. PSR ¶¶12–33. This cyber extortion scheme "required 'careful calculation and deliberation,'" which is an "aggravating factor" supporting a substantial sentence. *United States v. Matthews*, 477 F. App'x 585, 588 (11th Cir. 2012) (affirming consideration of "repeated" deposits of stolen checks worth more than $400,000 over "prolonged period" of several months as "aggravating factor"). This conduct was not a mistake, a poor decision in the heat of the moment, or an aberration—his conduct over a lengthy period calls for a sentence to deter him from future criminal activity.

Purbeck's conduct since his guilty plea underscores the need for specific deterrence. Specifically, Purbeck filed a *pro se* civil pleading in the U.S. District Court for the District of Idaho in August 2024 containing harassing language consistent with his prior extortionate activity. *See Robert Purbeck v. United States, et al.*, No. 1:24-CV-00356-DCN (D. Idaho) (Aug. 12, 2024) (Doc. 1) (Attached as Exhibit 1). For example, Purbeck victimized D.S., in part, by (1) publicizing

personal information about the victim, PSR ¶¶26, 30; (2) disclosing personal information about the victim's patients, *id.* ¶30; and (3) harassing his family with antisemitic rhetoric, including warning the victim's wife not to allow her husband "to be a cheap jew," *id.* ¶28. Similarly, in his civil filing, Purbeck targeted a prosecutor in this matter by (1) publicizing personal information about the prosecutor, including identifying his place of worship and discussing his family members, (2) disclosing personal information about two of his victims in this matter, including discussing their religious beliefs and charitable donations, and (3) littering his filing with antisemitic conspiracy theories targeting the prosecutor, including calling him an "apostate Jew" who attends a "wicked church" and "is no different than a Jihadist." *See* Exhibit 1 at 22–24. Purbeck's continued efforts to weaponize personal information, including discussing minor children of his targets, even months after his guilty plea highlight the necessity of a prison sentence of 70 months to deter him from further threatening communications.

The devastating scale of Purbeck's cyber extortion supports a sentence that recognizes an "important goal of sentencing in a white-collar crime prosecution: the need for general deterrence." *United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013). The Eleventh Circuit has recognized that "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation marks and alteration omitted); *see also United States v. Howard*, 28 F.4th 180, 209

(11th Cir. 2022) ("General deterrence is more apt, not less apt, in white collar crime cases.").

The public's interest in deterring cybercrime cannot be overstated. The Internet Crime Complaint Center ("IC3"), the FBI unit that receives and tracks cybercrime complaints from victims, received a total of 48,223 complaints of cyber extortion in 2023, with reported losses of nearly $75 million.[10] These figures highlight that cyber extortion schemes impose a tremendous cost beyond the cost of any ransom paid because the victim must expend considerable resources to identify the full scope of the breach and fix any vulnerabilities, ensure the protection of sensitive data, notify clients, and, in certain cases, report and respond to federal and state regulatory agencies in the aftermath of a breach.

Moreover, the need for general deterrence is greatest in cases involving particularly lucrative and difficult-to-detect cyber schemes, such as the sophisticated scheme in which Purbeck participated, that "may easily go undetected and unpunished." *United States v. McQueen*, 727 F.3d 1144, 1158–59 (11th Cir. 2013) (reversing lenient sentence because it "sap[ped] the goal of general deterrence," which is one of the "'key purposes of sentencing'"); *see also United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010) (explaining that because tax evasion offenses are infrequently prosecuted, "[w]ithout a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path); *United States v. Heffernan*,

---

[10] *See* Federal Bureau of Investigation, 2023 Internet Crime Report, at 20–21, *available at* https://www.ic3.gov/AnnualReport/Reports/2023_IC3Report.pdf.

43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

Investigations of cyber extortion cases are challenging, as law enforcement must work quickly to collect and preserve data before it is destroyed or encrypted, analyze that data to attribute the work to the perpetrator, and then successfully apprehend that individual. Criminals like Purbeck use increasingly sophisticated tools and techniques to obfuscate their true identities, and their infrastructure is frequently scattered across multiple jurisdictions. Consequently, the importance of affording general deterrence through meaningful sentences is particularly acute in cyber cases: where the incidence of prosecution is lower, the level of punishment must be higher to obtain the same level of deterrence.

A substantial sentence sends a message that even if the likelihood of being apprehended is not substantial, the consequences of such conduct will be. By contrast, a lenient sentence would do little to dissuade Purbeck or others from committing a similar crime in the future. For all these reasons, sentences for sophisticated cyber extortion schemes should be substantial to afford adequate deterrence consistent with Section 3553(a).

Although Purbeck is free to argue for a lower sentence, the Government respectfully submits that any sentence below 70 months in custody will not offer adequate deterrence, address the seriousness of the offenses, or promote just respect for the law given the breadth and impact of Purbeck's conduct.

## **Conclusion**

Based upon the foregoing, the Government respectfully requests that the Court impose upon defendant Robert Purbeck a 70-month prison sentence, to be followed by three years of supervised release, and full restitution to the victims in the amount of $1,048,702.98. The Government will also ask that Purbeck be taken into custody following the sentencing hearing.

This 8th day of November 2024.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

*Michael Herskowitz*

/s/MICHAEL HERSKOWITZ
*Assistant United States Attorney*
Georgia Bar No. 349515
Michael.Herskowitz@usdoj.gov


/s/NATHAN P. KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930
Nathan.Kitchens@usdoj.gov


/s/ALEX SISTLA
*Assistant United States Attorney*
Georgia Bar No. 845602
Alex.Sistla@usdoj.gov

/s/ BRIAN Z. MUND
*Trial Attorney, Computer Crime and*
*Intellectual Property Section*
U.S. Department of Justice
California Bar No. 334699
Brian.Mund@usdoj.gov

600 U.S. Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303
404-581-6000

U.S. COURTS

AUG 12 2024

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

Robert Purbeck
451 W Waterbury Drive
Meridian, ID 83646
208-863-6957
rpurbeck@gmail.com
(Pro-Se)

FEDERAL DISTRICT COURT

DISTRICT OF IDAHO

ROBERT PURBECK,

      Petitioner,

vs.

UNITED STATES OF AMERICA

JOSHUA HURWIT (Official Capacity)

RYAN BUCHANAN (Official Capacity)

Defendant

Case No.: 1:24-cv-00356-DCN

IN RE: ROBERT PURBECK'S
PETITION FOR A WRIT OF MANDAMUS TO CURE
BRADY VIOLATION AND CONTEMPT OF DUE
PROCESS PROTECTIONS ACT ORDER

HEARING REQUESTED PRIOR TO DATE OF
IRREPERABLE HARM OCCURING ON SEPT 11TH,
2024

# MANDAMUS RELIEF IS REQUIRED TO PREVENT IRREPERABLE HARM

    *"There is an epidemic of Brady violations abroad in the land. Only judges can put a stop to it."*

    *United States v. Olsen, 737 F.3d 625 (9th Cir. 2013)*

Petitioner is making a request of this court to order the United States Department of Justice in Idaho to do its constitutionally required job to make the truth known. Petitioner makes this request to the court because the collective United States has been fooled by the former civil defendants in this court, two District of Idaho AUSA's, and AUSA Michael Herskowitz a religious zealot who has covered up evidence of perjury to satisfy his own apostate interpretation of a heretical belief system.[1] Two FBI agents

---

[1] As will be pointed out Mr. Herskowitz's apostate beliefs go directly against the entire Word of God including the New Testament, also the Torah part of the Tanakh. Zealotry and subornation of perjury has no place in any Federal District Court. His weakening of 9th circuit and constitutional law for the other 10 circuits will only harm Jews that the government wants to persecute that live in the 9th circuit by allowing falsification of nexus to courts with no

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 1

Coffin and Pinette have both committed perjury in Mr. Purbecks criminal case and Coffin has committed perjury in at least one of his interrogatory answers in Idaho District court case 1:21-cv-00047-BLW. The evidence of the perjury was developed in the civil case because the United States and the Magistrate Court relying on false assertions from the two FBI agents used its substantial authority to prevent Mr. Purbeck from putting up an adequate credibility defense in a suppression hearing in his only chance at due process in the Northern District of Georgia by depriving him of needed witnesses. The government's only 2 called witnesses committed perjury in the hearing as will be detailed below[2]. To prevent the truth from being found in the adversarial system, the United States in the District of Idaho demanded the defense in Georgia comply with Touhy regulations. These regulations are unconstitutional in the 9th circuit in a criminal case to compel witnesses. Then used these same Touhy regulations to stymie the continuation of truth-finding process when it was known to Mr. Shaefer and Mrs. Ward-Crane that the agents committed perjury in Georgia to harm both Mr. Purbecks criminal defense and civil prosecution. These are witnesses that Agents Coffin and Pinette knew would be able to undermine their false testimony. The government, relying on the false assertions and plausible deniability, argued that the testimony of the witnesses would be duplicitous. The magistrate court abused its discretion and suppressed the witnesses defense asked for based on the flawed reasoning of duplicity he applied from an unpublished 6th circuit case. In 1:21-cv-00047-BLW however, the evidence developed shows that in fact the government and its prosecution partners are knowledgeable of numerous witnesses who can undermine the credibility of the two agents and still the government has not collected the evidence from

---

oversight. Mr. Herskowitz should refer to the book of Esther to see Yahweh's just punishment for wicked evildoers like him. Mr. Purbeck believes anyone should be allowed to worship in any manner as long as it doesn't interfere with someone else's inalienable rights.

[2]Mr. Purbeck will make a substantial showing of prejudice. Two Ada County witnesses have both undermined the two FBI agents self-serving testimony. Mr. Purbeck has made requests for evidence from Sheriff Bartlett and Former SSRA Doug Hart which have gone ignored. He has also demanded Ward-Crane provide the same. This is not a case like Perales v. United States, 1:21-cv-00125-DCN (D. Idaho Oct. 18, 2022) * 10 where it is rank speculation of missing documents. There are at least 2 witnesses more who can bolster the current 2 witnesses.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 2

1   the witnesses and provided it to Mr. Purbecks defense even though requested. On March 19th, 2024 the

2   government [3] willfully made a false declaration in open court that they had complied with all of their

3   Brady obligations in the criminal case. The government from the very beginning of the case intended to

4   hide evidence from the defense. Mr. Coffin has touched every single piece of evidence in this case, and he

5   repeatedly committed perjury in the suppression hearing.  Mr. Purbeck would not have plead guilty if he

6   had been given a fair opportunity to view suppressed evidence and knew the agents wouldn't perjure

7   themselves in court while an easily persuaded judge looked the other way to obvious perjury.

```
 5         THE DEFENDANT:  Does that include Brady obligations of
 6  the Government?
 7         THE COURT:  No.  The Brady obligations are separate.
 8         But, Mr. Herskowitz, I'll let you answer that.  I mean,
 9  if he's pleading guilty today, the Government's under a duty to
10  comply with Brady regardless of the status of the case.  I can say
11  that and I presume that the Government not only intends to do that
12  but has done that so far in the case.
13         MR. HERSKOWITZ:  Absolutely, Your Honor.  Yes.
```

```
 8         Do you understand that?
 9         THE DEFENDANT:  If, however, the Government didn't
10  comply with Brady, though, I would still have reason to?
11         THE COURT:  Mr. Herskowitz, what would you say?
12         MR. HERSKOWITZ:  Judge, we've complied with Brady and
13  the appeal waiver is clear and it's been provided to Mr. Purbeck.
14  And I'm sure his counsel has talked with him about that and the
15  Court has talked with him about that.                              4
```

---

[3] Mr. Purbeck cannot prove definitively that Mr. Herskowitz is aware of the Brady/Napue violation. He has willfully failed repeatedly to investigate especially from witnesses who have testified and whose sworn testimony will contradict the false testimony of his 2 FBI agent witnesses. Mr. Coffin is a part of the prosecution team was present and smirked during the false declaration made by Mr. Herskowitz.  Further James Schaefer was aware of the inconsistent statements in the testimony as was Darci Ward-Crane who has stymied Petitioners attempts at getting depositions of corroborating witnesses. It is not necessary for the prosecutor himself to be aware of the Napue/Brady violations as is detailed in Price. U.S. v. Price, 566 F.3d 900 (9th Cir. 2009) * 908 The agents committing perjury knew of the perjury as well as corroborating witnesses from a prosecution partner knew about the circumstances that was perjured regarding including SSRA Douglass Hart, Sherriff Bartlett, and Stephen O'Meara.

[4] Change of Plea hearing 3-19-2024 3:21-cr-00004-TCB-RGV-1 * 7-8 (Exhibit 1) The judge initially makes the constitutionally correct answer, but then allows Mr. Herskowitz to convince him later in the transcript that the government doesn't have to provide Brady evidence. Talk about perverse incentives. The government could win every single case by committing perjury in hearings and to get warrants and then forcing a waiver to protect wicked

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 3

The **government is seeking to enhance Petitioners punishment by 2 points** for obstruction in the criminal matter while simultaneously obstructing and perverting the truth-seeking supervisory powers of the court. The government knows beyond a reasonable doubt its only two called agents committed perjury in the suppression hearing to material facts. This is much more serious than a misinformed magistrate determining Mr. Purbeck was less credible than the agents when they can be shown to have committed actual perjury to provable material facts in the same proceeding. The agents knew beforehand exactly what Mr. Purbeck would testify to from his civil filings and likely conspired with the AUSA Mr. Herskowitz to commit perjury. The court is asked to order the government in Idaho to comply with the Due Process Protections Act and to correct the Napue violation its agents and prosecution partner Ada County know was committed in the Northern District of Georgia. Also, the Touhy regulations that the government made the defense comply with were clearly unconstitutional for an AUSA in Idaho to demand defense comply with and the rule of lenity should apply, and this court should order additional fact finding be made where the District of Idaho subverted the constitution to cause a due-process failure in Georgia. Further the Touhy regulations are a capricious set of regulations that have no business being utilized for a criminal case and the reversal of Chevron should allow this court to make a first impression that Touhy regulations are unconstitutional for any criminal case. If the government had complied with its duty to correct a Napue error in September 2022 the 9th circuit would not have issued the ruling preventing 4th amendment relief in the civil matter until July 2023. Mr. Purbeck would have had adequate time to request summary judgment against the perjuring agents before the 9th circuit ruling and thus his 5th amendment due process rights in the civil matter were extinguished by the Napue violation as well and demands relief against future uses of this unlawful strategy by wicked civil servant defendants. The agents and AUSA's should be faced with sanctions for failing to disclose this evidence.

_____

perjurers. How dare someone try and invoke their rights, that is obstruction. Petitioner can guarantee this is Mr. Herskowitz's go-to strategy for winning cases.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 4

# RELIEF IS WARRANTED

The government, including its prosecution partners negotiated a plea deal with Petitioners' attorney in bad faith knowing that they possessed Brady/Napue evidence that they have failed to turn over while it was useful. The plea deal includes unconscionable provisions preventing collateral attacks on the prosecution and allows the personnel willfully obstructing justice to be held harmless.[5] However, Brady is an ongoing obligation of the Government and is required to be turned over while it is useful including both for _suppression hearings_[6], and for the _punishment_ phase[7]. The Brady obligation in this case is ongoing until at least sentencing. And the current state of the case is that the government is operating in willful contempt of the District of Idaho's Due Process Protections Act order ordered in the rule 5 hearing and issued on two occasions including resolving the governments objections to general order 389 and substituting it for general order 392 on March, 22nd 2021. Further, the Government can't hide behind the plea waivers as the falsehoods they are suppressing are a due process failure and cannot be allowed to stand by waiver.[8]

The government prosecution team outside of Messrs. Coffin and Pinette has been aware of perjured testimony in the suppression hearing by the two former defendants beginning on August 21st,

---

[5] Because Mr Coffin and Mr. Pinette are participating in an ongoing obstruction of justice they should still be subject to suit for new torts of vindictive prosecution, obstruction of justice and deprivation of rights under color of law because the crimes have continued past the waiver on March 19th, 2024.

[6] United States v. Gamez-Orduño, 235 F.3d 453 (9th Cir. 2000) *461 "The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different…" "Such a due process violation may be cured, however, by belated disclosure of evidence, so long as the disclosure occurs "'at a time when disclosure would be of value to the accused."

[7] Parker v. Cnty. of Riverside, 78 F.4th 1109 (9th Cir. 2023) "Under Brady, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to _punishment_, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. Brady requires the disclosure of "impeachment evidence as well as exculpatory evidence." Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Even _inadvertent failure_ to disclose may violate this duty, which does not require a criminal defendant's request. See United States v. Bruce, 984 F.3d 884, 894 (9th Cir. 2021)." (Emphasis added)

[8] "he could not waive the freestanding ethical and constitutional obligation of the prosecutor" _Com. of Northern Mariana Islands v. Bowie_, 236 F.3d 1083, 1095 (9th Cir. 2001)

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 5

2023 and September 8th, 2023 when the two Ada County employees Ryan Pacheco and Steven O'Meara testified under oath in depositions requested by the former defendants. The government has failed to investigate the perjury and even failed to turn over the deposition transcripts even though Petitioner informed the court of the perjury in his motion in response to the defendants' motions for judgement on the pleadings. Mr. Purbeck was only able to get copies of the transcripts in March of 2024 long after the evidence of perjury was useful in the criminal matter. There is one additional transcript Mr. Purbeck needs to procure that shows the agents prevented Mr. Purbeck and Ms. Ganger from making a telephone call until after both had been subjected to interrogation. The agents found the testimony significant to gather because it was to show that both Mr. Purbeck and Ms. Ganger forgot about a phone call that occurred during the day of the warrant execution after it was nearing completion. Both Mr. Purbeck and Ms. Ganger have testified they weren't allowed to use a phone during the search. Apparently, phone records[9] show that that wasn't strictly true. They were allowed to make one phone call only at the conclusion of the search. But the true value of the testimony is that under Ganwich v. Knapp the FBI violated the substantial 4th amendment rights of the people aggrieved of the search[10]. Mr Purbeck was supposedly free to leave according to the incorrect findings of the magistrate court after the agents committed perjury in the suppression hearing, so under the 9th circuit precedent it would have been unreasonable to deprive the 2 individuals' access to a phone when requested. For Mr. Purbeck it was when he requested a lawyer. Because the warrant execution has been deemed to be subject to 9th circuit law, the suppression of this testimony from the defense is an ongoing Brady violation.

The government also actively interfered with Mr. Purbeck subpoenaing a witness (Stephen O'Meara) as well as concealing a Boise-based FBI witness to a (Brady/Napue) materially significant

_____

[9] It is interesting how the agents in their personal capacity have possession of the private phone records of Ms. Gangers phone calls. These weren't provided to Mr. Purbeck in the criminal case evidence unless they were under the protective order.

[10] Ganwich v. Knapp, 319 F.3d 1115 (9th Cir. 2003) *1123

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 6

meeting that the next section will cover that resulted in prejudice. Stephen O'Meara's testimony made clear that he along with former Ada County Sherriff Stephen Bartlett, and at least one FBI agent (most likely former SSRA Doug Hart) from Boise was present in a meeting with Coffin that he committed perjury regarding the contents of in the suppression hearing. Both Ada County employees and Mr. Purbeck have testified to a <u>material</u> matter of perjury that can be proven against James Pinette that resulted in <u>prejudice</u>. The 9th circuit deferred to the 11th circuit on determining whether an exclusionary rule evaluation would be made in this circumstance[11]. The 11th circuit[12] would have required an evaluation for 3rd parties handling evidence but for the magistrate's misinformed determination that Pinette was more credible than Mr. Purbeck and that only he handled evidence not Ada County. Further the exclusionary rule bears on the party who caused the constitutional violation. As the violation occurred by two Idaho government employees subject to the Idaho constitution Article 1 Section 17 of the Idaho Constitution applies. Idaho with its peculiar version of the exclusionary rule does not recognize good faith or severance and as will be described later in the writ and requires complete suppression.

## Brady/Napue Evidence

In the Idaho Civil case as has been documented by the docket record, Mr. Purbeck has vigorously fought for the obtaining of records held by Ada County. There is a very specific reason for this. In May of 2020, the government provided two FBI 302 documents written one by Messrs. Pinette and Coffin and a second document written solely by Mr. Pinette where he observed a prosecution partner conducting a second interrogation of Mr. Purbeck[13]. These 302's were a heavily falsified version of the events

---

[11] United States v. Duenas, 691 F.3d 1070 (9th Cir. 2012) *1083

[12] U.S. v. Hendrixson, 234 F.3d 494 (11th Cir. 2000) *497 "Someone might argue that, although the Court withheld judgment on whether the exclusionary rule applied to evidence found by private parties, the rule nonetheless must definitely apply to the evidence seized by the government entities responsible for the Fourth Amendment Violation." Footnote 3 interpreting Wilson v. Layne, 526 U.S. 603 (1999)

[13] Mr. Herskowitz has adamantly refused to provide evidence from Ada County under the Brady and Jencks Acts, but has kept evidence as admissible that was handled by Ada County and this FD-302 of Ada Counties Interrogation

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 7

occurring on August 21st, 2019. Mr. Purbeck immediately knew the agents intended to bear false witness in court. So, from May 12th, 2020 Mr. Purbeck was fully aware of the slow motion deprivation of rights under color of law the two agents intended to commit. The petitioner on the very same day sent an email to Ada County HR seeking records from Ada County and formally filed a public records request the next day. He followed that up three months later with another public records request. He was ignored until the statutory deadline date whereby Sherriff Bartlett deliberately stonewalled production and hid that the records requested were destroyed. He claimed that they were being held back because the records were for an investigation by the FBI.[14]

> Dear Mr. Purbeck:
>
> We have received your request for information. Your request for on body video, audio, and photographs is being denied in accordance with Idaho Code §74-105(1) and §74-124(1)(a), which provide for denial of items that are still under investigation. Please note, this matter is still under investigation with the Federal Bureau of Investigation and you should contact their agency with questions regarding the status of this case.

But it turns out that was not accurate according to both Ada County employees. And Stephen O'Meara did specify that Sherriff Bartlett himself was asking about the lost recording (exbibit 2-page 88 line 3-20) and he was responsible for covering up its destruction. Defense would find out formally that the recording was destroyed sometime shortly after a letter was mailed from Boise to Atlanta on October 22nd, 2020. During that same time the government was pressuring Mr. Purbeck to take a fast-track plea deal for a crime he had no idea whether he could have committed. Mr. Purbeck was only shown the supposed evidence of this intrusion in **February of 2024** after Agent Coffin was dismissed from the lawsuit. Agent Coffin had deliberately hidden evidence that wasn't subjected to the protective order in a hard drive hidden in a directory that Mr. Purbecks attorney could not locate without government

---

[14] Because of this stonewalling and that specific response, it would have been reasonable for Mr. Purbeck to believe that the Sheriffs department considered itself part of the prosecution team and would turn over all evidence known to it in due time as required by the Jencks and Brady acts. It also further cemented in his mind that the secondary interrogation with Miranda by Ada County and with a federal agent (Pinette) who had previously interrogated him was a Seibert violation and ran afoul of Garrity v. New Jersey.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 8

1   assistance even though Mr. Purbeck has continually lamented a lack of any evidence in his court filings

2   because all he has been provided is perjured and/or ineptly written reports by Agent Coffin where he

3   demonstrates his profound lack of knowledge of technology and other ineptitude.

4       Without the out-of-the-blue revelation by the witness Stephen O'Meara in his civil deposition as a

5   **witness for the defendants** it is possible Coffins deliberate perjury would have forever been hidden.

6   There is no possible way the defense in the criminal matter could have ever determined that a meeting

7   scheduled[15] by Sherriff Bartlett involving himself, Stephen O'Meara, Roderick Coffin (possibly James

8   Pinnette depending on the context of the word "they" in the testimony) and an FBI suppressed witness

9   from Boise later alluded to be SSRA Doug Hart occurred. But this meeting is very relevant for showing

10  that at least Coffin (and possibly Pinette) deliberately committed perjury to stymie a Garrity argument

11  made by Mr. Purbeck. This was a deliberate falsification of an otherwise provable fact that the defense

12  was prevented from showing the court because of a suppression of witnesses and evidence. Any evidence

13  known by the government as a whole[16] which certainly included SSRA Doug Hart before he resigned in

14  October 2022, but after the suppression hearing occurred in September 2022 would qualify as suppression

15  of evidence by the government under 9th circuit law which the Due Process Protections Act order

16  specified in ID general order 392 requires the government especially the District of Idaho[17] to comply

---

[15] Ada County has provided (corroborating O'Meara) evidence of a meeting organized by Sheriff Bartlett for this case occurring on August 20th, 2019. One day before the search and adding to evidence of Coffins deliberate perjury.
[16] United States v. Bundy, 968 F.3d 1019 (9th Cir. 2020) *1037 To the extent that any government agencies or actors, through their own flagrant misconduct, failed to make known exculpatory information, the flagrant nature of such conduct will be imputed to the prosecution—just as the agencies' or actors' Brady violations are imputed to the prosecution. See Youngblood v. West Virginia , 547 U.S. 867, 869–70, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (per curiam) (holding that a Brady violation occurs "when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor' ")
[17] U.S. v. W.R. Grace, 401 F. Supp. 2d 1069 (D. Mont. 2005) * 9 This case carefully considers and rejects the governments belief that forum shopping prosecutions absolves other districts and jurisdictional borders from providing defense Brady evidence. "As with [Rule 16(a)(1)(E)]'s definition of government, we see no reason why the prosecutor's obligation under Brady should stop at the border of the district. If a federal prosecutor has knowledge of and access to the exculpatory information as defined in Brady and its progeny that is outside the district, then the prosecutor must disclose it to the defense."
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 9

1  with. This perjury perverted the fact-finding process because the false testimony was accepted as true,

2  along with all the other false testimony accepted by the court that Mr. Purbeck cannot prove. It was firmly

3  in Mr. Purbecks mind that the agents told him near the beginning of the day that Ada County would be

4  coming to his house to interview him. So, on day one of the suppression hearing Mr. Purbecks defense

5  attorney asked Mr. Coffin the following questions under oath of course. Here is Coffins false testimony

6  regarding Ada County. Pinette also testified he did not know of Ada County coming. According to

7  evidence provided by Clark Harshbarger the only agents from Atlanta were Agents Coffin and Pinette.

8  See also page 142 of exhibit 4 line 15-16. We know from other discovery AUSA Herskowitz was also in

9  Idaho in Judge Bush's courtroom on August 19th, 2019. So it is possible he was also at the meeting

10  described below. But the "they" mentioned in Stephen O'Meara's testimony below implies two people

11  from Atlanta were in the meeting.

```
16   Q.  Am I right that either you or Agent Pinette advised Mr.
17   Purbeck that you are here with the FBI to execute a search
18   warrant and that his employer, Ada County, was going to be
19   coming out as well?
20   A.  No, that is not true.
21   Q.  Did you advise him at all that Ada County was en route
22   or would be coming out to the scene?
23   A.  Not initially.  To answer your question.  If we are
24   talking about on the driveway --
25   Q.  On the driveway did you do that?
```

18

---

[18] This is pages 87-89 of day 1 of the suppression hearing. Testimony of Roderick Coffin being examined by
Andrew Hall petitioners attorney. Case 3:21-cr-00004-TCB-RGV Document 76-1 Filed 01/04/23
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 10

1    A.   No.

2    Q.   Inside the house did you do that?  Tell him that?

3    A.   No.

4    Q.   Outside in the backyard did you tell him that?

5    A.   No.

6    Q.   Did you tell him at any time that Ada County would be

7    coming out to talk to him?

8    A.   At some point later in the search we found out that Ada

9    County was coming to speak to Mr. Purbeck.  And I don't

10   recall who gave that information to Mr. Purbeck.

11   Q.   Would you recall if it was you?

12   A.   I believe so, but I have no recollection of telling Mr.

13   Purbeck that Ada County was coming.

14   Q.   Do you specifically remember any conversation with

15   Mr. Purbeck about Ada County en route, coming, going to be

16   here, anything, however you want to phrase it?

17   A.   No.

18   Q.   Do you recall Agent Pinette having a conversation about

19   Ada County while you were in the driveway?

20   A.   No.

21   Q.   All right.  While you walked through the house with him?

22   A.   No.

23   Q.   In the backyard?

24   A.   No.

25   Q.   So you think it was either you -- excuse me -- it was

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 11

89

```
1    not you, it was not Agent Pinette, but it was someone else
2    who advised Mr. Purbeck that Ada County was coming out?
3    A.  I don't know.  I mean, it might have been Agent Purbeck
4    (sic.), but I just no recollection of who it was who told
5    Mr. Purbeck that Ada County was coming.
6    Q.  You said Agent Purbeck.  Did you mean Agent Pinette?
7    A.  My apologies.  I don't recall whether Agent Pinette or
8    anybody else was the one to tell Mr. Purbeck that Ada County
9    was coming.
10   Q.  Sounds like you have no recollection that occurring
11   regardless of who or how it happened.
12   A.  I remember learning that it was going to happen, but I
13   have no recollection of who would have informed Mr. Purbeck.
14   Q.  Did you know before you arrived at the search scene that
15   Ada County was going to be coming out?
16   A.  Did not know before the search.
17   Q.  Am I right that in this situation -- I am using "you"
18   collectively -- you, Agent Pinette, other members of the FBI
19   team, would not allow Mr. Purbeck to see Sarah Ganger?
20   A.  We would have allowed him to see her if he requested it.
21   Q.  When I say Sarah Ganger, you know who I am referring to?
22   A.  Yes.
23   Q.  That is his companion that he lives with in his house;
24   correct?
25   A.  Yes, sir.
```

**U.S. DISTRICT COURT**
**LORI BURGESS, RMR**

Now contrast that with the testimony of Mr. Stephen O'Meara who described an entire meeting

where the planning of this visit to Petitioners house was pre-planned in advance on August 20th,

2019 the day before the warrant execution.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 12

Stephen O'Meara September 8, 2023

looking for them either, so...

Q. Okay. All right. So what did the sheriff tell you about what the FBI told him I guess the evening before or after?

A. Very little. He said, "one of your people" -- and I say it like that, because that's how he was saying it to me -- "was being investigated for identity theft." And they wanted to arrest him, or take him, or go to his house tomorrow morning.

And he's been -- he was asking me questions about like how long has he been an employee? Of course, this is all hitting me in the face. "How long has he been working here in my office?" Those are all things I had to find out for him, because I didn't really remember. It didn't matter anyway, because he was very pointed, "I want to know what he did here, at the sheriff's office." "Okay. Yes, sir." "And you are going to go with Pacheco. And he's going to ask a bunch of questions. And you are going to explain to him, Pacheco, any things he doesn't understand in your answers. And then ask any questions that you don't know." And, "Okay." "And be here in the morning at 7:00," or something. It was pretty early. "And we will wait for the FBI to let us know when you can go over there." It was pretty short.

Page 36

Veritext Legal Solutions
Calendar-Idaho@veritext.com  208-343-4004

19

---

[19] Examination of Stephen O'Meara by Plaintiff/Petitioner Robert Purbeck (exhibit 2 pages 36-37)
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 13

Stephen O'Meara September 8, 2023

1   And then the agents walked in, and the
2   introductions were made.  Coffin was clearly, well, to
3   me, was the lead.  He's the only person I really talked
4   to, even though there is a local FBI guy.  This was
5   Coffin's baby.  They told us they just flew in.  We're
6   going to take everything.  We're going to take it back
7   to Georgia, Atlanta.  Not really a whole lot of data.
8           They -- I couldn't remember, they thought you
9   were a person.  I recognize the name Lifelock.  They
10  said that.  He's part of this big organization, and
11  international, and all this kind of stuff.  And I didn't
12  get to read anything.  But basically they just told me
13  this.  And said that, "We will let you know when you can
14  go."
15          And they made it clear that the Sheriff had
16  asked for the two of us to have to go to your house.
17  And that they had agreed to it.  That was okay with
18  them.  And I kind of got the feeling that maybe that was
19  almost like a -- they were being nice.  Because I got
20  the feeling that -- it wasn't a local -- it's not a
21  local case.  So they didn't have to go.  And they didn't
22  have to let us go over there.  Bartlett wanted it.  And
23  I think the FBI said, "Okay."  And so he said, "We'll
24  call you in the morning.  You be here.  We'll call you
25  in the morning.  We'll tell you where the address is,

Page 37

Veritext Legal Solutions
Calendar-Idaho@veritext.com  208-343-4004

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 14

And then just to clarify this wasn't somehow a misidentification of some sort. He's had numerous interactions with Coffin since.

```
17        Q.   (BY MR. PURBECK)  All right.  So you said
18   you've had conversations or interactions with Coffin
19   since this lawsuit occurred.  So can you explain what
20   happened in those hearings or those meetings or --
21        A.   They were generally me calling --
22             MR. REED:  Objection; lack of foundation.
23        Q.   (BY MR. PURBECK)  You had testified earlier
24   that you had had conversations with Coffin and -- well,
25   I mean, it would be -- I would like to know what
```

                                                    Page 50

                  Stephen O'Meara September 8, 2023

```
1    the -- if it related to this lawsuit, I would like to
2    know what the contents of those communications were?
3              MR. REED:  The same objection.
4         Q.   (BY MR. PURBECK)  You can still answer.
5         A.   We chatted a few times over the months, I
6    guess years now.  It's been a while.  He wanted
7    to -- mostly him calling me, I only called him once or
8    twice.  He wanted to return the equipment that he could.
9    I had asked for a copy of what I -- when we left your
10   house, I said "Can I get copies of what's on the hard
11   drives, on the thumb drive, and on the laptop that you
12   are keeping, just so we can look to see" -- I mean, you
13   said a lot of things in here about what you did or
14   didn't do -- what's on those things.  Because he made it
15   clear, I wasn't going to get them.  So I said, would you
16   please send me a copy.  I had to follow up to get copies
17   of those things.  He did send them.  We did look at
18   them.
```
                                                              20

[20] This is highlighted to show that the agent refused to return hard drives to Ada County more information is available in the transcripts on pages 51-52 (exhibit 2) This is material because this is evidence developed by Ada County during the warrant execution and physically handled by Ada County.
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 15

Another Napue/Brady violation is that James Pinette testified that he conducted a search of Petitioner while Ada County was present. This allowed the agent to make a false alibi for his sexual assault of Mr. Purbeck and also left the magistrate court falsely believing that Ada County at no point handled evidence allowing it to sidestep an exclusionary rule inquiry under binding 9th circuit and 11th circuit law.

```
 6   Q.  And during the course of that interview, did anyone
 7   search Mr. Purbeck?
 8   A.  I did.
 9   Q.  And what prompted the search?
10   A.  At some point during the Ada County interview,
11   Mr. Purbeck said that he had a hard drive in his pocket, and
12   he stood up and took a hard drive out of his pocket.  And at
13   that point it made me wonder if anyone had ever, you know --
14   and I heard they did a high-risk search, but did anyone look
15   for other evidence or weapons.  So at that point I did a
16   quick search of Mr. Purbeck.
17   Q.  And how long was the search of Mr. Purbeck about?
18   A.  It was really quick.  Five, ten seconds, maybe.
19   Q.  Did you touch Mr. Purbeck's genitals?
20   A.  No.
```
[21]

Now lets compare the testimony of the two other witnesses in depositions one of which was not allowed by the court to testify in the suppression hearing and the one who actually handled evidence that the previous section indicated Agent Coffin was refusing to return to the county

---

[21] Page 133 of day 1 of the suppression hearing. Witness James Pinette being examined by Sr. US Trial Attorney Brian Mund. He doubles down on the false alibi on page 151 lines 21-22. On page 161 he confirms only him, Petitioner, Stephen O'Meara and Ryan Pacheco are present during this interrogation.
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 16

because the government considers it admissible evidence.

```
 3        Q.  What did Mr. Purbeck do?
 4        A.  He reached into his pockets, and he pulled out
 5   a hard drive of -- a portable hard drive and thumb drive
 6   and handed them to me.
 7        Q.  What did you do when he handed you those two
 8   items?
 9        A.  I was sort of surprised that he had them on
10   him.  I don't know anything about how law enforcement
11   works.  But he was sitting in the chair.  And I assumed
12   the FBI had done something.  So I was surprised he had
13   anything on him that produced these things.  Oh, okay.
14   Thank you.  But I had been told the day before by either
15   Coffin, or Hart, or somebody, that they would be taking
16   all of the equipment, including county stuff.
17        And I held them in my hand.  And I looked at
18   the FBI agent, and I said, "I assume you are going to
19   take these?"  And he said, "Yes," and he took them
20   immediately right then.
```

And here is Detective Pacheco's version of this same interaction.

```
19        Q.  So I can't find the page that I have.
20        So James Pinette, the agent that you don't
21   recall being there, he testified that you
22   searched -- that he searched me while you were present.
23   Did you watch an FBI agent search me?
24        A.  I don't remember that.
25        Q.  Okay.
```

[22] Page 21 exhibit 2 Witness Stephen O'Meara being examined by AUSA James Schaefer. This is also where Hart is alluded to having been in the meeting with O'Meara and Coffin and would be able to counter the perjury of Agent Coffin. This also directly contradicts the testimony of James Pinette as James Pinette was the FBI agent who was present in this exchange. Without Ada County being present this admissible evidence would not have been identified or handled improperly by a third party in violation of the 4th amendment, and Idaho article 1 section 17 (The Idaho Supreme Court makes clear that section 17 is evaluated on a whole different set of criteria than a 4th amendment violation. And a violation of either has no severance or good faith) see State v. Koivu, 272 P.3d 483 (Idaho 2012) An explanation of the Idaho Exclusionary rule in detail.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 17

Ryan Stephen Pacheco August 21, 2023

```
 1      A.  And if that had happened, I would have been
 2  surprised why he wouldn't have noticed the other items
 3  you have on there -- on you.  But I don't -- I don't
 4  remember him doing that.  And I'm not saying he wasn't
 5  there.  I'm just saying, I don't know him by face.  So I
 6  know there were people there.  I just don't know him
 7  personally, and I don't know his name.
 8      Q.  He testified that he sat behind you during the
 9  interview, in the chair?
10      A.  It could be.
11      Q.  Okay.  But that doesn't jog your memory at
12  all?
13      A.  I couldn't see behind me.  I didn't look
14  behind me.  I don't -- I don't know.  What I do know is
15  at some point when you got those items out of your
16  pocket, they were passed to an FBI agent in the area.  I
17  don't even remember turning around, and somebody sitting
18  is there, or somebody was standing, you know, by
19  Mr. O'Meara when I turned back.  He handed those over.
20  And then I went -- I turned back to you.  That's my
21  recollection I wasn't really paying attention.
```
[23]

the old information on the new computer.  He then took a county issued external hard drive from his pocket and handed it to me.  He said this device is what he would use to mirror the computers.

Purbeck then reached into his front pocket and pulled out a black thumb drive and said there might be some information on that as well.  I asked if he had anything else in his pockets.  He said no.  (The external hard drive and thumb drive Purbeck gave me were handed over to the FBI and booked as evidence.) [24]

Another reason Mr. Purbeck was so adamant about getting the recording of the Ada County interview was because the content of the 302 written by James Pinette was falsified compared to his remembrance of the same interrogation and it would prove dishonesty and could be used as

_____

[23] Pages 48-49 of exhibit 1. Witness Detective Ryan Pacheco being examined by Petitioner Robert Purbeck.
[24] Page 1 and 2 of Detective Ryan Pacheco's report to Sheriff Bartlett created on August 21st, 2019. Exhibit 6
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 18

impeachment evidence in the suppression hearing. Defense received a copy of Ryan Pachecos report written after the interrogation and given to Sheriff Bartlett. So, although it has some commentary it is as close to a recording as we could get in this circumstance, but a recording would have been more impactful for proving dishonesty. In a district with such a profoundly biased magistrate no Yankee local police officer was going to have more credibility than the perjuring good ol' boys. The only evidence that would have swayed him was a recording, that would be so much harder for him to falsify in his R&R so although Mr, Purbeck strongly disagreed with his Attorneys logic in not using the report to impeach Pinette's 302 what could he do? Detective Pacheco tries hard to not undermine the 302 of James Pinette in his deposition, but he does give away that a lot is missing from the report including key details. (exhibit 3 pages 39-42) And this is precisely why in 2019 and for the past 40 years it has been unreasonable for the FBI to be using 302's instead of recording every witness interaction, they are specifically designed to allow FBI agents to commit perjury.

## AUSA's Complicity in Hiding Evidence

At least five AUSA's have been complicit in hiding evidence from the defense in the criminal matter that have been revealed in the civil case and from public records requests from Ada County. Kitchens a former defendant in this case has trafficked in sealed documents from this case with James Schaefer to use as false witness in the suppression hearing where two government conspirators Herskowitz and Sistla themselves both lied to the court as though they were sworn witnesses that the contents of the filing at Docket 1 had never been revised. This was clearly false as by September of 2022 there was already a revised complaint and a request for a new revision and by then Judge Winmill had declared the complaint at docket 1 legally non-existent.

Both Darci Ward-Crane and James Schaefer are knowledgeable of the events that occurred in Idaho before the search warrant was executed and both have refused to correct the record in both

USCA11 Case: 24-13841    Document: 32    Date Filed: 10/08/2025    Page: 67 of 83

the civil and criminal case because they got the results they wanted. Depriving Mr. Purbeck of a fair chance to file a motion for summary judgement in 2022 (prior to the 9th Circuits Bivens change in the summer of 2023) based on perjured testimony in the suppression hearing violated Mr. Purbecks right to due process in both the civil and criminal cases. Both have an ethical obligation to correct a known fraud on a court even if it is not within the same district they practice in. James Schaefer is fully aware that his clients James Pinette and Roderick Coffin committed perjury in a Newnan, Georgia Federal courtroom because he has provided the documents to this court of that testimony and has firsthand seen the testimony of the witnesses in the civil case. A misinformed magistrate in Georgia cannot make credibility determinations accurately if two agents conspire with an AUSA like Michael Herskowitz to commit perjury. The agents as well who were defendants in this case and listened in to the testimony of Detective Pacheco and Stephen O'Meara have a Brady obligation to provide the knowledge that their lies had been uncovered in this case to provide that evidence to the AUSA in Georgia. Ada County attorney Dayton Reed also has an ethical obligation to tell the truth both to this court and to the court in Georgia when he becomes aware of a fraud on the court which is the position of the former defendants in the civil case.  These ethical obligations for petitioner's 5th and 14th amendment rights to a fair proceeding in criminal trial exceed their clients' rights to hide evidence in their possession in a civil case. The Sovereign represented by Ward-Crane has no

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 20

authority to conceal perjury.

Subject to and without waiving the foregoing objections, Special Agent Coffin responds as follows:

Special Agent Coffin does not believe that he engaged in any illegal action related to this case or any other case involving Purbeck.

Special Agent Coffin is not in possession of responsive documents.  Special Agent Coffin 25

Dated this 17th day of August, 2023.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
BY

JAMES P. SCHAEFER
ASSISTANT UNITED STATES ATTORNEY

Dated this 17th day of August, 2023.

RODERICK COFFIN
Special Agent
Federal Bureau of Investigation

Simply by not providing this evidence to the defense and to the prosecutor after it was discovered for use in the criminal trial violated the Due Process Protections Act and Brady obligations and was therefore a deprivation of rights under color of law.  Further it is Misprision of Felony for the lawyers to act with deliberate indifference to their clients not performing their responsibilities to provide Brady evidence and concealing evidence of perjury. Mr. Purbeck still needs discovery to get even more damning evidence of flagrant perjury by the two agents. This discovery has been suppressed intentionally and can only be developed in the District of Idaho by Joshua Hurwit's unethical staff. Ada County is also in possession of additional undisclosed witnesses that can corroborate that the perjury occurred. That same discovery will also prove that Ada County failed to provide a name clearing hearing and fully intended to fire Mr. Purbeck from his job without due process of law. I think the testimony of Stephen O'Meara can mostly convince a jury of that, but the additional evidence that subpoenaing Doug Hart, Roderick Coffin and Stephen Bartlett

---

[25] Defendant Roderick Coffins answers to Plaintiffs first request for interrogatories. Pages 20-21. August 17th 2023 This is a document signed under oath in the Idaho civil case and constitutes perjury. Approximately a month later Stephen O'Meara testified in this case to very different facts and Ada County via Public Records request in May of 2024 produced evidence corroborating the testimony record of Stephen O'Meara. Neither Roderick Coffin or James Schaefer has corrected this fraud on the court in the District of Idaho or in the Northern District of Georgia.
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 21

could provide would show there was a concerted effort to violate Garrity and violate Petitioners

right to due process in his possessory interest in his job at Ada County. Under oath in a more

discerning court than Magistrate Vineyards kangaroo court[26] would be optimal.

## Mr. Herskowitz's Complicity in Perjury

Mr. Herskowitz is motivated in this case primarily by his cult form of Judaism. He has insisted

on presenting false nexuses to Georgia in all the documents of the case to include Jewish victims

from California and Florida without justification under the 6th amendment. Twice he presented

plea agreements with Jewish victims in states with no relation to Georgia. Petitioners' belief is

the California victim got dropped before the indictment was presented to the grand jury because

she is a Messianic Jew who has publicly donated to Jews for Jesus. There is no compelling reason

why the Agent wouldn't commit perjury to traffic travelling through California on its way to

Georgia just the same as he would have been required to commit perjury to that fact for the

Florida victim. But he falsely presented a nexus to Georgia in the warrant affidavit he wrote for

Mr. Coffin. He insisted on a Georgia nexus[27] for a Florida victim who is also an apostate Jew like

himself. There is not one reliable document he presented to the defense that could justify the

---

[26] This is not hyperbole. Magistrate Vineyard produced a list of exhibits at the end of the suppression hearing that was falsified. Docket document 67 None of the locations on the documents were correct. One was from California and the other was from the District of Idaho. The district court and appeals court would not have been able to locate the documents for review if needed because his illiterate secretary shouldn't be given clerk duties. In a corporation, a CEO signing off on an underlings falsified documents could be charged with a felony for accounting violations but in a federal court in the south government judges are given a pass for doing odious work that is far more important constitutionally than any accounting documents.

[27] The closest thing was a document where Coffin interviewed a guy working at the local cable company and asked him if it was possible for traffic to travel through Georgia on its way to Florida through Southern Bells (SBC) network. This would be like asking someone working at Walmart scrubbing toilets to explain in detail the sewage and waste removal system of the Pentagon. They can speculate but its completely unacceptable as "evidence" and is designed for an illiterate southern jury to make leaps in logic that they are unqualified to decide. The actual "evidence" manufactured in 2021 completely negates the governments false theory, it showed traffic traveling through Texas then on undersea lines to the Miami area but they refused to provide new evidence or drop that charge on the indictment because that was the Jew Mr. Herskowitz wanted to be praised by his congregation for helping.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 22

nexus to Georgia for something occurring in Miami. But he wants to be praised as a demigod at his wicked church. He attends Temple Sinai in Sandy Springs, GA with his wife and 2 children. His wife is a prominent member of the cult with a role as a treasurer of the "temple." Probably the one recurring theme of every sermon is the plight of Jews. The doctrine is very poor and consists primarily of platitudes and worshipping Jews as demigods. It's the original sin; that they can be like God. They get told week in and week out that they as Jews can control fate and even circumvent the prophecies of when Moshiach arrives through their righteousness. That God owes them something for their righteous deeds. It is not God honoring worship. It is also a lie that is firmly disputed by the prophets in the Nevi'im. The Moshiach the apostate Jews are waiting for and Mr. Herskowitz is attempting to conjure to the world through his Tikkun Olam (God calls this filthy unclean rags full of menstrual fluids[28]) is the Antichrist.[29] He is going to lead a huge war against Israel, and the only surviving Jews are going to flee to what is now Petra in Jordan and they will call out "Blessed is he who comes in the name of the Lord." Ps 118:26 Mt. 23:39 And the true Moshiach, Jesus will return to them. How much worse is the anger towards Israel and Jews going to heighten when the prophecies of the Nevi'im are fulfilled? Damascus will be destroyed in a single night by the Jews. Two of Lebanon's cities will fall Tyre and Sidon[30]. Iran is going to suffer a nuclear disaster in the area of Natanz; ancient Elam. The leader of Russia (Gog) is going to lead a confederation of nations including Türkiye, Persia, Ethiopia, and Sudan against Israel and is going to die in a biological or nuclear disaster in the Golan heights. The anger against Jews worldwide is already intense. In the US we have useful idiots of Satan protesting things they don't even know about on college campuses.

---

[28] Isaiah 64:6 (KJV) But we are all as an unclean thing, and all our righteousnesses are as filthy rags…
[29] Zechariah 11:15-17, Zechariah 12:1-4; 14:2, Isaiah 66:18
[30] Ezekiel 28
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 23

Petitioner is a Zionist and believes that Jews are mistreated, including the false witness being made by the prosecutor in South Africa presenting false evidence against Israel at the Hague. The evidence is produced by a terrorist group that sent monsters into Israel murdered and raped and even baked a baby alive on October 7th, 2023. Petitioner brings that up because presenting false evidence is a grave sin in the Tanakh. "Thou shalt not bear false witness against thy neighbor." Exo. 20:16, "A false witness shall not be unpunished, and he that speaketh lies shall perish" Prov. 19:9, "Then shall ye do unto him, as he had thought to have done unto his brother: so shalt thou put the evil away from among you." (Deut. 19:19 for full context Deut.19:15-21).

Mr. Herskowitz was present in Idaho during the events of the search warrant. He is aware of the meeting at the Sheriff's office though the petitioner can't prove it without additional evidence. Herskowitz has a duty to fix the frauds on the court, but he thinks his menstrual rags are more important than telling the truth. The ends justify the means in his mind.

Petitioner apologizes to the court that he must explain Mr. Herskowitz vile actions for what they are. He has treated this matter as a prosecution for his own apostate philosophy like a Talabani. He is no different than a Jihadist and this is the only explanation for this continued insistence on covering up perjury and his deliberate 6th amendment violations. He would not have had to make leaps in logic and present falsehoods in charging documents if he had simply prosecuted this in Idaho. He would have lost a suppression hearing though. But doing what is right is the Sovereign's prerogative not hiding evidence. All the witnesses except 2 were in Idaho, the nexus was proper, but he wanted to lie about 9th circuit law in a hostile court with witness credibility done by an old buddy. He hasn't been part of the division for more than 2 years but keeps on insisting on staying on with the case so he can cover up evidence because at this point it is the only way to save himself from prosecution and disbarment. Weakening the constitution for 9th circuit residents or anyone is not even good Tikkun Olam it will only lead to more Jews being persecuted in the long run by corrupt lawyers just like him.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 24

## Lies Mr. Herwskowitz has covered up

The entire suppression hearing was full of lies told by the two agents. But that is only the beginning of the lies Mr. Herskowitz has covered up for Agent Coffin. Although Petitioner can't prove he wrote the warrant application it does appear Mr. Herskowitz filled out the pertinent sections for Mr. Coffin. He was there in Magistrate Bush's courtroom helping Coffin lie about the informant's credibility. Coffin provided the "evidence" all of which was false or falsely presented. All IP addresses save one used in the affidavit were not in any way attached to Mr. Purbecks home. A warrant is for a specific place to search or seize[31]. The magistrate in Georgia takes a frankly treasonous approach to evaluating warrants again using ends justify the means approach but the strict reality is nothing occurred the way the warrant affidavit laid it out. The bitcoin account that the agent lied about did not use Mr. Purbecks home address, but he lied and said all the bank accounts had the address of Mr. Purbecks home. The bitcoin transaction he flagged was tied to an IP address that was recorded in the blockchain and it was from an address in Nampa, not in Meridian. Same with the IP address used to tie the Coinbase account it was from the same static Nampa IP. The bank account was tied to a UPS store address. These things matter. Judge Bush would not have signed a warrant if he had known that the government hadn't told the truth about the correct place to search. The biggest lie of all was the informant they used had provided the agent with emails stating that Petitioner had certified he was not the person the informant believed him to be, but Herskowitz knew this would be a problem, so he hid those emails. If Petitioner could have seen his hard drive at any point prior to the motion to suppress deadline he could have shown the emails as well. He still hasn't been given access to locate

---

[31] Like the facts in United States v. Atencio, 1:21-cr-0058-DCN (D. Idaho Apr. 29, 2022) It would have been reasonable to search an address in Nampa (perhaps even Mr. Purbecks business warehouse location) with additional evidence it was not reasonable to assume anything was at Mr. Purbecks home. But Mr. Herskowitz has hidden the details of what the ISPS reported back for the locations of these addresses from the defense.

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 25

documents that would have been useful for his defense. Instead, it took a court order for the

government to reveal the emails that Mr. Herskowtiz had deliberately concealed from the defense

and it was not for a lack for trying to receive them. But then he only turned them over after being

ordered by the court. But he still didn't provide the most important email that should be on

Petitioners hard drive and that the informant had admitted to destroying.

> 7. *Any communications between Dissent or Databreaches dot net. We will produce any such responsive communications in our possession to capture your client's statements in accordance with Rule 16(1)(B)(i).* [32]

Mr. Herskowitz also tried to cover up a lie about passwords until the evidence was right out in the

open about his lie. He pretends he has plausible deniability but there have been far too many

errors in this case and Mr. Coffin should have been thoroughly investigated by the DOJ to see

what he had lied about in this case. So at best Mr. Herskowitz is deliberately indifferent to the

truth and at worst he has repeatedly suborned and abetted perjury for his false works based

religion.

> during his August 2019 interview. The Government therefore wishes to correct the record in this respect and withdraw its prior representation that Purbeck had not provided the passcode for these two iPhones, and the Government agrees not to use evidence from the iPhones 7 and 8 in its case in chief at trial. As such, the Government respectfully submits that the Court should deny Purbeck's motion to suppress (Doc. 99) as moot. [33]

Mr. Herskowitz has also allowed the perjuries of the agents from the suppression hearing to stand

without any investigation of the agents even though he has read every document in the Idaho civil

case is alerted through ECF and even personally lied about the contents of the documents in the

suppression hearing as a unsworn testifying witness. It is inexcusable that Mr. Purbeck has

needed to seek out records from Ada County not through the Brady and Jencks Acts but through

---

[32] Letter from Herskowitz to defense dated 6-29-21. He was ordered to provide them later in 2022.
[33] Government's Sur-Reply as To Defendant's Motion to Suppress 2023 Searches of Iphones. Case 3:21-cr-00004-TCB-RGV *2 document 107-1 filed 10/11/23
RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 26

public records requests. And that evidence has provided proof the meeting with Sheriff Bartlett occurred, but Herskowitz will not correct the testimony for the perjury. He has refused to gather additional evidence from a prosecution partner in Ada County in Idaho even though he has relied on evidence they established during the search warrant. Mr. Purbeck has gathered some through public records requests, but who knows what else they have that would be beneficial. Instead of being provided this information through Jencks, petitioner had to forgo in-person testimony by Detective Pacheco in a negotiated deal to get his report of the interrogation attached as exhibit 6.

**From:** Herskowitz, Michael (USAGAN) <Michael.Herskowitz@usdoj.gov>
**Sent:** Tuesday, August 31, 2021 4:24 PM
**To:** Andrew Hall <andrew@h3-law.com>
**Cc:** Kitchens, Nathan (USAGAN) <Nathan.Kitchens@usdoj.gov>
**Subject:** RE: Purbeck - Ada County Sheriff Interview

Sure, Andrew. I am not going back with those questions, however. I don't see the relevance or that your client is entitled to that line of inquiry. Bottom line, we don't have the recording, but I wanted to provide you the context below as to why we don't have it. I believe it is sufficient.

 Herskowitz  knows the truth has the potential to get him jailed and disbarred if truly investigated. And when both Ada County employees testified to touching and handling evidence, he hasn't corrected the record to allow an inquiry whether Idaho and Federal law including the violation of section 17 of the Idaho Constitution rendered the entire search unreasonable. If lex loci doctrine applies to the 9th circuit, it even more so applies to Idaho law when evaluating an unreasonable search made by Idaho subdivision employees like Ada County and then whether Garrity was implicated by the acknowledgement of perjury being suppressed by Mr. Herskowitz. If an agent who knew he could lie in Vineyards court unabated is willing to commit perjury to an obvious provable fact with FBI and local law enforcement witnesses. He is certainly willing to perjure himself to every other fact in dispute in the suppression hearing such as the missing FBI audio recording, the Miranda form, refusing to allow a phone call to a lawyer and the lie about giving Mr. Purbeck water even though the two agents were at odds about that flagrant lie.

## Relief is Needed Before September 11th, 2024

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 27

Mr. Purbeck has always wanted a fair trial with due process of law. Instead, the Government led

by a wicked zealot has defecated on the Constitution. Herskowitz was allowed to forum shop a

case where he had a vested conflict of interest and was an active civil litigant at the time and

knew he would be sued if he failed in the prosecution. He even forum shopped it to a specific

location within the district (with only one magistrate and judge) so he could guarantee an easily

swayed judge in Georgia would be allowed to use his personal biases against the 9th circuit to

weaken the Constitutional rights of all Americans living in the 9th circuit. That judge abused

discretion in his orders boiling down decades of 9th circuit 4th and 5th amendment law in his order

which is tantamount to seditious libel that mirrors his own personal philosophy not the Stare

Decisis of the circuit. Furthermore, he claimed it is ok for the government to falsify nexus for the

express purpose of allowing a less literate jury to make decisions they are not qualified to make.

Then to ensure a specific outcome, the court wouldn't approve funding for items that would be

necessary to make the defense. The overall cost to the government would have been far less to try

the case in Idaho, so that Mr. Purbeck could have had access to better experts and the government

wouldn't have had to pay for FBI agents to fly from Idaho for 15-30 minutes of examination.

The court in Idaho would have treated the witnesses with more respect and actually allowed them

to testify about the search and not whined about the time it took for defense to prove that the

unmiranidized interrogation took 3 ½ hours in the backyard on a brutally hot day in August

(much longer that Kim or Craighead) just like it is now in Idaho. The court in Idaho would also

have used supervisory powers and ensured that the government complied with its Brady

obligations.

The Government in Idaho has an obligation to correct the record for what it knows is untrue. And

if it cannot call witnesses that were available in September 2022 such as Doug Hart, they should

be ordered to drop the case unless alternative evidence can be found that hasn't been handled by

Roderick Coffin. And the government has an obligation to investigate even the suspicion of

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 28

perjury that occurred both in this civil case by Roderick Coffin and also to correct what it knows is untrue from the suppression hearing. The DOJ in Idaho and this court should order Mr. Herskowitz to recuse himself from being a prosecutor in any court and be placed on administrative leave to provide a period of time whereby a neutral special master from a different district can be made available to review all the evidence in the case to see what was hidden from the defense. To determine what other perjuries by Roderick Coffin have been performed? To determine what other perjuries they can discover from James Pinette? If it is found that Mr. Herskowitz deliberately suppressed evidence he should be fired for cause immediately. Mr. Purbeck also proposes two other alternatives for Mr. Herskowitz. Under the Torah law he should be charged with sufficient perjury charges and misprision of a felony charges that would enable him to spend 10 years in prison to match the potential sentence he has attempted to have imposed through perjury on Mr. Purbeck. In the alternative, Mr. Purbeck would suggest that he should be allowed to use his law degree for good. He should be transported with free accommodations including room and board to work full time at Guantanamo Bay (it should mostly be halal) and he should be required to work cases for Muslims as their defense lawyer. His salary should be made dependent on how many people he frees. The federal minimum wage would be a good starting wage in his defense position and his accommodations should be taxed at the actual cost to taxpayers.

## Request for a Hearing

Mr. Purbeck requests a hearing to make oral arguments for his cause. His constitutionally ineffective defense lawyer has deliberately not read anything from this civil case and that has caused Petitioner great prejudice because the government had invented a false narrative, and it has only been through testimony in this civil case and public records requests Mr. Purbeck has made that has allowed some of the truth to break free. Mr. Purbeck requests a subpoena be issued to Roderick Coffin, James Pinette, former Sheriff Stephen Bartlett and Former SSRA Douglass

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 29

Hart so that Mr. Purbeck can help develop the truth the magistrate in Georgia, the Idaho DOJ and AUSA Herskowitz have deliberately ignored and willfully suppressed.

The Government in Idaho also has a duty to correct a flagrantly false ruling in a different court if it infringes on 9th circuit law that the ruling purports to be based on. For example, in the Trump case, the government has appealed several rulings when the district court issued a patently false order. The government as Sovereign must do what is right, not what makes an individual line prosecutor happy. In the case of Sergio Herran, United States v. Herran, No. 20-10157 (9th Cir. Oct. 29, 2021) which was argued in the 9th circuit in 2021 prior to Mr. Purbecks suppression hearing the case of Craighead was revisited. Judge Thomas was on the Craighead panel and in oral arguments for Herran described as a witness what he and the judges on the panel of Craighead decided. The oral arguments are archived on YouTube for Herran.[34] At 9:03 Judge Thomas explains the rationale of the Craighead court and makes clear the government's argument was absurd in the 9th circuit. This is the closest case with similar facts to the Petitioners case. Unlike Herran, Petitioner was not told he was free to go even with the magistrate's inept credibility findings. And the government which is the same sovereign represented with its attorneys' ethical obligations that it was telling the truth about 9th circuit law yet makes the same ridiculous arguments that are for all practical purposes pilloried by the panel in oral arguments in Herran. It is absurd that the government can falsify the law arguing 9th circuit law in one court when it absolutely knows it would fail in the 9th circuit on all levels. And so Mr. Hurwit has an ethical obligation to file a brief with the court that not only did his staff not investigate credible evidence of perjury but also that his staff didn't correct a grave error of law in the N.D. Georgia court. At the same time both Mr. Hurwit and Mr. Buchanan of the N.D. Georgia should both

---

[34] https://www.youtube.com/watch?v=z7KdDWhS9BQ

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 30

tender their resignations to the president for failing to ensure their line prosecutors abide by their ethical obligations to do what is right even when a defendant isn't wealthy or powerful.

## REMEDY

Mr. Purbeck respectfully requests the court issue a Writ of Mandamus to order the United States of America in Idaho, Georgia and wherever else to provide evidence and testimony in its possession or was in its possession on September 1st, 2022 including evidence known to SSRA Doug Hart that would undermine the two agents testimony to the court in Georgia about the meeting that occurred at Ada County Sheriff's Office on August 20th, 2019. It had an obligation to provide this previously and it has refused to do so. Mr. Purbeck has requested it, although that is not a requirement for the ethical Brady obligations of the government. Same with any evidence produced in the Idaho civil case. If it cannot provide the evidence the government has an obligation to dismiss the indictment with prejudice. Petitioner further requests that the government produce evidence known to Ada County as a prosecution partner that undermines the Governments two witnesses testimony at the suppression hearing and any other evidence it has or knows about that would benefit the defense in this case. Mr. Purbeck also requests that Mr. Herskowitz and Agent Coffin or any other current prosecutor in the case be restricted from making any recommendation to the sentencing court in Mr. Purbecks criminal trial other than an apology that the government concealed evidence of perjury to material facts from the court. If the government or its prosecution partners is in possession of any other evidence that is favorable either to guilt or punishment it must be provided to defense. And sanctions under the Due Process Protections Act of 2020 be proscribed in the criminal case against the United States, Mr. Herskowitz, Mrs. Ward-Crane and Agents Coffin and Pinette.

Signed this ____11th__day of August 2024

*/s Robert Purbeck*      /s Robert Purbeck

RE: ROBERT PURBECKS PETITION FOR A WRIT OF MANDAMUS - 31

*Defendant's Notice of Appeal*

*(Doc. 137)*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No. |
| | : | 3:21-CR-0004-TCB-RGV |
| ROBERT PURBECK | : | |

**NOTICE OF APPEAL**
[***In Forma Pauperis***]

Defendant Robert Purbeck hereby gives notice that he appeals to the United States Court of Appeals for the Eleventh Circuit from the March 19, 2024 guilty plea [Dkt. Nos. 116 and 118], and the sentence and Judgment and Commitment, as amended, announced on November 13, 2024, entered on November 14, 2024, and amended on November 15, 2024 by the Honorable Timothy C. Batten, Sr., in the United States District Court for the Northern District of Georgia, Newnan Division. [Dkt. Nos. 131, 132, and 134].

Mr. Purbeck requests that a copy of the complete record, including all pretrial hearing transcripts, guilty plea hearing transcripts, and sentencing hearing transcripts, filed or to be filed, be transmitted to the Eleventh Circuit for use in review of this case.

This Court previously has declared Mr. Purbeck to be indigent, and Mr. Purbeck has requested that he be allowed to pursue this direct appeal in forma pauperis. Mr. Purbeck is in custody.

Respectfully submitted, this 20th day of November, 2024.

/s/ *Andrew C. Hall*_____
Andrew C. Hall
Georgia Bar No. 318025
Hall Hirsh Hughes, LLC
150 E. Ponce de Leon Ave., Suite 450
Decatur, Georgia 30030
404-638-5881 (tel.)
andrew@h3-law.com
Counsel for Defendant Robert Purbeck

<u>CERTIFICATE OF COMPLIANCE WITH TYPE AND FONT</u>
<u>AND CERTIFICATE OF SERVICE</u>

I hereby certify that this motion has been prepared in Times New Roman font (14 pt.) and consistent with the Local Rules of this Court.

I further hereby certify that I have this date caused a true and correct copy of the foregoing NOTICE OF APPEAL to be served by filing it with the Clerk of Court using the ECF System that will send notification of such filing to:

Assistant United States Attorney Michael Herskowitz

This 20th day of November, 2024.

<u>/s/ Andrew C. Hall</u>
Andrew C. Hall

3

No. 24-13841-AA

*United States of America v. Robert Purbeck*

## CERTIFICATE OF SERVICE

This is to certify that I have as of this date filed and served the:

**SUPPLEMENTAL APPENDIX OF APPELLEE**

by uploading it to the Court's website using the CM/ECF system, which

automatically sends notification to the parties and counsel of record:

> LEIGH ANN WEBSTER
> Strickland Webster, LLC
> 830 Glenwood Ave, S.E.
> Suite 510-203
> Atlanta, GA  30316

October 8, 2025

/s/ Daniel Grill

DANIEL GRILL

*Assistant United States Attorney*